**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**Chad Thompson, William Schmitt,
and Don Keeney,**

        **Plaintiffs,**

**v.**                              **Case No. _____**

**Richard "Mike" DeWine,
in his official capacity as Governor of
Ohio,**

**Amy Acton, in her official capacity
as Director of Ohio Department of
Health,**

**and**                                   **TEMPORARY RESTRAINING
ORDER/PRELIMINARY
INJUNCTION REQUESTED**

**Frank LaRose, in his official capacity
as Ohio Secretary of State,**

        **Defendants.**

## <u>VERIFIED COMPLAINT</u>

### <u>Nature of the Case</u>

1.    This is an action to declare unconstitutional, enjoin and/or modify Ohio's in-person signature collection and witnessing requirements and the deadlines required for the presentation of collected signatures for popular measures such as initiatives and referenda presented to local governments in Ohio for inclusion on Ohio's November 3, 2020 general election ballot in light of the current public health emergency caused by COVID-19 and Defendant DeWine's and Defendant Acton's emergency orders effectively shutting down the State.

## Jurisdiction

2.     Jurisdiction in this case is predicated on 28 U.S.C. § 1331, this being a case arising under the Constitution of the United States and 42 U.S.C. § 1983.

## Venue

3.     Venue is proper in this District and Division under 28 U.S.C. 1391(b) because all the Defendants reside in this District and Division, are residents of Ohio, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Division.

## Parties

4.     Plaintiffs, Chad Thompson, William Schmitt and Don Keeney, are registered voters in the State of Ohio who regularly circulate petitions to have initiatives placed on local election ballots throughout Ohio and in adjacent States.  *See, e.g.*, *Schmitt v. Husted*, 933 F.3d 628 (6th Cir. 2019) (describing Thompson's and Schmitt's circulation efforts for initiatives presented in Windham and Garrettsville, Ohio), cert. pending, No. 19-974 (U.S., Feb. 4, 2020); *Hyman v. City of Salem*, 396 F. Supp.3d 666 (N.D. W.Va. 2019) (describing Thompson's circulation efforts for local initiative).

5.     Plaintiffs routinely and regularly circulate in Ohio proposed popular measures in the form of initiatives in cities and villages that seek to amend local ordinances and laws that criminalize and/or penalize marijuana possession.

6.     Plaintiffs have succeeded in placing several of these initiatives on local ballots in cities and villages across Ohio and in adjacent States over the past several election cycles.

7.     Plaintiffs seek to place these same initiatives on local November 3, 2020 election ballots in cities and villages across Ohio, including but not limited to Adena, Ohio and Cadiz, Ohio.

8.     Plaintiffs on February 27, 2020 filed proposed initiatives in compliance with O.R.C. § 731.32's first filing requirement with the relevant city auditors and village clerks in Jacksonville, Ohio, Timble, Ohio, and previously in Maumee, Ohio, in order to have those initiatives once sufficient signatures were collected included on local November 3, 2020 ballots.

9.     Plaintiffs have been prevented from collecting the needed supporting signatures of Ohio voters required by Ohio law in order to place their initiatives on these and other local November 3, 2020 election ballots by the COVID-19 pandemic and Defendant DeWine's and Defendant Acton's emergency orders.

10.     Defendant Richard "Mike" DeWine is the Governor of Ohio and is responsible for issuing Ohio's many emergency orders banning gatherings, shuttering businesses and other public places, requiring that people stay and shelter at home, and making it impossible for Plaintiffs to collect the signatures needed to place their initiatives on local November 3, 2020 election ballots in cities and villages across Ohio.

11.     Defendant Amy Action is the Director of Ohio's Department of Health and is responsible for issuing Ohio's many emergency orders banning gatherings, shuttering businesses and other public places, requiring that people stay and shelter at home, and making it impossible for Plaintiffs to collect the signatures needed to place their initiatives on local November 3, 2020 election ballots in cities and villages across Ohio.

