IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CHAD THOMPSON, et al.,** | Case No. 20 CV 02129 |
| Plaintiffs, and | Judge Edmund A. Sargus Jr.<br>Magistrate Judge Chelsey M. Vascura |
| **OHIOANS FOR SECURE AND FAIR ELECTIONS, et al.,** | |
| Plaintiff-Intervenors, | |
| v. | |
| **RICHARD DEWINE, ET AL.,** | |
| Defendants. | |

## MOTION TO INTERVENE

Intervenors Ohioans for Secure and Fair Elections, Darlene L. English, Laura A. Gold,  Hasan Kwame Jeffries, Isabel C. Robertson, Ebony Speakes-Hall, Paul Moke, Andre Washington, Scott Campbell, and Susan Ziegler ("Intervenors") move to intervene in this action as of right as plaintiffs under FRCP 24(a)(2), or in the alternative permissively under FRCP 24(b)(1)(B).

Intervenors include the proponents of an amendment to the Ohio Constitution, as well as  intended petition circulators and signatories in support of that amendment. Like Plaintiffs,  Intervenors seek to place a proposed ballot measure before the voters in the November 3, 2020 general election but are facing insurmountable challenges to their efforts as a result of the coronavirus pandemic.  Intervenors should be permitted to intervene in this action because their claims and those of the Plaintiffs share common

1

questions of law and fact. Additionally, any relief that Plaintiffs are able to obtain would necessarily impact Intervenors. Intervenors need to ensure that any relief ordered in this case does not undercut their rights by setting a standard that Plaintiffs could meet but Intervenors could not. Last, Intervenors' participation in the lawsuit would not delay or prejudice the adjudication of the original parties' rights. Accordingly, Intervenors are entitled to appear in this action to ensure adequate representation of their own interests. The only alternative, an independently filed lawsuit, would be a highly inefficient use of judicial resources.

      A Memorandum in Support of this Motion is attached.

Respectfully submitted,

/s/ *Freda J. Levenson*
Freda J. Levenson (0045916)
*Trial Counsel*
Elizabeth Bonham (0093733)
ACLU of Ohio Foundation
4506 Chester Avenue
Cleveland, Ohio 44103
(216) 472-2220
flevenson@acluohio.org
ebonham@acluohio.org

David J. Carey (0088787)
ACLU of Ohio Foundation
1108 City Park Avenue, Suite 203
Columbus, Ohio 43206
(614) 586-1972
dcarey@acluohio.org

T. Alora Thomas-Lundborg*
Dale Ho*
American Civil Liberties Union
125 Broad Street
New York, NY 10004
Tel: 212-519-7866
Tel: 212-549-2693

        athomas@aclu.org
        dale.ho@aclu.org
        *Pro Hac Vice* Forthcoming

*Attorneys for Intervening Plaintiffs*

**MEMORANDUM IN SUPPORT**

I. **INTRODUCTION**

Ohio is in the midst of a grave public health crisis. The spread of COVID-19, a severe respiratory disease caused by a novel coronavirus, has left the state reeling, and will continue to do so for the next several months at least. Public venues and accommodations across the state are shut down, events have been cancelled, businesses are shut down, and schools and universities are closed. Ohioans, like all Americans, have been advised to stay at home and avoid face-to-face human contact. Most are now sheltering in place. Even with the partial reopening of the economy, schools, restaurants and bars, all places of public amusement and spectator and recreational sports are to remain closed, and even for those businesses that are permitted to open, it will remain mandatory that they ensure a minimum of six feet between people and they are required to stagger entry of customers and guests. There will thus be no gatherings or close encounters between unrelated individuals.

This public health catastrophe has had a devastating effect on Ohioans' ability to circulate petitions to place issues on the ballot in the November 3, 2020 general election. It is flatly impossible, under these circumstances, for Intervenors to successfully collect 442,958 valid signatures from across the state—each one gathered in an individual, face-to-face encounter between circulator and petition signatory, handwritten in ink, and personally witnessed by the circulator— and to submit them to the Ohio Secretary of State by July 1. Yet under Ohio law, that is exactly what is required for Intervenors to place their amendment on the ballot.

