## DECLARATION OF ANTONIA DIPPOLD-WEBB

Now comes declarant Antonia Dippold-Webb and, under penalty of perjury, states as follows:

1.     I, Antonia Dippold-Webb, am over the age of eighteen years and am competent to testify as to the facts set forth below and have personal knowledge of them.

2.     I am the campaign manager for Ohioans for Secure and Fair Elections' campaign to submit the proposed Secure and Fair Elections Amendment to Ohio voters at the November 3, 2020 General Election and to encourage voters to adopt the amendment. I reside in Columbus, Ohio.

3.     I have experience working on dozens of political and issue campaigns, including the successful referendum petition campaign in 2011 on Am. Sub. S.B. 5 of the 129th Ohio General Assembly. I have eight years of experience writing campaign plans, managing budgets, and implementing campaign programs for campaigns, including now for the Ohioans for Secure and Fair Elections Campaign. I am a partner at JM$^2$, a political consulting firm.

4.     Even in normal times, it is an enormous undertaking to attempt to qualify a citizen-initiated constitutional amendment for placement on the ballot in Ohio. To qualify a  proposed amendment for placement on the November 3, 2020 General Election ballot, petitioners would need to submit at least 442,958 valid signatures of Ohio electors by July 1, 2020. In all likelihood, some of the signatures obtained will be invalid. To account for this, the standard industry practice is to submit at least 50% more than the minimum number of signatures required. There is also a geographical distribution requirement for these signatures. They must be obtained from at least 44 of the 88 counties in Ohio, and from each of these 44 counties, there must be signatures equal to at least 5 percent of the total vote cast for the office of governor in that county at the last gubernatorial election.

5.      Ohioans for Secure and Fair Elections has made considerable headway in the process of placing its proposed amendment on the ballot for the November 3, 2020 general election, to the point where, under ordinary circumstances, the campaign would have begun the process of gathering petition signatures.

6.      On January 10, 2020 the campaign entered into a contract with the paid signature collection firm, Advanced Micro Targeting (AMT) to begin collecting the necessary signatures from Ohio electors for placement on the November 3, 2020 ballot.

7.      On January 22, 2020, the campaign submitted a written petition to approve a summary of its proposed Amendment to Ohio Attorney General Dave Yost containing the signatures of more than 1,000 qualified Ohio electors. Secretary LaRose publicly criticized the petition effort and expressed his opposition to it.  *See*, Jackie Borchardt, "Ohio Measure to Expand Voting Rights Could be on Ballot in November," Cincinnati Enquirer, January 22, 2020.

8.      On January 31, 2020, Attorney General Yost rejected the summary. The campaign promptly rewrote its summary and entered into a second contract with AMT on February 5, 2020. The campaign then recirculated the new summary to Ohio electors, received signatures of more than 1,000 qualified electors, and resubmitted its summary to Attorney General Yost on February 10, 2020.

9.      On February 20, Attorney General Yost certified the summary of the proposed Amendment. The campaign then entered into its third contract with AMT on February 20, 2020. On receipt of the Attorney General's February 20, 2020 certification that the summary was a fair and truthful summary of the Amendment, the next step was for the Ohio Ballot Board to determine whether it contained only one proposed constitutional amendment.  The Ballot Board met on March 2, 2020, and voted that day, finding that the Proposed Amendment contained four subjects rather than one.

10.     Three days later, the campaign filed an expedited action for Mandamus in the Ohio Supreme Court to compel the Ballot Board to certify the Proposed Amendment as a single issue.

On April 14, 2020 the Ohio Supreme Court found that the Proposed Amendment was a single issue and ordered the Ballot Board to meet and certify it as such.

11.    On April 23, 2020, the Ohio Ballot Board convened and certified our initiative for circulation. Under ordinary circumstances, the Ohioans for Secure and Fair Elections campaign would have immediately printed tens of thousands of petition booklets for circulation upon certification and our petition circulators would be collecting petition signatures right now. However, as I explain below, the ongoing coronavirus pandemic makes it impossible as a practical matter for the campaign to gather signatures to meet Ohio's requirements.

12.    Under normal circumstances, April 24, 2020 to July 1, 2020 would have given the campaign 68 days to collect the requisite number of valid signatures. Previous statewide ballot initiative campaigns in Ohio have collected signatures within a similar timeframe, including the 2011 Ohio Project campaign that collected the needed signatures in 63 days after a similar challenge of a Ballot Board ruling to the Supreme Court.

13.    I am aware of a series of orders issued by Governor DeWine and other state agencies because of the pandemic, including the declaration of a state of emergency on March 9, postponing the Primary Election, prohibiting mass gatherings, closing non-essential businesses, and finally, the issuance of the Governor's Stay At Home Order.

