**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CHAD THOMPSON, WILLIAM SCHMITT, AND DON KEENEY,** | Case No. 20 CV 02129 |
| Plaintiffs, and | Judge Edmund A. Sargus Jr. Magistrate Judge Chelsey M. Vascura |
| **OHIOANS FOR SECURE AND FAIR ELECTIONS, DARLENE L. ENGLISH, LAURA A. GOLD, HASAN KWAME JEFFRIES, ISABEL C. ROBERTSON, EBONY SPEAKES-HALL, PAUL MOKE, ANDRE WASHINGTON, SCOTT A. CAMPBELL, AND SUSAN G. ZIEGLER** | |
| Plaintiff-Intervenors, | |
| v. | |
| **RICHARD "MIKE" DEWINE, in his official capacity as Governor of Ohio, AMY ACTON, in her official capacity as Director of Ohio Department of Health, and FRANK LAROSE, in is official capacity as Ohio Secretary of State** | |
| Defendants. | |

---

**COMPLAINT IN INTERVENTION FOR TEMPORARY RESTRAINING ORDER,**
**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

---

Intervenors Ohioans for Secure and Fair Elections, Darlene L. English, Laura A. Gold,

Hasan Kwame Jeffries, Isabel C. Robertson, Ebony Speakes-Hall, Paul Moke, Andre

Washington, Scott A. Campbell, and Susan G. Ziegler ("Intervenors") for their Complaint for

Preliminary and Permanent Injunctive Relief against Defendants Ohio Governor Richard

DeWine, Director of Ohio Department of Health Amy Acton, and Ohio Secretary of State Frank

LaRose ("Defendants"), allege as follows:

## **INTRODUCTION AND NATURE OF THIS ACTION**

1.      This case is an as-applied constitutional challenge to certain deadlines and

restrictions set by the Ohio Constitution and state statute, applicable to petitions for proposed

amendments to the Ohio Constitution. Intervenors consist of Ohioans for Secure and Fair

Elections ("OSFE"), all of the members of OSFE's committee, and individuals who, until the

coronavirus pandemic, had intended to circulate and/or sign the petition for a "Secure and Fair

Elections Amendment" to the Ohio Constitution (the "Proposed Amendment"). Intervenors seek

to have the Proposed Amendment placed before Ohio voters in the November 3, 2020 general

election.  OSFE has made considerable headway in the process to do so and has invested

significant funds. OSFE, its members, and individual plaintiff petition-circulators are now at the

point where under ordinary circumstances, they would have begun the process of gathering

petition signatures.

2.      Ohio law sets forth a number of formal requirements for petition signature-

gathering, including: a total number of signatures required, a geographic distribution of the

signers, requirements that the signatures may not be made by proxy and must be personally

witnessed by the petition circulator, deadlines for signature submission to the Secretary of State,

and requirements that the signatures be in "ink" rather than electronic.

3.      Prior the coronavirus pandemic, Intervening-Plaintiffs had worked diligently to

place the Proposed Amendment on the November 2020 ballot.  However, the pandemic has made

2

it impossible for Intervenors to meet these requirements for the Proposed Amendment. In response to escalating advisories by the World Health Organization, Centers for Disease Control, the President of the United States, the Governor of Ohio, the Director of the Ohio Department of Health, and other authorities, including increasingly fervent warnings to avoid gatherings or even approach within six feet of another person, nearly every public gathering in Ohio has been either voluntarily cancelled or banned by government order. Offices, retail locations, dine-in restaurants, and all non-essential places of work have closed. Colleges and universities have been shut down and students instructed to go home.

4.      Even if some restrictions may be lessened on May 1, social distancing measures will endure far into 2020 and past the deadline for petition circulation. Even once Ohio reaches the peak in COVID-19 cases, community transmission will continue until vaccine or herd immunity is established, which is not likely to occur for at least a year. *See* Ex. A, Dr. Reingold Decl. ¶ 12.  Even with the partial reopening of the economy on May 1, schools, restaurants and bars, all places of public amusement and spectator and recreational sports are to remain closed, and even for those businesses that are permitted to open, it will remain mandatory that they "ensure minimum 6 ft between people" and they are required to "stagger entry of customers and guests."[1]. The interpersonal contact inherent to petition drives, in addition to the common surfaces of paper petitions, clipboards, and pens, are all vectors for transmission. *See* Ex. A,

---

[1] Camryn Justice, Reopening Ohio: Gov. DeWine gives dates, protocols for reopening businesses beginning May 1, News 5 Cleveland, Apr. 27, 2020, https://www.news5cleveland.com/news/continuing-coverage/coronavirus/reopening-ohio-gov-dewine-gives-dates-protocols-for-reopening-businesses-beginning-may-1; *see also* Governor Mike DeWine (@GovMikeDeWine), Twitter (Apr. 14, 2020, 3:11 PM) https://twitter.com/GovMikeDeWine/status/1250139709940137985?s=20 ("As we reopen #Ohio, people will have to be very, very careful until we get a vaccine. You'll have to weigh benefit vs. risk. You will have to make sure you're wearing a mask when you go out, continue social distancing, etc. #COVID19 is not going away until we get a vaccine"

Reingold Decl. ¶ 17. Merely talking to someone closer than six feet can lead to COVID-19 infection. Center for Disease Control, *Coronavirus 2019 (COVID-19) Factsheet*, https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf (last accessed Apr. 17, 2020).