12.     Defendant Frank LaRose is Ohio's Secretary of State and as such is vested by Ohio law with the authority to enforce Ohio's election laws and to direct that local elections boards comply with Ohio law, the Constitution of the United States, and his own directives and advisories. *See* O.R.C. § 3501.05(B), (C) & (M); *Rosen v. Brown*, 970 F.2d 169, 171 (6th Cir. 1992); *Hunter v. Hamilton County Board of Elections*, 850 F. Supp.2d 795, 806 (S.D. Ohio 2012) ("The

Ohio Secretary of State is the state's chief elections officer. …The Secretary of State's election-related duties include "[i]ssu[ing] instructions by directives and advisories ... to members of the boards as to the proper methods of conducting elections;" "[p]repar[ing] rules and instructions for the conduct of elections;" and "[c]ompel[ling] the observance by election officers in the several counties of the requirements of the election laws."") (citations omitted).

13.    At all relevant times Defendants in this action were and are engaged in state action and were and are acting under color of Ohio law.

### Ohio Circulation and Signature Collection Requirements

14.    Ohio, like many States, recognizes the right of its citizens to use popular democratic measures to make law at both the local and state-wide levels.

15.    Initiatives and referenda are recognized forms of popular democracy in Ohio both under Ohio's Constitution and its Revised Code, and are recognized both for state-wide and local elections.

16.    Ohio adopted popular democracy, including the initiative, as part of its Constitution in 1912. *See* Ohio Const., art. II, § 1.a; The Ohio Legislature: 133rd General Assembly: Ohio Constitution: The 1851 Constitution with Amendments to 2017 (stating this provision took effect in September 1912);[1] *see generally* DAVID SCHMIDT, CITIZEN LAWMAKERS: THE BALLOT INITIATIVE REVOLUTION 16 (Table 1-1) (1989).

17.    Contemporaneous with its adoption of popular democracy in 1912, Ohio adopted its present method of petitioning to include popular measures on ballots, that is, collecting signatures in-person from a number of voters to support placing the proposed initiative on the

---

[1] https://www.legislature.ohio.gov/laws/ohio-constitution/section?const=2.01a.

ballot. *See*, *e.g.*, Ohio Const., art. II, § 1.a. ("the signatures of ten per centum of the electors shall be required upon a petition to propose an amendment to the constitution").

18. Notwithstanding enormous technological advances since 1912, Ohio's signature collection process for popular measures has remained virtually unchanged for over one hundred years.

19. Signature collection as a method of supporting candidates for office in Ohio, by way of comparison, was first implemented in 1929 when the definition of "qualified political party" found in § 4785-61 of the General Code (the immediate predecessor to O.R.C. § 3517.01) was altered to add language stating that "those political associations that presented nominating petitions supported by signatures from voters equal in number to 15% of the total vote for Governor in the preceding election," 1932 OAG 4587 at 10003 (Sep. 1, 1932) (quoting § 4785-61, General Code)), would be qualified political parties.

20. In contrast, Ohio like most States has adopted statutes like the Uniform Electronic Transactions Act to modernize practically all other aspects of its economy and polity; § 1306.06 of the Ohio Revised Code, for example, provides that:

> (A) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.

> (B) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.

> (C) If a law requires a record to be in writing, an electronic record satisfies the law.

> (D) If a law requires a signature, an electronic signature satisfies the law.

O.R.C. § 1306.06.

21. For local governments, Ohio's Constitution guarantees the right to popular democracy in Article II, § 1.f., also adopted in 1912, which states:

> The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law.

Ohio Const., art. II, § 1.f.[2]

22.     Section 731.28 of the Ohio Revised Code implements Article II of the Ohio Constitution by providing that "[o]rdinances and other measures providing for the exercise of any powers of government granted by the constitution or delegated to any municipal corporation by the general assembly may be proposed by initiative petition."