The original plaintiffs in this action, Chad Thompson, William Schmitt, and Don Keeney, are seeking a means to advance their proposed initiatives and referenda —and thus vindicate their fundamental rights of political speech and ballot access—in this daunting

situation. Intervenors, including Ohioans for Secure and Fair Elections, share that same core goal, and seek similar relief to allow their own proposed constitutional amendment to proceed pursuant to their rights under the First and Fourteenth Amendments of the U.S. Constitution.

The original Plaintiffs have asked this Court to revise or suspend a series of formal requirements in Ohio's signature-gathering laws—such as the requirement that these signatures be obtained in person, the required number of signatures, and the deadlines for submitting them. Because Intervenors are similarly situated, any relief that Plaintiffs obtain is likely to impact Intervenors' rights as well. Intervenors have a powerful interest in joining this action as a result. Under FRCP 24 and to preserve judicial economy, this Court should allow Intervenors to join this action rather than being forced to initiate a separate one.

## II. STATEMENT OF FACTS

Intervenor Ohioans for Secure and Fair Elections ("OSFE") is a ballot issue committee putting forth the Secure and Fair Elections Amendment (the "Proposed Amendment") to the Ohio Constitution. The Proposed Amendment is designed to protect Ohioans' right to vote, expand opportunities to exercise that right, and ensure that voting in Ohio remains secure. *See* Ex. A (Declaration of Antonia Dippold-Webb) at ¶ 2. Intervenors Darlene L. English, Laura A. Gold, Hasan Kwame Jeffries, Isabel C. Robertson, and Ebony Speakes-Hall are the committee members of OSFE. Intervenors Paul Moke and Andre Washington wish to serve as volunteer petition circulators for the Proposed Amendment, while Intervenors Scott Campbell and Susan Ziegler wish to sign petitions.

OSFE has worked diligently to place its Amendment on the November 2020 ballot. On January 22, 2020, OSFE submitted a written petition to approve a summary of its proposed Amendment to Ohio Attorney General Dave Yost containing the signatures of more than 1,000 qualified Ohio electors. Defendant LaRose had publicly criticized the petition effort and expressed

his opposition to it that day.  *See*, Jackie Borchardt, "Ohio Measure to Expand Voting Rights Could be on Ballot in November," Cincinnati Enquirer. On January 31, 2020,  Attorney General Yost rejected OSFE's summary. OSFE promptly rewrote its summary and recirculated it to Ohio electors, received signatures of more than 1,000 qualified electors, and resubmitted its summary to Attorney General Yost on February 10, 2020. On February 20, Attorney General Yost certified the summary of the proposed Amendment. On receipt of the Attorney General's February 20, 2020 certification that the summary was a fair and truthful summary of the Amendment, the Ohio Ballot Board was required to determine whether it contained only one proposed constitutional amendment.  The Ballot Board met on March 2, 2020, and voted that day, finding that the Proposed Amendment contained four subjects rather than one.  Three days later, OSFE filed an expedited action for mandamus in the Ohio Supreme Court to compel the Ballot Board to certify the Proposed Amendment as a single issue.  On April 14, 2020 the Ohio Supreme Court found that the Proposed Amendment was a single issue and ordered the Ballot Board to meet and certify it as such. *See State ex rel. Ohioans for Secure and Fair Elections v. LaRose*, 2020-Ohio-1459, ¶ 23 . Finally, a week ago, on April 23, the Ballot Board met and certified the Proposed Amendment as a single issue.

      Although, as a result of the delays occasioned by the Ballot Board's decision and the ensuing litigation, OSFE  has not yet begun gathering signatures, Ex. A at ¶¶ 4-6.  Absent the coronavirus pandemic, OSFE would be commencing its signature collection effort on April 23. OFSE has spent over half a million dollars in its effort to secure a place on the November 2020 ballot. *See* Ex. A at ¶¶ 4-5, 19.  Now, instead of being in the field gathering signatures in ink, Intervenors face the  same insurmountable barrier as Plaintiffs to ballot access—the disastrous pandemic and the widespread social distancing measures taken in response. *See id*.