14.    I am also aware of the recommendations from the CDC and the Ohio Department of Public Health advising people to avoid social gatherings and to maintain "social distancing". For example, on March 11, Ohio newspapers published the CDC's guidelines for limiting the spread of COVID-19 and self-protection, which included maintaining a distance of six feet or more from other people and avoiding contact. Four days later, on March 15, the CDC cautioned that no gatherings of fifty or more people should take place for the next eight weeks, including weddings, festivals, parades,

concerts, sporting events, and conferences. Then, on March 16, the President advised citizens to avoid groups of more than 10 and practice "social distancing" through April 30.

15.     As a result of the devastating public health threat presented by the coronavirus pandemic - as well as in response to public health experts' urgent warnings, news coverage, recommendations from public officials, and public health measures - all public gatherings in Ohio have now been cancelled or postponed. All non-essential businesses and other public accommodations closed or shifted to remote operation for the month of April.

16.     Governor DeWine has announced a phased approach to loosening restrictions and reopening some businesses. However, both the state and federal government continue to recommend that people maximize the physical distance from others when in public and avoiding gatherings larger than 10 people. *See White House Guidelines for Opening Up America Again.* Restaurants, bars, and entertainment sites are still under orders to remain close and large gatherings of people are not allowed. *See Responsible RestartOhio plans.*

17.     Ohioans are largely complying with public health experts' advice, the Governor's Order, and staying at home. Moreover, when they do venture from their homes, for example to go to the grocery or pharmacy, Ohioans are widely observing "social distancing" practices, including maintaining at least a six foot distance from others. Thus, all public encounters have been drastically reduced, if not virtually eliminated, and this is projected to remain the new normal through June, at the very least.

18.     With public health experts and government officials at virtually every level exhorting people to stay at home, to practice "social distancing," and to avoid coming within six feet of another person - even if it were safe, our signature gathers would be unable to approach other people to collect many signatures, let alone the requested numbers of signatures. Moreover, even

assuming we were to attempt to engage in petition circulation - which requires face to face contact among strangers -  this would put both the signature collectors and the signatories at grave risk, given what public health experts are telling us about the highly infectious nature of COVID-19

19.    Petition circulators rely heavily on public events and large gatherings, such as sporting events, festivals, parades, conferences, concerts, parties, rallies, and elections. Such events attract large numbers of potential signatories and are necessary to signature collection. But these events have been cancelled or rescheduled due to the pandemic and are not included in any of Governor DeWine's current reopening plans.

20.    Petition signature collection also depends on businesses and other establishments of public accommodation that attract large numbers of patrons, such as restaurants, bars, libraries, office buildings, college campuses, amusement parks, movie theaters, and government offices. Most of these locations are closed due to the pandemic and even if they are given permission to reopen, an attempt to gather signatures would be futile because nearly all Ohioans are observing public health advice that people remain at least six feet apart.

21.    The volunteer signature collection wing of the campaign also planned to obtain signatures at high density locations, including college campuses and big sporting and musical events, all of which are cancelled in compliance with the orders issued by the state and public health advice.

22.    The ability to attend and circulate petitions at large public events and places of public accommodation is not merely important to a signature-gathering campaign, it is utterly indispensable.  Even further, the widespread practice of social distancing – though surely a wise means of controlling the spread of the coronavirus – heavily dissuades individuals from entering into the few-foot interpersonal space required for talking, passing clipboards and pens, and other steps involved in signature-gathering.

23.     Likewise, door-to-door circulation and other face-to-face tactics are impossible in the face of the pandemic. In light of public warnings and orders recommending social distancing, many individuals are declining to risk close contact with an unknown person. Even in normal circumstances, door-to-door canvassing for signatures is low yield and could not, even were it possible, be sufficient to gather the necessary signatures.

24.     Because Ohioans for Secure and Fair Elections will not be able to collect signatures to qualify for the ballot, despite all of the investment and expenditures it has made and all of the thresholds it has crossed, it will suffer significant financial loss. Ohioans for Secure and Fair Elections has already invested large non-refundable resources in the campaign. As a statewide petition campaign, Ohioans for Secure and Fair Elections has paid the signature collection firm pre-launch fees for them to hire paid circulators and open offices across the state. The campaign also invested in professional consultants, legal advice, public opinion polling, and public-facing campaign materials. The campaign's wasted expenditures, if it is impeded from collecting signatures, include $500,000 already paid to AMT; $33,100 incurred to consultants and contractors; $38,550 in public opinion polling; $2,846 for digital asset creation; and $54,220 in legal fees.

25.     On March 26, I wrote a letter to Secretary of State Frank LaRose asking him to modify and/or decline to enforce Ohio's formal signature requirements in order to make it possible, in light of the coronavirus pandemic, for our proposed amendment to be placed on the ballot this fall so that Ohio voters have an opportunity to vote on it. His office answered on March 27 that he was not free to modify or to refuse to enforce the explicit constitutional statutory requirements of initiative petition signature gathering, "even in the current crisis." *See attached communication between Campaign Director and Secretary of State's office.*

I declare under penalty of perjury that the foregoing is true and accurate.

Executed on April 30, 2020                         _____

                                         Antonia Dippold-Webb