5.      It is axiomatic that face-to-face encounters between people are essential for any physical in "ink" signature-gathering. Given the temporary changes in our society—specifically the severe reduction of the ability to physically encounter other people—there is no means of complying with Ohio's formal signature requirements. In the throes of today's extraordinary circumstances, Ohio's requirements operate to completely eradicate Intervenors' indelible First Amendment, Fourteenth Amendment and Ohio constitutional rights to ballot access, freedom of speech, and freedom of association.

6.      In the context of elections emergencies, state and federal courts are often called upon to craft appropriate situational remedies that apply core constitutional principles to protect the franchise. With no other remedy available, Intervenors ask that this Court grant all necessary and appropriate relief to ensure that even—and perhaps especially—in this time of unprecedented crisis, Intervenors' fundamental rights are preserved.

7.      Intervenors affirmatively allege that they have acted with the utmost diligence in bringing the instant action timely, that there has been no unreasonable delay in asserting their rights herein and, further, that their intervention would not prejudice any party in this action. Specifically, Intervenors have filed their claims only three days after Plaintiffs commenced this action.

## **PARTIES**

8.      Intervenor OSFE is an Ohio ballot issue committee responsible for the

organization of the signature-gathering effort to certify the Proposed Amendment to the November 3, 2020 general election ballot, and to support its passage by the electors of Ohio.

9.  Intervenors Darlene L. English, Laura A. Gold, Hasan Kwame Jeffries, Isabel C. Robertson, and Ebony Speakes-Hall are residents and electors of the State of Ohio and are the members of the committee designated to represent the petitioners of the Proposed Amendment pursuant to R.C. 3519.02.

10.  Intervenor Paul Moke is a resident and elector of the State of Ohio, who wishes to serve as a petition circulator for the Proposed Amendment, as well as to recruit others to do the same.

11.  Intervenor Andre Washington is a resident and elector of the State of Ohio, who wishes to serve as a petition circulator for the Proposed Amendment, as well as to recruit others to do the same.

12.  Intervenor Scott A. Campbell is a resident and elector of the State of Ohio, who wishes to sign the petition in support of the Proposed Amendment.

13.  Intervenor Susan G. Ziegler is a resident and elector of the State of Ohio, who wishes to sign the petition in support of the Proposed Amendment.

14.  Defendant Richard DeWine is the Ohio Governor and the head of the executive branch of Ohio's government.  Through his executive power, he issues a series of executive orders closing down public facilities and requiring Ohio residents to stay-at-home.

15.  Defendant Amy Acton is Director of Ohio's Department of Health.  Along with Defendant DeWine, she issued a series of executive orders closing down public facilities and requiring Ohio residents to stay-at-home.

16.  Defendant Frank LaRose is the Ohio Secretary of State and the chief elections

officer of the State of Ohio, and is charged under Article II, §§ 1a and 1g of the Ohio Constitution with receiving filed petitions and determining the sufficiency of signatures.

## JURISDICTION AND VENUE

17.    Jurisdiction in this case is predicated on 28 U.S.C. § 1331, this being a case arising under the Constitution of the United States and 42 U.S.C. § 1983. This Court has jurisdiction over the subject matter of this action, including under R.C. 2721.02(A) and 2721.12(A).

18.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because events giving rise to these claims occurred in the Southern District of Ohio and each Defendant conducts business in this district.

## FACTUAL ALLEGATIONS

### OSFE Has Worked Diligently and Has Progressed to the Point of Circulating Petitions for its Proposed Amendment

19.    Intervenors are all proponents of the Proposed Amendment to Ohio's Constitution, which is designed to protect Ohioans' right to vote, expand opportunities to exercise that right, and ensure that voting in Ohio remains secure. Intervenor OSFE is endeavoring to place this issue on the November 3, 2020 general election ballot.

20.    On January 10, 2020, February 5, 2020 and February 20, 2020 Intervenor OSFE entered into contracts with Advanced Micro Targeting ("AMT"), a nationally recognized petition circulation firm. These contracts engage AMT to assist in circulating the Proposed Amendment and constitute a significant financial obligation for Intervenor OSFE. Intervenor OSFE has already paid AMT $500,000 pursuant to these contracts. Pursuant to these contracts, AMT collected more than 2,000 signatures from Ohio electors and began to prepare to collect additional signatures for the Proposed Amendment.  *See* Ex. B, Webb Decl. ¶¶ 6-9, 24.

21.     Intervenor OSFE has also spent additional funds for consultants, legal advice, public opinion polling, and public facing campaign materials. These funds include $33,100 paid to consultants and contractors; $38,550 for polling; $2,846 for digital asset creation; and $15,340 paid in legal fees.

22.     Intervenor OSFE also began engaging with a broad network of volunteer petition circulators, who anticipated gathering signatures once the petition had reached the appropriate stage.

23.     On January 22, 2020, OSFE submitted a written petition to approve a summary of the Proposed Amendment to Ohio Attorney General Dave Yost containing the signatures of more than 1,000 qualified Ohio electors. That same day, Defendant LaRose had publicly criticized the petition effort and expressed his opposition to it.  *See* Jackie Borchardt, "Ohio Measure to Expand Voting Rights Could be on Ballot in November," Cincinnati Enquirer [DATE]. On January 31, 2020, the Attorney General rejected the summary.

24.     OSFE rewrote its summary and submitted a revised written petition to approve a summary of the Proposed Amendment to Ohio Attorney General Dave Yost containing the signatures of more than 1,000 qualified Ohio electors on February 10, 2020. This written petition contained a copy of the full text of the Proposed Amendment and a summary of the Proposed Amendment.

25.     On February 20, 2020, pursuant to R.C. 3519.01(A), Attorney General Yost certified that the summary of the Proposed Amendment submitted by OSFE was a fair and truthful statement of the constitutional amendment. On March 2, 2020, however, the Ohio Ballot Board voted 3-2 to find that the Proposed Amendment contained four unconnected subjects, rather than a single subject.