23.     In order to place an initiative on a local election ballot, a citizen of Ohio must comply with the requirements of Chapter 731 of the Ohio Revised Code.

24.     Local initiatives in Ohio must be supported by voters' signatures that are gathered and witnessed in-person by circulators who can attest to their validity.

25.     The process of petitioning to place a popular measure on a local election ballot begins with the filing of the "proposed ordinance measure" as an initiative or referendum "before circulating such petition … with the city auditor or the village clerk." O.R.C. § 731.32.

26.     There is no specific, stated deadline for filing a popular measure with village auditors and village clerks under O.R.C. § 731.32 or any other statute.

27.     Following the filing of a proposed ordinance measure with the city auditor or the village clerk, circulators of initiative petitions may begin collecting supporting signatures by circulating among voters "a full and correct copy of the title and text of the proposed ordinance or other measure," O.R.C. § 731.31, and having voters sign their names in support of the proposed ordinance measure's inclusion on the local ballot.

---

[2] https://www.legislature.ohio.gov/laws/ohio-constitution/section?const=2.01f.

28.     "Each signer of any such petition must be an elector of the municipal corporation in which the election, upon the ordinance or measure proposed by such initiative petition, or the ordinance or measure referred to by such referendum petition, is to be held." *Id.*

29.     "Petitions shall be governed in all other respects by the rules set forth in section 3501.38 of the Revised Code." O.R.C. § 731.31.

30.     Ohio Revised Code § 3501.38 provides, in relevant part:

(A) Only electors qualified to vote on the candidacy or issue which is the subject of the petition shall sign a petition. Each signer shall be a registered elector pursuant to section 3503.01 of the Revised Code. The facts of qualification shall be determined as of the date when the petition is filed.

(B) Signatures shall be affixed in ink. Each signer may also print the signer's name, so as to clearly identify the signer's signature.

(C) Each signer shall place on the petition after the signer's name the date of signing and the location of the sig ner's voting residence, including the street and number if in a municipal corporation or the rural route number, post office address, or township if outside a municipal corporation. The voting address given on the petition shall be the address appearing in the registration records at the board of elections.

31.     Section 3501.38(E) of the Ohio Revised Code states in relevant part:

the circulator shall indicate the number of signatures contained on it, and shall sign a statement made under penalty of election falsification that the circulator witnessed the affixing of every signature, that all signers were to the best of the circulator's knowledge and belief qualified to sign, and that every signature is to the best of the circulator's knowledge and belief the signature of the person whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code.

32.     Section 3501.38 also states:

(J) All declarations of candidacy, nominating petitions, or other petitions under this section shall be accompanied by the following statement in boldface capital letters: WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE.

(K) All separate petition papers shall be filed at the same time, as one instrument.

33.     Section 731.28 of the Ohio Revised Code provides that an "initiative petition must contain the signatures of not less than ten per cent of the number of electors who voted for governor at the most recent general election for the office of governor in the municipal corporation."

34.     "When a petition is filed with the city auditor or village clerk, signed by the required number of electors proposing an ordinance or other measure, such auditor or clerk shall, after ten days, transmit a certified copy of the text of the proposed ordinance or measure to the board of elections." O.R.C. § 731.28.

35.     "The board shall examine all signatures on the petition to determine the number of electors of the municipal corporation who signed the petition. The board shall return the petition to the auditor or clerk within ten days after receiving it, together with a statement attesting to the number of such electors who signed the petition." *Id.*

36.     Upon receipt of the proposed measure and supporting signatures from the local board of elections found to be sufficient by the local board of elections, the city auditor or village clerk then has a ministerial duty to certify to the board of elections by 4 pm on the day that occurs ninety days before the next election "the validity and sufficiency of the petition." *State ex rel. Harris v. Rubino*, 155 Ohio St.3d 123, 127, 119 N.E.3d 1238, 1243 (2018).