Ohio has already absorbed tragic losses from the pandemic, with 16,769 confirmed cases and as many as hundreds of thousands more suspected, and a confirmed death toll of 799.[1] The Centers for Disease Control and Prevention (CDC), the World Health Organization (WHO), the President of the United States, the Governor of Ohio, the Director of the Ohio Department of Health (ODH), and news sources from the local to international levels—have advised or require people to avoid large gatherings, stay away from public events, and practice "social distancing" by maintaining a space of at least six feet from anyone. Universities, libraries, event spaces, and government offices closed weeks ago. Major events were cancelled across the state. Restaurants and bars shifted to carry-out services, and many businesses shifted to remote operation or simply closed. *See generally* Complaint in Intervention, filed concurrently herewith, at ¶¶ 30-45 (collecting news sources).

Ohio Department of Health Director Amy Acton issued a "stay at home" order, exempting only essential services.[2] Ohioans—including Intervenors—have largely been staying at home, and avoiding face-to-face contact with others as much as possible. Circulating petitions at large public events and in places of public accommodation is not merely important to a signature-gathering campaign, it is utterly indispensable. Ex. A at ¶¶ 14-17. Even further, the widespread practice of social distancing—though surely a wise means of controlling the spread of the coronavirus—heavily dissuades, if not totally precludes, people from engaging in the face-to-face contact involved in signature-gathering. *Id*. at ¶¶ 13, 17.

Even with the partial reopening of the economy, schools, restaurants and bars, all places

---

[1] *See* Coronavirus in the U.S.:Latest Map and Case Count, nytimes.com accessed April 29, 2020.

[2] Ohio Department of Health, *Director's Stay at Home Order* (Mar. 22, 2020) available at https://content.govdelivery.com/attachments/OHOOD/2020/03/22/file_attachments/1407840/Stay%20Home%20Order.pdf (accessed April 30, 2020).

of public amusement and spectator and recreational sports are to remain closed, and even for those businesses that are permitted to open, it will remain mandatory that they "ensure minimum 6 ft between people" and they are required to "stagger entry of customers and guests."[3] There will be no gatherings or close encounters between unrelated individuals. Signature-gathering under Ohio law is a costly, time-consuming, and labor-intensive process even when it is *not* occurring in a pandemic. *See* Ex. A. at ¶ 7. A number of restrictions, however, are simply incompatible with the present circumstances:

- Obtaining at least **442,958 valid signatures**,[4] which is 10% of the statewide vote for governor in the last gubernatorial election, *see* Ohio Const. Art. II § 1a; R.C. 3519.14;[5]

- In at least half of Ohio's 88 counties, obtaining signatures from at least 5% of the gubernatorial vote from that county, *see* Ohio Const. Art. II § 1g; R.C. 3519.14;

- Affixing all signatures in ink, *see* Ohio Const. Art. II § 1g; R.C. 3501.38(B);

- Ensuring that "no person shall write any name other than the person's own," and no signatures are by proxy, *see* R.C. 3501.38; Ohio Const. Art. II § 1g;

- Witnessing the affixing of every signature, and providing an attestation thereto, *see* Ohio Const. Art. II § 1g.

- These signatures must be submitted to the Secretary of State's office in electronic form, with accompanying summaries and indices, not later than 125 days prior to the election, or July 1, 2020. *See* Ohio Const. Art. II § 1a; R.C. 3519.16(B)

---

[3] https://www.news5cleveland.com/news/continuing-coverage/coronavirus/reopening-ohio-gov-dewine-gives-dates-protocols-for-reopening-businesses-beginning-may-1

[4] Because signatures are frequently found to be invalid, it is standard industry practice to gather 150% of the requirement out of caution—here, approximately **675,000 signatures**.

[5] *See* Office of the Ohio Attorney General, *Initiative and Referendum Signature Requirements*, https://www.ohioattorneygeneral.gov/Legal/Ballot-Initiatives/Initiative-and-Referendum-Signature-Requirements (accessed April 30, 2020).