26.     Just three days after the Ballot Board's decision, On March 5, 2020, Intervenors OFSE, English, Gold, Jeffries, Robertson, and Speakes-Hall filed an expedited action in the Supreme Court of Ohio, asking that the Supreme Court issue a writ of mandamus instructing the Ballot Board to certify to the Ohio Attorney General that the Proposed Amendment contains only one constitutional amendment. *See State ex rel. Ohioans for Secure and Fair Elections v. Ohio Ballot Board*, Supreme Court Case No. 2020-0327.  This action was based solely on the action of the Ballot Board on March 2nd and predates the WHO labeling the coronavirus as a pandemic, the orders from Defendant DeWine and Defendant Acton, and the other events that give rise to this current action.

27.     On April 14, 2020 the Ohio Supreme Court found that the Proposed Amendment was a single issue and ordered the Ballot Board to meet and certify it as such.  On April 23, the Ballot Board met and certified the proposed Amendment as a single issue.  If not for the coronavirus pandemic, Intervenors would have begun circulation of their petition immediately, last week, on April 24.  It is typical for signature gathering to occur in late spring as the weather warms up and more people head outside making signature gathering more feasible. *See Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2020 WL 1910154, at *11 (E.D. Mich. Apr. 20, 2020) ("These candidates may have relied, reasonably and in good faith, on the ability to collect the vast majority of the signatures they needed in late March or early April, when rising temperatures would bring more people outside and facilitate signature gathering.")

Ohio Law Imposes a Number of Formal Requirements That are Premised on the Possibility of In-Person Signature Gathering for Petitions

28.     A number of Ohio constitutional and statutory restrictions apply to OSFE—and everyone seeking to put forth a proposed constitutional amendment to be included on a general election ballot—including several that plainly are premised on gathering of signatures in person:

    a.   The requirement to gather a number of petition signatures equal to at least 10% of the total vote cast for the office of governor in the last gubernatorial election, *see* Ohio Const. Art. II § 1a; R.C. 3519.14 (Secretary of State shall not accept any petition which does not purport to contain the minimum number of signatures);

    b.   In at least 44 of Ohio's 88 counties, to obtain signatures from at least 5% of the total vote cast for the office of governor in the last gubernatorial election in that county, *see* Ohio Const. Art. II § 1g; R.C. 3519.14;

    c.   To gather all signatures such that they are affixed in ink, *see* Ohio Const. Art. II § 1g; R.C. 3501.38(B);

    d.   To gather all signatures such that "no person shall write any name other than the person's own ... [and] no person may authorize another to sign for the petition," R.C. 3501.38; Ohio Const. Art. II § 1g;

    e.   To gather all signatures in a manner such that the circulator witnessed the affixing of every signature, and attests thereto, Ohio Const. Art. II § 1g.

29.    Based on the number of votes cast for the office of governor in the last gubernatorial election, OSFE must submit the signatures of at least **442,958** qualified Ohio electors to the Secretary of State.

30.    In addition, a number of other requirements apply that are rendered impossibly burdensome in the context of the coronavirus pandemic and the inability to gather in-person signatures:

    a.   To submit the petition and all required signatures to the Secretary of State's office not later than 125 days prior to the election, *see* Ohio Const. Art. II

§ 1a;

b. To file the completed petition and signatures in searchable electronic form, with a summary of the number of part-petitions per county and the number of signatures on each part-petition, as well as an index of the electronic copy of the petition, *see* R.C. 3519.16(B);

c. To refrain from supplemental signature-gathering, as a cautionary measure in the event of signature deficiencies, during the period after initially submitting signatures to the Secretary of State but before any formal notices of deficiency are issued, *see* R.C. 3519.16(F);

d. To gather any and all required supplemental signatures, upon notice of a deficiency in signatures by the Secretary of State, within 10 days of that notice, *see* Ohio Const. Art. II § 1g; R.C. 3519.16(F).

31. The deadline to submit signatures for the Proposed Amendment is July 1, 2020, which is 125 days before the November 3, 2020 election.

32. Under the Ohio Constitution, once the requisite signatures are submitted, the Secretary of State has until 105 days before the election—July 21, 2020—to determine their sufficiency. Ohio Const. Art. II § 1g.

33. If supplemental signatures are filed, the Secretary of State is to determine the sufficiency of those additional signatures not later than 65 days before the election, or August 30, 2020 for the November 3, 2020 general election.

<u>The Coronavirus Pandemic Has Had a Drastic Impact on Public Health and Behavior, Causing Widespread Closures, Cancellations, and Social Distancing</u>

34. The United States and the state of Ohio are in a declared state of emergency, as a result of the worldwide pandemic caused by the novel coronavirus. The respiratory disease

10

caused by the virus, COVID-19, is highly contagious and can result in serious illness and death.

35.    As early as January of 2020 and continuing through the present, health experts and federal, state, and local government officials released an escalating series of warnings and emergency advisories, emphasizing the importance of protective measures including avoiding gatherings of people and "social distancing," defined as maintaining physical space from affected or potentially affected persons.