37.     Under Ohio law, including Ohio Revised Code §§ 731.28 & .31, a person proposing to place a popular measure on a local election ballot through Ohio's initiative process must gather signatures from a number of voters equal to 10% of the number of votes cast in the last gubernatorial election in that locale and submit those signatures to the city auditor or village clerk no later than at least twenty days before the ninety-day deadline stated in Ohio Revised Code § 731.28. *See generally State ex rel. Harris v. Rubino*, 155 Ohio St.3d 123, 127, 119

N.E.3d 1238, 1243 (2018) ("The statute thus sets out the following procedure: (1) petitioners submit the municipal initiative petition to the city auditor, (2) the auditor holds the petition for 10 days, (3) the auditor transmits the petition to the board of elections to determine the number of valid signatures, (4) the board certifies the number of valid signatures and returns the petition to the auditor [within ten days, *see* O.R.C. § 731.28], (5) the auditor certifies to the board the validity and sufficiency of the petition, and (6) the board submits the petition to the electors at the next election occurring 90 days after the auditor's certification.").

38.     For the November 2020 general election ballot, the ninety-day deadline stated in O.R.C. § 731.28 is August 5, 2020.

39.     Plaintiffs in the present case must gather signatures from a number of voters equal to 10% of the total gubernatorial vote in the city or village where they seek to include an initiative and submit these signatures to the city auditor or village clerk no later than approximately July 15, 2020 in order to have that initiative included on the cities' and villages' November 3, 2020 election ballots.

40.     Because the number of voters who vote in gubernatorial elections varies between cities and village in Ohio, no single figure exists for initiative petitioners who seek to comply with O.R.C. § 731.28.

### Enter the Pandemic

41.     Because of the global COVID-19 pandemic, Defendant DeWine on March 9, 2020 declared a state of emergency in Ohio.  *See* Executive Order 2020-01D.[3]

---

[3] https://governor.ohio.gov/wps/portal/gov/governor/media/executive-orders/executive-order-2020-01-d.

42.     Before Defendant DeWine's declaration of emergency in Ohio, the World Health Organization (WHO) on January 30, 2020 declared a Public Health Emergency of International Concern.

43.     On January 31, 2020, the President of the United States suspended entry into the United States of foreign nationals who had traveled to China.  *See* Proclamation on Suspension of Entry as Immigrants and Nonimmigrants of Persons who Pose a Risk of Transmitting 2019 Novel Coronavirus.[4]

44.     On January 31, 2020, the Director of the National Center for Immunization and Respiratory Diseases at the Centers for Disease Control and Prevention (CDC) announced that COVID-19 had spread to the United States.  *See* Press Release: CDC Confirms Person-to-Person Spread of New Coronavirus in the United States.[5]

45.     On March 3, 2020, Defendant DeWine announced that the Arnold Sports Festival, a large gathering of athletes and spectators in downtown Columbus, Ohio, be closed to spectators.  *See* Shawn Lanier, Arnold Sports Festival cancels convention due to coronavirus, will allow athletes to compete, NBCi.com, March 3, 2020.[6]

---

[4] https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-persons-pose-risk-transmitting-2019-novel-coronavirus/.

[5] https://www.cdc.gov/media/releases/2020/p0130-coronavirus-spread.html.

[6] https://www.nbc4i.com/news/local-news/dewine-ginther-set-press-conference-on-arnold-classic/.

46. On March 13, 2020, the Columbus Metropolitan Library, one of the largest public libraries in the State, closed its branches. *See* Press Release: Columbus Metropolitan Library to close in response to COVID-19 coronavirus, March 13, 2020.[7]

47. Parades and events were canceled throughout Ohio at this same time, including the Mid-American Conference Men's and Women's Basketball tournament in Cleveland, Ohio, the Columbus International Auto Show in Columbus, Ohio, and St. Patrick's Day parades throughout the State. *See generally* Mark Ferenchik, Coronavirus: What's closed, canceled in Columbus area, Columbus Dispatch, March 12, 2020.[8]

48. On March 13, 2020, the President of the United States declared a national emergency retroactive to March 1, 2020. *See* Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak.[9]

49. Beginning with Ohio State University on or about March 9, 2020, *see* OHIO STATE SUSPENDS CLASSES UNTIL MARCH 30 DUE TO CORONAVIRUS OUTBREAK. The Lantern, March 9, 2020,[10] colleges and universities throughout Ohio began closing their physical facilities and remaining closed until unknown future dates.