Intervenors' rights are severely burdened by the same laws and circumstances as Plaintiffs: Ohio's legal structures are too rigid to protect ballot access in light of this unprecedented pandemic. Most of everyday life has moved to people's home and interactions are conducted electronically rather than in person. Yet, Ohio's law prevents the type of communication that has now become a part of daily life, when it comes to ballot initiatives. It impossible for the Proposed Amendment, or any other proposed constitutional amendment, to make its way to the November 3, 2020 general election ballot. *See* Ex. A at ¶ 8.

In an attempt to resolve this matter without the necessity of litigation, Intervenors contacted Defendant by email on March 26, 2020, requesting that Defendant modify and/or decline to enforce Ohio's formal signature requirement. In response on March 27, counsel for Defendant asserted that Defendant "is not free" to do so "even in the current crisis." Nonetheless, Defendant agreed that this crisis calls for extraordinary election measures:

> The current COVID-19 pandemic has upended nearly everything in our lives here in Ohio and in the lives of millions of Americans in many other states across the nation. As I know you are well aware, the pandemic even impacted our primary election. I can appreciate that the current situation has impacted your organization's signature gathering for the proposed amendments.

*See* Ex. B (March 27, 2020 letter from Defendant's office to OSFE's campaign manager). Finally, an Ohio judge of a County Court of Common Pleas has recently found that he too lacks jurisdiction to determine whether Ohio's Constitution violates Intervening Plaintiffs' federal constitutional rights. *Ohioans for Raising the Wage v. LaRose*, No. 20-CV-2381, at 7 (Ohio Com. Pl. Apr. 28, 2020).

Plaintiffs have asked this Court to craft a solution that preserves the state's interests while respecting the constitutional rights of Ohioans to political association and ballot access. *See generally* Pl. Compl. If this Court declares and enjoins certain provisions of Ohio's Constitution related to initiative petitions, it could potentially impact Intervenors. However, given Plaintiffs

focus on local and county initiatives, it is important that Intervenors' rights as a statewide initiative petition is preserved through the Court's ruling.

### III. LAW AND ARGUMENT

Under Federal Rule of Civil Procedure 24(a)(2), the "interest" of an intervenor as of right is to be liberally construed in favor of intervention. *E.g., Bradley v. Milliken,* 828 F.2d 1186, 1192 (6th Cir.1987) (citing *Hatton v. County Bd. of Educ. of Maury County, Tenn.,* 422 F.2d 457, 461 (6th Cir.1970)); Meyer Goldberg, Inc. of Lorain v. Goldberg, 717 F.2d 290, 292 (6th Cir.1983); St. Paul Fire & Marine Ins. Co. v. Summit-Warren Indus. Co., 143 F.R.D. 129, 133 (N.D. Ohio 1992). Similarly, FRCP 24(b)(3), is to be construed very liberally in favor of intervention. *Assoc. Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) (Permissive intervenors need not show standing).

Intervenors' motion—filed within 80 hours of Plaintiffs' Complaint— is inarguably timely, and they are entitled to intervene as of right under Federal Rules Civil Procedure 24(a)(2). In the alternative, this Court should grant permissive intervention under Rule 24(b)(1)(B).

#### A. This Intervention Is Timely, and Special Circumstances Weigh In Its Favor

Any intervention, whether permissive or as of right, must be timely. That is a matter within the sound discretion of the Court, and the following factors should be considered: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).

Each of these factors weighs in favor of intervention here. As to the first and third factors,

this lawsuit was initiated only about 80 hours ago. No answer or responsive briefing has been filed. Timeliness concerns are "construed liberally in favor of proposed intervenors." *Stupak–Thrall v. Glickman,* 225 F .3d 467, 472 (6th Cir. 2000), subsequent appeal at 346 F.3d 579 (6th Cir.2003). Motions to intervene are routinely granted in far less timely circumstances. *See, e.g., Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989) (intervention timely despite a remedial remedy in place); *Jansen v. City of Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1990) (intervention timely six months into the discovery process).