36.    On January 30, 2020, as the coronavirus outbreak spread internationally, including to the United States, the World Health Organization (WHO) declared that it constitutes a Public Health Emergency of International Concern.[2] On January 31, President of the United States Donald Trump suspended entry into the United States by any foreign nationals who had traveled to China in the past 14 days. On February 24, 2020, President Trump asked Congress to allocate $1.25 billion for a coronavirus response.[3]

37.    On February 25, 2020, the Director of the National Center for Immunization and Respiratory Diseases at the Centers for Disease Control and Prevention ("CDC") announced that "[d]isruption to everyday life may be severe" as a result of the virus.[4] Regarding spread of the disease within the United States, she stated that "[i]t's not so much a question of if this will

---

[2] World Health Organization, *Statement on the second meeting of the International Health Regulations (2005) Emergency Committee regarding the outbreak of novel coronavirus (2019-nCoV)* (Jan. 30, 2020), https://www.who.int/news-room/detail/30-01-2020-statement-on-the-second-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-outbreak-of-novel-coronavirus-(2019-ncov) (accessed Mar. 26, 2020).

[3] Derrick Bryson Taylor, *A Timeline of the Coronavirus Pandemic*, N.Y. Times (Mar. 27, 2020), available at https://www.nytimes.com/article/coronavirus-timeline.html (accessed Mar. 26, 2020).

[4] John Bacon & Ken Alltucker, *Could a coronavirus pandemic be stopped? US warns of 'severe' disruptions*, USA Today (Feb. 25, 2020), available at https://www.usatoday.com/story/news/nation/2020/02/25/coronavirus-pandemic-can-outbreak-still-be-stopped/4865934002/ (accessed Mar. 26, 2020).

happen anymore but rather more a question of exactly when this will happen," and called upon the American public to "work with us to prepare[.]"[5]

38.     On February 26, 2020, CDC officials stated at a press briefing that "[n]on-pharmaceutical interventions or NPIs will be the most important tools in our response to this virus," and that such NPIs included "social distancing measures."[6]

39.     On February 27, 2020, the CDC issued further guidance recommending that affected local communities practice "social distancing" measures, including reducing the frequency of large gatherings and limiting the number of attendees.[7]

40.     On March 5, 2020, Ohio Department of Health Director Amy Acton announced that the state would begin testing for COVID-19.[8]

41.     On March 11, the Director-General of the WHO declared COVID-19 to be a global pandemic.[9] That same day, Ohio newspapers published the CDC's guidelines for limiting

---

[5] Pam Belluck & Noah Weiland, *C.D.C. Officials Warn of Coronavirus Outbreaks in the U.S.*, N.Y. Times (Feb. 25, 2020), available at https://www.nytimes.com/2020/02/25/health/coronavirus-us.html (accessed Mar. 26, 2020).

[6] Centers for Disease Control and Prevention, *Transcript for the CDC Telebriefing Update on COVID-19*, https://www.cdc.gov/media/releases/2020/t0225-cdc-telebriefing-covid-19.html (accessed Mar. 26, 2020).

[7] *See* Centers for Disease Control, *Implementation of Mitigation Strategies for Communities with Local COVID-19 Transmission* (Mar. 12, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/downloads/community-mitigation-strategy.pdf (accessed Mar. 26, 2020).

[8] Max Filby, *Ohio can start testing for coronavirus this weekend*, Columbus Dispatch (Mar. 5, 2020), available at https://www.dispatch.com/news/20200305/ohio-can-start-testing-for-coronavirus-this-weekend (accessed Mar. 26, 2020).

[9] *See* World Health Organization, *WHO Director-General's opening remarks at the media briefing on COVID-19 – 11 March 2020* (Mar. 11, 2020), available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (accessed Mar. 26, 2020).

the spread of COVID-19 and self-protection, including maintaining distance of at least 6 feet from others, and avoiding contact.[10]

42.     On March 12, the CDC updated its coronavirus-related guidance to reflect recommendations to consider cancelling or postponing mass gatherings, and noting that person-to-person spread of the virus happens most frequently within a distance of 6 feet.[11]

43.     On March 13, 2020, President Trump declared a national emergency retroactive to March 1, 2020.[12]

44.     On March 15, the CDC advised that no gatherings of fifty or more people occur over the next eight weeks, including weddings, festivals, parades, concerts, sporting events, and conferences. On March 16, the President advised citizens to avoid groups of more than 10.[13]

45.     Meanwhile, across Ohio, public facilities and events were closing in response to the coronavirus threat. On March 5, based on CDC guidance, Governor Mike DeWine announced that the Arnold Sports Festival, the largest single annual event in Columbus, would be closed to spectators.[14] On March 12, 2020, the Columbus Dispatch reported that the

---

[10] Centers for Disease Control and Prevention, *CDC guidelines to protect yourself from coronavirus* (Mar. 11, 2020), available at https://www.dispatch.com/news/20200311/cdc-guidlines-to-protect-yourself-from-coronavirus (accessed Mar. 26, 2020).

[11] Centers for Disease Control and Prevention, *Interim Guidance for Coronavirus Disease 2019 (COVID-19)* (Mar. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/mass-gatherings-ready-for-covid-19.html (accessed Mar. 26, 2020).

[12] *See* White House, *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak* (Mar. 13, 2020), available at https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (accessed Mar. 26, 2020).

[13] Taylor, *supra* n.2.

[14] 10tv.com, *LIST: What's scheduled & canceled at the 2020 Arnold Sports Festival* (Mar. 5, 2020), https://www.10tv.com/article/list-whats-scheduled-canceled-2020-arnold-sports-festival-2020-mar (accessed Mar. 26, 2020).