50. On March 12, 2020, Defendant DeWine and his Director of Ohio's Department of Health began ordering mandatory emergency closings throughout Ohio, including the following:

---

[7] https://www.columbuslibrary.org/press/columbus-metropolitan-library-close-response-covid-19-coronavirus.

[8] https://www.dispatch.com/news/20200312/coronavirus-whats-closed-canceled-in-columbus-area.

[9] https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[10] https://www.thelantern.com/2020/03/ohio-state-suspends-classes-until-march-30-due-to-coronavirus-outbreak/.

A. On March 12, 2020, Defendant DeWine ordered all private and public schools, grades K through 12, closed; *see* News Release: Governor DeWine Announces School Closures;[11]

B. On March 12, 2020, Defendant DeWine's Department of Health banned all gatherings of 100 or more persons; *see* Director's Order: In re: Order to Limit and/or Prohibit Mass Gatherings in Ohio;[12]

C. On March 17, 2020, Defendant DeWine's Department of Health's ban on mass gatherings was extended to ban gatherings of 50 or more persons and to direct the closures of most recreational activities in Ohio; *see* Director's Order: In re: Amended Order to Limit and/or Prohibit Mass Gatherings in Ohio;[13]

D. On March 15, 2020, Defendant DeWine's Department of Health closed all restaurants, liquor stores and eating establishments and limited them to carry-out only; *See* Director's Order: In re: Order Limiting the Sale of Food and Beverages, Liquor, Beer and Wine, to Carry-out and Delivery Only;[14]

---

[11] https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/announces-school-closures.

[12] https://coronavirus.ohio.gov/wps/wcm/connect/gov/b815ab52-a571-4e65-9077-32468779671a/ODH+Order+to+Limit+and+Prohibit+Mass+Gatherings%2C+3.12.20.pdf?MOD=AJPERES&CONVERT_TO=url&CACHEID=ROOTWORKSPACE.Z18_M1HGGIK0N0JO00QO9DDDDM3000-b815ab52-a571-4e65-9077-32468779671a-n6IAHNT.

[13] https://coronavirus.ohio.gov/wps/wcm/connect/gov/dd504af3-ae2c-4d2e-b2bd-02c1a3beed89/Director%27s+Order-+Amended+Mass+Gathering+3.17.20+%281%29.pdf?MOD=AJPERES&CONVERT_TO=url&CACHEID=ROOTWORKSPACE.Z18_M1HGGIK0N0JO00QO9DDDDM3000-dd504af3-ae2c-4d2e-b2bd-02c1a3beed89-n5829IL.

[14] https://coronavirus.ohio.gov/wps/wcm/connect/gov/aa5aa123-c6c9-4e95-8a0d-bc77409c7296/Health+Director+Order+Limit+Food%2C+Alcohol+Sales+to+Carry+Out+Delivery+Only.pdf?MOD=AJPERES&CONVERT_TO=url&CACHEID=ROOTWORKSPACE.Z18_M1HGGIK0N0JO00QO9DDDDM3000-aa5aa123-c6c9-4e95-8a0d-bc77409c7296-n58291W.