The second and fourth factors are also met. Intervenors seek very similar relief to what Plaintiffs seek: a holding by this Court that a number of formal requirements set by O h i o l a w are invalid as applied to their petition signature campaigns under these extraordinary circumstances. Intervenors and Plaintiffs, however, are all conducting their own petition campaigns; though not adverse, the campaigns ultimately seek different goals, and have made different degrees of progress. If any remedy is ordered, or settlement negotiated, that permits electronic instead of wet ink signatures, in order to have any impact on the destiny of their campaign, Intervenors need a seat at the table. Likewise, a holding extending the due dates for Plaintiffs to turn in signatures would have different implications for Intervenors, so Intervenors need to be present to present their interests.

As to the fifth factor, the extraordinary circumstances at hand cannot be discounted. Ohio is in the midst of a frantic response and adjustment to the coronavirus pandemic, one that has already had considerable impact in the realm of elections. In recent weeks, state officials have taken such extreme measures as suspending a primary election, announcing its rescheduling, and engaging in litigation disputing the schedule.[6]

---

[6] *See generally* Rick Rouan, *Misstatements from LaRose's office sparked election eve chaos in Ohio*, Columbus Dispatch (Mar. 19, 2020), available at

11

By the very nature of this action—as well as its context, in the coronavirus crisis—this Court is being asked to craft a remedy that reconciles fundamental rights of association, speech, and ballot access with a statutory scheme that simply was not designed to enable petitioning during a pandemic. Such extraordinary circumstances necessitate prompt and decisive action by the courts if Ohioans' fundamental rights of political expression and ballot access are to be preserved. Recently federal courts in Illinois and Michigan and a state court in Massachusetts have changed ballot access requirements in light of the coronavirus pandemic. *Libertarian Party of Illinois v. Pritzker*, 2020 WL 1951687, at *4 (N.D. Ill., Apr. 23, 2020); *Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2020 WL 1910154, at *10 (E.D. Mich. Apr. 20, 2020); *Goldstein v. Sec'y of Commonwealth*, No. SJC-12931, 2020 WL 1903931, at *6 (Mass. Apr. 17, 2020). As the parties and this Court work to craft an appropriate remedy, Intervenors must be able to ensure that they, as well as Plaintiffs, see their rights preserved in an evenhanded fashion. The Court, meanwhile, has every interest in not adjudicating these same complex, extraordinary matters twice.

### B. Intervenors Are Entitled to Intervention As of Right

Upon timely application, any party may intervene as of right where, in relevant part:

> (1) … the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

FRCP. 24(a). A party whose constitutional rights are directly impacted by the dispute at hand has a cognizable interest relating to the property or transaction. *See Jansen v. City of Cincinnati*, 904

---

https://www.dispatch.com/news/20200319/misstatements- from-larosersquos-office-sparked- election-eve-chaos-in-ohio (accessed Mar. 25, 2020); *State ex rel. Ohio Democratic Party v. LaRose*, Supreme Court Case No. 2020-0388 (action in mandamus challenging the Secretary of State's effort to reschedule the election).

12

F.2d 336, 342 (6th Cir. 1990) ("The need to settle [constitutional and employment] claims among a disparate group of affected persons militates in favor of intervention").
That is the case with Intervenors here—indeed, their interests substantially parallel Plaintiffs'. Plaintiffs have sought suspension or relaxing of a number of requirements in Ohio law, and Intervenors seek much the same—along with the assurance that any adjustments to the formal requirements of an Ohio petition are sufficient to preserve Intervenors' Proposed Amendment as well as Plaintiffs' ballot access. *See* Complaint at 13 (Prayer for Relief); Complaint in Intervention at 24 (Prayer for Relief).

The disposition of this action may very well "impair or impede [Intervenors'] ability to protect" their interests, should they be excluded from it. For example, should Plaintiffs and Defendants agree, and the Court order, that the number of required signatures should be reduced by some percentage—to a level that Plaintiffs may have surpassed for some initiatives but that Intervenors have not—then Intervenors' interests will be undermined. Requiring Intervenors to then file and argue, and this Court to adjudicate, a separate lawsuit to craft a wholly new set of campaign-specific relief measures would be a waste of judicial resources, and contrary to the policy behind FRCP 24(a)'s liberal construction.