Columbus Metropolitan Library, averaging more than 450,000 visits per month, was closing all of its branches, and further that that St. Patrick's Day parades in Columbus and Dublin, Ohio, as well as the Columbus International Auto Show, were canceled or delayed.[15] On the same day, the Mid-American Conference Men's and Women's Basketball tournament in Cleveland was cancelled.[16]

46. Public and private colleges and universities throughout Ohio closed, enacted online instruction measures in lieu of in-person classes, and sent their students away from campus for the remainder of the semester. The Ohio State University, the largest university in the state, announced on March 12, 2020 that all undergraduate students would be required to vacate on-campus housing.[17]

47. Also, meanwhile, beginning in mid-March of 2020 Ohio Governor Mike DeWine and Director Acton began ordering a number of emergency measures,[18] including

    a. On March 12, a ban on mass gatherings of 100 persons or more, amended on March 17 to encompass gatherings of 50 persons or more, and further to recommend that Ohioans refrain from non-family social gatherings of more

---

[15] Mark Ferenchik, *Coronavirus: What's closed, canceled in Columbus area*, Columbus Dispatch (Mar. 12, 2020), available at https://www.dispatch.com/news/20200312/coronavirus-whats-closed-canceled-in-columbus-area (accessed Mar. 26, 2020).

[16] Kaylyn Hlavaty, Ian Cross & Jonathan Walsh, *Remainder of 2020 MAC Tournament canceled amid coronavirus pandemic*, ABC News 5 Cleveland (Mar. 12, 2020), https://www.news5cleveland.com/news/continuing-coverage/coronavirus/remainder-of-2020-mac-tournament-canceled-amid-coronavirus-concerns (accessed Mar. 26, 2020).

[17] Natasha Anderson, *List of Ohio colleges postponing spring commencement*, Fox8 (Mar. 13, 2020), https://fox8.com/news/coronavirus/ohio-colleges-moving-to-fully-online-instruction-closing-student-housing/ (accessed Mar. 26, 2020).

[18] *See* Ohio Department of Health, *Public Health Orders*, available at https://coronavirus.ohio.gov/wps/portal/gov/covid-19/home/public-health-orders/public-health-orders (accessed Mar. 26, 2020) (collection of coronavirus-related public health orders by ODH and Gov. DeWine).

than ten people;

    b.  On March 15, a ban on dine-in services at bars and restaurants;

    c.  On March 16, closure of all polling locations for the scheduled March 17,

       2020 primary election;

    d.  On March 19, a halt on business operations at barber shops, hair salons, day

       spas, tattoo parlors, and similar establishments;

    e.  On March 21, closure of senior centers and adult day care centers, as well as

       indoor family entertainment businesses such as laser tag and ice skating.

48.    Effective on March 23, 2020, Director Acton issued a further measure ordering that all residents of the State of Ohio "stay at home or at their place of residence" unless subject to a specific enumerated exception. Gatherings of more than ten persons, unless expressly exempted, were prohibited, as are all gatherings of any number of people outside of "a single household or living unit." Businesses defined as nonessential were ordered to be reduced to a minimal operational state.[19]

49.    As a result of the critical public health threat presented by the coronavirus, expert warnings and advisories, news coverage, recommendations from public officials, and public health measures, numerous public gatherings in Ohio have been cancelled or postponed. Numerous categories of businesses and other public accommodations have closed or shifted to remote operation only and are likely to remain in such a state for many weeks or months. Individual Ohioans are widely observing "social distancing" practices, including maintaining

---

[19] *See* Bethany Bruner, *Coronavirus: What will enforcement of stay-at-home order look like?*, Columbus Dispatch (Mar. 23, 2020), available at https://www.dispatch.com/news/20200323/coronavirus-what-will-enforcement-of-stay-at-home-order-look-like (accessed Mar. 26, 2020).

interpersonal distance from individuals who may be affected. Public encounters have, on the whole, been drastically reduced.

50.     These circumstances will not be changing for months. Even with the partial reopening of the economy, schools, restaurants and bars, all places of public amusement and spectator and recreational sports are to remain closed, and even for those businesses that are permitted to open, it will remain mandatory that they "ensure minimum 6 ft between people" and they are required to "stagger entry of customers and guests."[20] For the predictable future, there will be no gatherings or close encounters between unrelated individuals.

<u>The Pandemic Has Rendered Impossible the Signature-Gathering and Related Measures Anticipated by Ohio Law for Constitutional Amendment Petition Campaigns</u>

51.     The coronavirus pandemic makes signature gathering impossible.

52.     Even in normal times, signature collection is a time- and labor-intensive endeavor. It requires hundreds of thousands, if not a million, interpersonal contacts among circulators and signers.

53.     Petition circulators rely heavily on public events and large gatherings, such as sporting events, festivals, parades, conferences, concerts, parties, rallies, and elections in order to meet people to ask to sign.

54.     Elections are another large event where many signatures are collected by signature gathers waiting outside of polls to try to talk to people who have come to vote.

55.     Petition signature collection also depends upon human activity surrounding businesses and other establishments of public accommodation such as restaurants, bars, libraries,

---

[20] Camryn Justice, Reopening Ohio: Gov. DeWine gives dates, protocols for reopening businesses beginning May 1, News 5 Cleveland, Apr. 27, 2020, https://www.news5cleveland.com/news/continuing-coverage/coronavirus/reopening-ohio-gov-dewine-gives-dates-protocols-for-reopening-businesses-beginning-may-1

office buildings, college campuses, amusement parks, movie theaters, and government offices. Like public events, such establishments offer opportunities for circulators to make contact with large numbers of potential signatories and are necessary to signature collection.

56.     Even door-to-door circulation and similar tactics are impossible in the coronavirus pandemic. In light of public warnings and orders recommending social distancing, many individuals are declining to risk close contact with an unknown person.