E.      On March 16, 2020, Defendant DeWine's Department of Health closed all polling places in Ohio and thereby canceled Ohio's March 17, 2020 primary election, *see* Director's Order: In re: Closure of Polling Locations in the State of Ohio on Tuesday, March 17, 2020,[15] resulting in a rescheduling of the primary election by mail-in vote only on April 28, 2020; *see* Ohio Secretary of State Directive 2020-07;[16]

F.      On March 19, 2020, Defendant DeWine's Department of Health closed all barber shops, hair salons, day spas, tattoo parlors, and similar places of business; *see* Director's Order;[17] and

G.      On March 22, 2020, Defendant DeWine's Department of Health ordered that everyone in Ohio "stay at home or at their place of residence" unless subject to a specific exception for providing or receiving "essential" services, maintain at least a six foot social distance between themselves and others outside "a single household or living unit," and completely banning gatherings of ten or more people. *See* Director's Stay at Home Order: Re: Director's Order that All Persons Stay at Home Unless Engaged in Essential Work or Activity.[18]

---

[15] https://coronavirus.ohio.gov/wps/wcm/connect/gov/7c8309f8-9f28-4793-9198-05968d01a640/Order+to+Close+Polling+locations+3-16-2020.pdf?MOD=AJPERES&CONVERT_TO=url&CACHEID=ROOTWORKSPACE.Z18_M1HGGIK0N0JO00QO9DDDDM3000-7c8309f8-9f28-4793-9198-05968d01a640-n5829UP.

[16] https://www.ohiosos.gov/globalassets/elections/directives/2020/dir2020-07pdf.pdf.

[17] https://coronavirus.ohio.gov/wps/wcm/connect/gov/273f5e4f-823b-4ed1-a119-7e7c6851f45a/Director%27s+Order+closing+hair+salons+nail+salons+barber+shops+3-19-2020.pdf?MOD=AJPERES&CONVERT_TO=url&CACHEID=ROOTWORKSPACE.Z18_M1HGGIK0N0JO00QO9DDDDM3000-273f5e4f-823b-4ed1-a119-7e7c6851f45a-n582aXd.

[18] https://coronavirus.ohio.gov/static/DirectorsOrderStayAtHome.pdf.

51.     The aforementioned orders remain in place throughout Ohio at the time of the filing of this Verified Complaint and there is no reasonable forecast as to when they will be lifted or altered in the future.

52.     Because of the presence of the pandemic in Ohio, the restrictions on businesses, the prohibitions on gatherings, the requirements of distancing, and the mandatory stay at home order, it is literally impossible for people outside the same family unit to solicit others for signatures needed to support the initiative petitions needed to place initiatives and referenda on Ohio's November 2020 election ballot.

53.     Petition circulators rely heavily on public events and gatherings, such as sporting events, festivals, parades, conferences, concerts, rallies, and primary elections (including the canceled March 17, 2020 primary election) to collect signatures.

54.     Petition circulators rely heavily on the human traffic that occurs inside and outside businesses and places of public accommodation, such as office buildings, college campuses, parks, theaters, shopping malls, libraries and commons to collect signatures.

55.     Signature collection by mail is inefficient and unproductive, as pointed out by the United States District Court in *Esshaki v. Whitmer*, 2020 WL 1910154, *5 (E.D. Mich., Apr. 20, 2020) ("in the context of the COVID-19 pandemic, the efficacy of a mail-based campaign is unproven and questionable at best. Conducting an effective mail campaign in the current environment presents a significant hurdle").

56.     Gathering in-person signatures in Ohio under the current circumstances is not only illegal under Ohio law but risks spreading COVID-19.

57.     Several states, because of the pandemic, have either voluntarily or by judicial order either reduced or eliminated the number of signatures required for a candidate to be placed on the

ballot. *See, e.g., Esshaki v. Whitmer*, 2020 WL 1910154, at *12 (E.D. Mich., Apr. 20, 2020) (reducing the statutory signature requirement in Michigan by 50 percent); *Goldstein v. Sec'y of Commonwealth*, 2020 WL 1903931, at *9 (Mass., Apr. 17, 2020) (reducing the signature requirement in Massachusetts by 50 percent); N.Y. Exec. Order No. 202.2 (Mar. 14, 2020) (reducing the statutory signature requirement to 30 percent); H. 681, 2019–2020 Gen. Assemb., Adjourned Sess. (Vt. 2020) (suspending Vermont's statutory signature requirement entirely).