.For the same reasons, Intervenors' interests here are not adequately represented by Plaintiffs. Proposed intervenors bear the burden of demonstrating inadequate representation when both the plaintiff and intervenor have the same ultimate objective. *See Purnell v. City of Akron*, 925 F.2d 941, 949 (6th Cir. 1991); *Bradley v. Milliken,* 828 F.2d 1186, 1192 (6th Cir. 1987); *Meyer Goldberg, Inc. of Lorain v. Goldberg*, 717 F.2d 290, 293 (6th Cir. 1983). However, intervenors' "interests need not be wholly adverse before there is a basis for concluding that existing representation of a different interest may be inadequate." *Jansen v. City of Cincinnati*, 904 F.2d 336, 343 (6th Cir. 1990).

### C. In the Alternative, the Court Should Grant Permissive Intervention

In the alternative, it is within the sound discretion of this Court to grant permissive intervention where an applicant's claim and the original action "have a common question of law or fact." FRCP 24(b)(1)(a). The Court is to consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. *See* FRCP 24(b)(3). But again, this rule is to be construed very liberally in favor of intervention. *Assoc. Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) (Permissive intervenors need not show standing).

Core questions of both law and fact are obviously shared here, to the point that it would flout principles of judicial economy for Intervenors' action to be brought and adjudicated separately. Plaintiffs and Intervenors are all proponents of initiatives sought to be placed before the voters in the November 3, 2020.election. All are heavily impacted by the coronavirus epidemic and the state's responsive measures and find themselves unable to further their respective petition campaigns. All have advanced theories that Ohio's constitutional and statutory scheme for petition signature-gathering simply was not designed to function in a crisis like the coronavirus pandemic while preserving Ohioans' fundamental rights of speech, association, and ballot access. *See* Plaintiffs' Complaint ¶¶ 45-62; Complaint in Intervention ¶¶ 71-92. And all seek similar relief from this Court, as noted above.

There is no reason to suspect that intervention will unduly delay or prejudice Plaintiffs' rights. This case is at a nascent stage, with Plaintiffs' complaint having been filed 80 hours ago, and no responsive pleadings yet filed. Intervenors share the same interest in expedited relief as do Plaintiffs and have no incentive to cause delay.

IV. **CONCLUSION**

For the foregoing reasons, Intervenors Ohioans for Secure and Fair Elections, Darlene L. English, Laura A. Gold, Hasan Kwame Jeffries, Isabel C. Robertson, Ebony Speakes-Hall, Paul Moke, Andre Washington, Scott Campbell, and Susan Ziegler respectfully request that they be allowed to intervene as plaintiffs-in-intervention in this action.

Respectfully submitted,

/s/ *Freda J. Levenson*
Freda J. Levenson (0045916)
    *Trial Counsel*
Elizabeth Bonham (0093733)
ACLU of Ohio Foundation
4506 Chester Avenue
Cleveland, Ohio 44103
(614) 586-1958
flevenson@acluohio.org
ebonham@acluohio.org

David J. Carey (0088787)
ACLU of Ohio Foundation
1108 City Park Avenue, Suite 203
Columbus, Ohio 43206
(614) 586-1972
dcarey@acluohio.org

T. Alora Thomas-Lundborg*
Dale Ho*
American Civil Liberties Union
125 Broad Street
New York, NY 10004
Tel: 212-519-7866
Tel: 212-549-2693
athomas@aclu.org
dale.ho@aclu.org
**Pro Hac Vice* Forthcoming*

*Attorneys for Intervening Plaintiffs*

## CERTIFICATE OF SERVICE

     I hereby certify that on April 30, 2020, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Southern District of Ohio, Eastern Division, using the ECF system which will send notification of such filing to all counsel of record.

                                                     /s/ *Freda J. Levenson*
                                                     Freda J. Levenson