57.     Crediting the CDC and Ohio Department of Health guidelines and other information relating to the coronavirus pandemic, Intervenors Campbell and Ziegler reasonably fear that contact with a petition circulator will present undue risk of exposure, and potentially serious illness.

58.     Accordingly, Intervenors Campbell and Ziegler will be unable to sign a petition in support of the Proposed Amendment in a manner consistent with the formal requirements of Ohio law surrounding signature-gathering.

59.     Upon crediting the CDC and Ohio Department of Health guidelines and other information relating to the coronavirus epidemic, Intervenors Moke and Washington reasonably fear that attending public gatherings, or even making face-to-face contact with potential petition signatories, will present undue risk of exposure and potentially serious illness.

60.     For the same reasons, Intervenors Moke and Washington reasonably fear that they cannot successfully or safely recruit or mobilize others who might be willing to become petition circulators themselves, as doing so would put both Intervenors Moke and Washington, and the potential additional circulators whom they seek to recruit, at undue risk of exposure and potentially serious illness.

61.     Accordingly, Intervenors Moke and Washington will be unable to circulate a

petition, or recruit others to serve as petition circulators, in support of the Proposed Amendment in a manner consistent with the formal requirements of Ohio law surrounding signature-gathering.

62.     As a result of the circumstances created by the coronavirus pandemic, Intervenors OSFE, English, Gold, Jeffries, Robertson, and Speakes-Hall, and petition circulators for the Proposed Amendment including Intervenors Moke and Washington, will be unable to collect the required 442,958 signatures prior to the July 1, 2020 filing deadline, or meet the other formal requirements of Ohio constitutional and statutory law detailed above, absent relief from this Court.

63.     Specifically:

 a. The widespread public avoidance of face-to-face contact, in public venues and elsewhere, will prevent Intervenors from obtaining the requisite inked signatures and written names by the signatories, as required by Ohio law.

 b. The impermissibility of obtaining proxy or electronic signatures under Ohio law, as well as the requirement that petition circulators attest to having witnessed all signatures, will further prevent Intervenors from obtaining the required number of signatures as a result of the present circumstances.

<u>The Coronavirus Pandemic Is Expected to Continue for Months, Rendering</u>
<u>It Impossible to Meet Signature-Gathering Deadlines</u>

64.     As of the morning of April 29, 2020, Defendant DeWine's office reported 17,303 confirmed and probable cases of the COVID-19 illness, with 3,421 hospital admissions. There is currently no vaccine for COVID-19 illness.  *See* Ex. A., Reingold Decl. ¶ 10. Transmission of COVID-19 is expected to continue until a vaccine is developed or herd immunity is established. *Id.* at ¶ 12.  It is unlikely that there will be a vaccine before 12 to 18 months from now at the

earliest. *Id*. at ¶ 13.

65.  Under the projected timelines for the pandemic, it will remain impossible for at least the next several months for Intervenors OSFE, English, Gold, Jeffries, Robertson, Speakes-Hall, Moke, and Washington to begin circulation of the petition for the Proposed Amendment, or for Intervenors Campbell and Ziegler to sign it.

66.  Under these circumstances, Intervenors require an extension of the July 1 deadline to submit signatures.  However, even a significant extension alone will not make it possible for Intervenors to advance the Proposed Amendment.

67.  On March 26, 2020, OSFE's Campaign Manager contacted the Office of the Ohio Secretary of State by email, citing the impossibility of gathering signatures in compliance with Ohio's formal requirements during the COVID-19 pandemic, and requesting that Defendant suspend or decline to enforce those requirements.

68.  On March 27, 2020, by response email from counsel, Defendant's office acknowledged that:

> The current COVID-19 pandemic has upended nearly everything in our lives here in Ohio and in the lives of millions of Americans in many other states across the nation. As I know you are well aware, the pandemic even impacted our primary election. I can appreciate that the current situation has impacted your organization's signature gathering for the proposed amendments.

69.  Nonetheless, Defendant's office refused OSFE's request, asserting that Defendant lacked the authority to revise or decline to enforce these requirements—and indeed, further asserting that even the Ohio General Assembly could not revise many of them on its own.

<u>Ohio Has Already Taken Extraordinary Measures to Reschedule a Primary, and Other States Have Reduced or Suspended Signature-Related Requirements in Response to the Pandemic</u>

70.  On March 25, 2020, the Ohio General Assembly passed an omnibus coronavirus response bill, HB 197, which was subsequently signed into law by Governor DeWine on March

27. Under HB 197, Ohio's 2020 primary election was postponed until April 28, 2020, and conducted almost exclusively by mail. Polling locations were closed, and vote centers were reserved primarily for people with disabilities to vote in person on April 28, 2020.

71.    Ohio is not alone in changing its electoral rules in light of the pandemic. States, localities, and municipalities all over the nation have responded to the coronavirus pandemic by changing procedures for elections and/or petitions to make essential adjustments to meet these extraordinary circumstances.

72.    For example, in an article entitled "Utah candidates can now collect signatures without risking spread of Coronavirus," the Salt Lake Tribune reported that on March 26, 2020, the Governor of Utah had suspended the requirement that candidates collect signatures in order to appear on Utah's ballot, instead permitting candidates to send and receive petition pages electronically.[21]

73.    On March 19, 2020, the Governor of New Jersey[13] issued an  executive order to the Secretary of State to implement online petitioning and signature collection  "in light of the dangers posed by COVID-19."[22]

74.    On April 2, 2020, Florida's Secretary of State  signed an emergency order allowing for the collection of petition signatures online.[23] And Idaho  and Montana likewise adopted online

---

[21] Bethany Rodgers, *Utah Candidates can now collect signatures without risking spread of Coronavirus*, Salt Lake Tribune (Mar. 26, 2020), available at https://www.sltrib.com/news/politics/2020/03/26/gov-herbert-changes/ (accessed Mar. 29, 2020).