58.     In Illinois, a federal Court last week in *Libertarian Party of Illinois v. Pritzker*, 2020 WL 1951687 (N.D. Ill., Apr. 23, 2020), reduced Illinois's statutory signature requirements for all candidates to 10 percent of previous levels, extended their filing deadlines from June 22, 2020 until August 7, 2020, enjoined Illinois's in-person, witnessed, wet and notarized signature collection process in order to allow the electronic dissemination and collection of supporting signatures, and even directly placed on Illinois's ballots the candidates of the Libertarian and Green Parties in contests where the two parties had previously placed candidates in earlier elections.

59.     Oklahoma's Governor has indefinitely suspended the deadlines imposed on signature collection for State initiatives. *See* Michael Rogers, Oklahoma Secretary of State and Education, Letter dated March 18, 2020.[19]

**Injury-in-Fact Caused Plaintiffs**

60.     Ohio law, together with the COVID-19 outbreak and Defendants' orders, directly cause injury-in-fact to Plaintiffs and Plaintiffs' First and Fourteenth Amendment rights.

---

[19]https://www.boisestatepublicradio.org/sites/idaho/files/202003/sos_prpnt_ntc_and_sc_order_03-18-20.pdf.

61. Plaintiffs' injuries are fairly traceable to the Ohio laws requiring in person signature collection for candidates, the COVID-19 pandemic, and the Defendants' orders described in this action.

62. This Court has the power to properly redress Plaintiffs' injuries by issuing prospective injunctive and declaratory relief either placing their initiatives or prohibiting enforcement of Ohio's signature requirements for popular measures such as initiatives and referenda for local elections during Ohio's November 3, 2020 general election.

63. This Court has authority to and may properly redress Plaintiffs' injuries by ordering appropriate relief by either directing that Plaintiffs' initiatives be placed on local election ballots or by enjoining enforcement of Ohio's in-person signature collection requirement, extending the deadline for submitting supporting signatures to city auditors, village clerks and local election boards of elections in order to qualify popular measures for local November 3, 2020 election ballots, directing Defendants to develop efficient and realistic procedures and practices for gathering supporting signatures from voters and submitting them to local officials electronically in order to qualify initiatives for local November 3, 2020 election ballots, and reducing the number of needed voters' signatures in support of proposed popular measures to no more than ten percent of the number now prescribed by Ohio law.

## FIRST CAUSE OF ACTION
## FIRST AMENDMENT

64. All previous paragraphs and allegations are incorporated herein.

65. Under present circumstances, Ohio's ballot-access requirements for popular measures proposed for Ohio's November 3, 2020 election violate rights guaranteed to these Plaintiffs by the First and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

66.    A real and actual controversy exists between the parties.

67.    Plaintiffs have no adequate remedy at law other than this action for declaratory and equitable relief.

68.    Plaintiffs are suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

### SECOND CAUSE OF ACTION
### FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

69.    All previous paragraphs and allegations are incorporated herein.

70.    Under present circumstances, Ohio's ballot-access requirements for popular measures proposed for Ohio's November 3, 2020 election violate rights guaranteed to these Plaintiffs by the Equal Protection Clause of the Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

71.    A real and actual controversy exists between the parties.

72.    Plaintiffs have no adequate remedy at law other than this action for declaratory and equitable relief.

73.    Plaintiffs are suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

### THIRD CAUSE OF ACTION
### FOURTEENTH AMENDMENT DUE PROCESS CLAUSE

74.    All previous paragraphs and allegations are incorporated herein.

75.    Under present circumstances, Ohio's emergency orders prohibiting in-person meetings have so altered Ohio's ballot-access requirements for popular measures proposed for Ohio's November 3, 2020 election that they have not only made it impossible for those proposing popular measures to comply with existing Ohio law, they have changed Ohio's ballot

requirements in the midst of the 2020 election and thereby violated rights guaranteed to these Plaintiffs by the Due Process Clause of the Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