[22] Executive Order No. 105 (Mar. 19, 2020), available at https://www.state.nj.us/state/elections/assets/pdf/candidate/EO-105.pdf

[23] Certification of Department of State Emergency Rule Filed with the Department of State (Apr.  2, 2020) available at https://dos.myflorida.com/media/702874/1ser20-2.pdf

systems in response to the pandemic.[24]

75.     On March 25, the Circuit Court of the City of Richmond granted a motion for a preliminary injunction, ordering a reduction in the number of signatures needed to enter Virginia's primary election from 10,000 to 3,000.[25] The court found that "the circumstances as they exist in the Commonwealth of Virginia and across the United States are not normal right now," and that the regulation requiring the signatures "does not provide for emergency circumstances, like those that currently exist."[26]

76.     A number of state court and federal courts have followed suit relaxing ballot access requirements, including allowing campaigns to collect and submit petition signatures electronically, reducing the number of signatures required, and extending submission deadlines on an as applied basis for 2020 elections in light of the coronavirus pandemic.  *Libertarian Party of Illinois v. Pritzker*, 2020 WL 1951687, at *4 (N.D. Ill., Apr. 23, 2020); *Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2020 WL 1910154, at *10 (E.D. Mich. Apr. 20, 2020); *Goldstein v. Sec'y of Commonwealth*, No. SJC-12931, 2020 WL 1903931, at *6 (Mass. Apr. 17, 2020).

### COUNT I: 42 U.S.C. § 1983, FREEDOM OF SPEECH  UNDER THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

77.     Intervenors incorporate all foregoing paragraphs of this Complaint as if fully set

---

[24] Ballotpedia.org, Changes to ballot measure campaigns, proceduresBallot Measure  Campaigns, Procedures, and Policies in Response to the Coronavirus (COVID-19) Pandemic,  2020 (updated Apr. 17, 2020

https://ballotpedia.org/Changes_to_ballot_measure_campaigns,_procedures,_and_policies_in_ re   sponse_to_the_coronavirus_(COVID-19)_pandemic,_2020
this is the footnote
[25] *See* Order, *Faulkner v. Virginia Dep't of Elections*, Va. Cir. No. CL 20-1456 (Mar. 25, 2020), available at https://www.virginiamercury.com/wp-content/uploads/2020/03/3-25-2020-Faulkner-v.-Virginia-Department-of-Elections-CL-20-1456-Prel....pdf (accessed Mar. 29, 2020).
[26] *Id.*

forth herein.

78.     Ohio's constitution has enshrined a right to initiative. Once a right of initiative is created, the state may not place restrictions on the exercise of the initiative that unduly burden Ohioans' their rights. *Meyer v. Grant*, 486 U.S. 414, 420 (1988).

79.     The circulation of petitions, including the petition for the Proposed Amendment, is core political speech, where the protections of the First Amendment are at their zenith. *Id.*

80.     The Supreme Court recognized that getting on the ballot makes a matter "the focus of statewide discussion" which is an expressive right.  *Meyer*, 486 U.S. at 423 (holding that the ban on paid petition circulars violates freedom of speech by "mak[ing] it less likely that appellees will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion").

81.     Further, by limiting Intervenors to wet signatures and in person contact only, the State limits the ability of Intervenors to reach the Ohio pubic with their message of electoral change.  The first amendment interest identified in *Meyer* would be met by allowing Intervenors to engage with the public in a safe way and allowing them to reach a larger audience.  *Meyer*, 486 U.S. at 422 (holding that the ban on paid petition circulars "limits the number of voices who will convey appellees' message and the hours they can speak and, therefore, limits the size of the audience they can reach.")

82.     In the extraordinary circumstances of the coronavirus pandemic, Ohio's signature requirements and the other restrictions specified herein operate as an extreme restriction, tantamount to a ban, on Intervenors' ability to converse with the public concerning electoral change, in violation of Intervenors' rights under the First and Fourteenth Amendments.

83.     As the petition requirements are not "necessary" to meet a legitimate government

interest, they cannot stand as applied to Intervenors in the current moment

84.    Absent injunctive relief, Intervenors will suffer irreparable harm. Intervenors have

no adequate remedy at law.

### COUNT II: 42 U.S.C. § 1983, RIGHTS OF ASSOCIATION AND BALLOT ACCESS UNDER THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

85.    Intervenors incorporate all foregoing paragraphs of this Complaint as if fully set

forth herein.

86.    Intervenors have a related First Amendment right of association and ballot access

under the federal constitution that protects the circulation of petitions in support of ballot

initiatives.

87.    "Under the three-step *Anderson-Burdick* framework, in which we "weigh the

character and magnitude of the burden the State's rule imposes on [Plaintiffs' First Amendment]

rights against the interests the State contends justify that burden, and consider the extent to which

the State's concerns make the burden necessary." *Schmit v. LaRose*, 933 F.3d 628, 639 (6th Cir.

2019).

88.    The burden on Intervenors' core rights presented here is severe: "[t]he hallmark of

a severe burden is exclusion or virtual exclusion from the ballot." *Schmitt*, 933 F.3d  at 639

(citing *Libertarian Party of Kentucky v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016)); *see also*

*Williams v. Rhodes*, 393 U.S. 23, 24, 35, (1968) (striking "series of election laws," including

requirement that minor political parties file a petition signed by the number of voters equal to

fifteen percent of the votes cast in the preceding gubernatorial election, because it "made it

virtually impossible" for any party other than the Republican Party and Democratic Party to gain

ballot access).