76.     A real and actual controversy exists between the parties.

77.     Plaintiffs have no adequate remedy at law other than this action for declaratory and equitable relief.

78.     Plaintiffs are suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

## **DEMAND FOR RELIEF**

79.     **WHEREFORE**, the Plaintiffs respectfully pray that this Court:

(1)     Assume original jurisdiction over this case;

(2)     Issue a temporary restraining order, preliminary injunction and/or permanent injunction against Defendants either directing Defendants to immediately place Plaintiffs' marijuana decriminalization initiatives on local November 3, 2020 election ballots without the need for supporting signatures from Ohio voters, or alternatively:

(3)     Issue a temporary restraining order, preliminary injunction and/or permanent injunction against Defendants (i) prohibiting enforcement of Ohio's in-person supporting signature requirements for  candidates for office for Ohio's November 3, 2020 general election; (ii) extending the deadline for submitting supporting signatures to city auditors, village clerks and local election boards of elections in order to qualify popular measures for local November 3, 2020 election ballots to September 1, 2020; (iii) directing Defendants to develop at their expense timely, efficient and realistic procedures and practices for gathering supporting signatures from voters and submitting them to local officials electronically in order to qualify initiatives for local

November 3, 2020 election ballots; and (iv) reducing the number of needed voters' signatures in support of proposed popular measures for local November 3, 2020 election ballots in Ohio to no more than ten percent of the number now prescribed by Ohio law; and

(4)     Issue a declaratory judgment against Defendants stating that, in light of the current public health emergency caused by the COVID-19 pandemic and executive orders requiring that Ohio citizens stay at home and shelter in place, Ohio's supporting in-person signature requirements and submission deadlines for popular measures proposed for local November 3, 2020 elections in Ohio violate the First and Fourteenth Amendments to the United States Constitution; and

(5)     Order Defendants to pay to Plaintiffs their costs and a reasonable attorney's fees under 42 U.S.C. § 1988(b); and

(6)     Retain jurisdiction over this matter and order Defendants to provide to Plaintiffs any additional relief the Court deems just.

Respectfully submitted,

*/s/ Mark R. Brown*

Oliver Hall
Center for Competitive Democracy
P.O. Box 21090
Washington, DC 20009
202-248-9294
oliverhall@competitivedemocracy.org
Attorney for Plaintiffs
*Pro hac vice pending*

Mark R. Brown
303 E. Broad Street
Columbus, Ohio 43215
614-236-6590
Attorney for Plaintiffs

## VERIFICATION OF PLAINTIFF
### (pursuant to 28 U.S.C. § 1746)

I, Chad Thompson, verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _4-27-2020_

_____
Chad Thompson
Plaintiff

## VERIFICATION OF PLAINTIFF
### (pursuant to 28 U.S.C. § 1746)

I, William Schmitt, verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _____4-27-2020_____

_____
William Schmitt
Plaintiff

## VERIFICATION OF PLAINTIFF
### (pursuant to 28 U.S.C. § 1746)

I, Don Keeney, verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _April 27- 2020_

_Don Keeney_
Don Keeney
Plaintiff

## CERTIFICATE OF SERVICE

I certify that this Verified Complaint was electronically served by e-mail delivery on Defendants through their attorney, Julie Pfeiffer, Associate Assistant Attorney General – Constitutional Offices, Office of Ohio Attorney General Dave Yost, 30 East Broad Street, Columbus, OH 43215, julie.pfeiffer@OhioAttorneyGeneral.gov, this 27th day of April 2020.

/s/ Mark R. Brown
Mark R. Brown