89.    In the extraordinary circumstances of the coronavirus pandemic, Ohio's signature

requirements and the other restrictions specified herein operate as an extreme restriction, tantamount to a ban, on Intervenors' ability to access the ballot and organize in support of the Petition, in violation of Intervenors' rights under the First and Fourteenth Amendments.

90.    Such severe burdens should be subject to strict scrutiny. *Cf. Cal. Democratic Party v. Jones*, 530 U.S. 567, 582 (2000) (severe burdens on associational rights trigger strict scrutiny). Ohio's ballot restrictions cannot survive strict scrutiny, as they are not narrowly tailored to meet a compelling government interest.

91.    Absent injunctive relief, Intervenors will suffer irreparable harm. Intervenors have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Intervenors respectfully request:

A.  A narrow declaration by this Court that, in the extraordinary situation presented by the coronavirus pandemic, the requirements of Ohio law described herein as applied to Intervenors in their efforts to place the Proposed Amendment on the 2020 general election ballot, violate Intervenors' rights to association, speech, assembly, and ballot access under both state and federal law;

B.  Temporary restraining order, preliminary injunction, and/or a permanent injunction enjoining the following relating to the Proposed Amendment and the petition therefor:

1.  The requirement of Ohio Const. Art. II § 1a that the petition contain signatures of electors equal to at least ten percent of the total vote cast for the office of governor in the last gubernatorial election;

2.  The requirement of Ohio Const. Art. II § 1g that the petition contain signatures, for at least 44 of Ohio's 88 counties, from at least five percent of the total vote

cast for the office of governor in the last gubernatorial election in that county;

3. The requirement of R.C. 3519.14 that the Secretary of State may not accept a petition for filing that does not purport to contain the minimum number of signatures;

4. The requirement of Ohio Const. Art. II § 1g and R.C. 3501.38(B) and (D) that names and signatures on petitions shall be written "in ink," and cannot be written by proxy;

5. The requirement of Ohio Const. Art. II § 1g that petition circulators must attest to having witnessed the affixing of every signature;

6. The deadline of Ohio Const. Art. II § 1a to submit all required signatures with the Secretary of State's office not later than 125 days prior to the election;

7. The requirement of R.C. 3519.16 that supplemental signatures cannot be gathered prior to formal notice by the Secretary of State and commencement of the ten-day period for gathering supplemental signatures, as set therein;

8. The requirement of R.C. 3519.16 that a searchable electronic copy of the petition be filed with the Secretary of State, accompanied by summaries and an index.

C. A Temporary Restraining Order, preliminary injunction, and/or permanent injunction providing that:

1. The signature requirements of Art. I §§ 1a and 1g and related statutes, including:

    i. That the petition contains signatures of electors equal to at least ten percent of the total vote cast for the office of governor in the last gubernatorial election;

    ii. That the petition contains signatures, for at least 44 of Ohio's 88 counties,

from at least five percent of the total vote cast for the office of governor in the last gubernatorial election in that county; and

iii. That the Secretary of State may not accept a petition for filing that does not purport to contain the minimum number of signatures;

Are invalid as applied to Intervenors' petition for the Proposed Amendment and shall not be enforced, but rather that the Proposed Amendment shall be included on the November 3, 2020 general election ballot statewide and that the required number of signatures shall be reduced to the 1,000 signatures already obtained in support of the Proposed Amendment;

2. Or, in the alternative, as applied to Intervenors' petition for their Proposed Amendment to be included on the November 3, 2020 general election ballot, that signatures collected and provided by electronic means, not in ink by the signer's hand, and not personally witnessed by the circulator, shall be accepted; and

i. That supplemental signatures, if necessary, may be gathered at any time prior to issuance of formal notice by the Secretary of State as to signature deficiencies;

ii. That the deadline to submit signatures to the Secretary of State shall be August 21, 2020 rather than July 1, 2020;

iii. A reduction by fifty percent (50%) of the requirement of Ohio Const. Art. II § 1a that the petition contain signatures of electors equal to at least ten percent of the total vote cast for the office of governor in the last gubernatorial election;

iv. The requirement of Ohio Const. Art. II § 1g that the petition contain

26

signatures, for at least 44 of Ohio's 88 counties does not apply; and

v.  That the requirement of R.C. 3519.16 that a searchable electronic copy of the petition be filed with the Secretary of State, accompanied by summaries and an index shall not be enforced.

D.  Award attorney's fees and costs associated with this litigation; and

E.  Provide any additional relief the Court deems just, proper, and appropriate.

Respectfully submitted,

/s/ *Freda J. Levenson*
Freda J. Levenson (0045916)
         *Trial Counsel*
Elizabeth Bonham (0093733)
ACLU of Ohio Foundation
4506 Chester Avenue
Cleveland, Ohio 44103
(216) 472-2220
flevenson@acluohio.org
ebonham@acluohio.org

David J. Carey (0088787)
ACLU of Ohio Foundation
1108 City Park Avenue, Suite 203
Columbus, Ohio 43206
(614) 586-1972
dcarey@acluohio.org

T. Alora Thomas-Lundborg*
Dale Ho*
American Civil Liberties Union
125 Broad Street
New York, NY 10004
Tel: 212-519-7866
Tel: 212-549-2693
athomas@aclu.org
dale.ho@aclu.org
**Pro Hac Vice* Forthcoming

*Attorneys for Intervening Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2020, I electronically filed the foregoing using the ECF system which will send notification of such filing to all counsel of record.

/s/ *Freda J. Levenson*
Freda J. Levenson