# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| CHAD THOMPSON,  et al, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:20-cv-2129 |
| | : | |
| v. | : | JUDGE SARGUS |
| | : | |
| GOVERNOR OF OHIO MIKE DEWINE, et al, | : | MAG. JUDGE VASCURA |
| | : | |
| Defendants. | : | |

---

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER / PRELIMINARY INJUNCTION

---

Respectfully submitted,

DAVE YOST
Ohio Attorney General


*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)*
    *Counsel of Record*
MICHAEL WALTON (0092201)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.pfeiffer@ohioattorneygeneral.gov
Michael.Walton@ohioattorneygeneral.gov

*Counsel for Defendants*

## TABLE OF CONTENTS

Table of Authorities .................................................................................................. iii

Memorandum in Opposition to Temporary Restraining Order / Preliminary
Injunction ............................................................................................................... 1

I.       Introduction ................................................................................................. 1

II.      Background .................................................................................................. 2

III.     Law and Argument ...................................................................................... 8

         A.       Plaintiffs and Intervenors Are Not Likely to Succeed on the Merits
                  of Their Claims. ............................................................................... 9

                  1.       No State Actor Has Infringed on Plaintiffs' First
                           Amendment Rights. ............................................................... 9

                  2.       The First Amendment is not applicable as the regulations
                           do not affect political speech or the Plaintiffs' associational
                           rights. .................................................................................. 13

                  3.       Plaintiffs rel-y on inapplicable caselaw. .............................. 15

                  4.       Plaintiffs' claims are not likely to succeed because any
                           burden is outweighed by the substantial regulatory interests
                           governing Ohio's initiative process. ..................................... 17

                           a.     Any burden on Plaintiffs is slight. ............................... 18

                           b.     The State's regulatory interests are substantial and
                                  outweigh the minimal burden to Plaintiffs and
                                  Intervenors. ................................................................. 21

         B.       Plaintiffs Cannot Establish That They Will Suffer Irreparable
                  Harm Without the Injunction. ......................................................... 24

                  1.       Plaintiffs fail to show that the alleged irreparable injury is
                           actual and imminent. ............................................................ 24

         C.       The Balance of Harms Weighs Heavily Against Plaintiffs Because
                  Their Requested Relief is Inappropriate as a Matter of Law and
                  Because it Would Harm the Public Interest. .................................... 27

IV.      Conclusion ................................................................................................. 31

Certificate of Service ............................................................................................. 32

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                **Page(s)**

*Abney v. Amgen, Inc.*,
   443 F.3d 540 (6th Cir. 2006) ...................................................................................24

*ACLU Fund of Mich. v. Livingston Cnty.*,
   796 F.3d 636 (6th Cir. 2015) .....................................................................................8

*Am. Constitutional Law Found., Inc. v. Meyer*,
   120 F.3d 1092 (10th Cir.1997) .................................................................................16

*American Party of Texas v. White*,
   415 U.S. 767 (1974)..................................................................................................23

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983)..................................................................................................17

*Angle v. Miller*,
   673 F.3d 1122 (9th Cir. 2012) ..................................................................................22

*Bailey v. Callaghan*,
   715 F.3d 956 (6th Cir. 2013) ....................................................................................12

*Benisek v. Lamone*,
   ___U.S.___, 138 S.Ct. 1942, 1944 (2018)...............................................................29

*Biddulph v. Mortham*,
   89 F.3d 1491(11th Cir. 1996) ...................................................................................16

*Blankenship v. Blackwell*,
   341 F.Supp.2d 911 (S.D. Ohio 2004) ................................................................29, 30

*Buckley v. Am. Constitutional Law Found., Inc.*,
   525 U.S. 182 (1999)............................................................................................21, 22

*Burdick v. Takushi*,
   504 U.S. 428 (1992)......................................................................................13, 17, 18

*State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections*,
   65 Ohio St.3d 167, 600 N.E.2d 244, 602 N.E.2d 615 (1992)..................................23

*City of Pontiac Retired Emps. Ass'n v. Schimmel*,
   751 F.3d 427 (6th Cir. 2014) (en banc) .....................................................................8

*Comm. to Impose Term Limits on the Ohio Supreme Ct. v. Ohio Ballot Bd.*,
   885 F.3d 443 (6th Cir. 2018) ....................................................................................21

**Cases**                                                                                               **Page(s)**

*Country Club v. Jefferson Metropolitan*,
    5 Ohio App.3d 77, 449 N.E.2d 460 (7th Dist. 1981) ................................................29

*Crawford v. Marion Cnty. Election Bd.*,
    553 U.S. 181 (2008) ................................................................................................29

*D.T. v. Sumner Cty. Sch.*,
    942 F.3d 324 (6th Cir.2019) ..................................................................................26

*Doe v. Reed*,
    561 U.S. 186 (2010) ................................................................................................13

*Esshaki v. Whitmer*,
    2020 U.S. App. LEXIS 14376 (6th Cir. May 5, 2020) ................................2, 27, 28

*Esshaki v. Whitmer*,
    2020 WL 1910154 (E.D. Mich., Apr. 20, 2020), *stay on appeal granted in*
    *part, denied in part by* No. 20-1336 (6th Cir. May 5, 2020) ...................................16

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
    489 U.S. 214 (1989) ................................................................................................29

*Farnsworth v. Nationstar Mortg., LLC*,
    569 F. App'x 421 (6th Cir. 2014) .............................................................................8

*First Natl. Bank v. Bellotti*,
    435 U.S. 765 (1978) ................................................................................................21

*Garbett v. Herbert*,
    2020 U.S. Dist. LEXIS 75853 (D. Utah Apr. 29, 2020) ........................................16

*Gary B. v. Whitmer*,
    2020 U.S. App. LEXIS 13110 (6th Cir. 2020) ......................................................12

*Georgetown v. Brown Cty. Bd. of Elections*,
    158 Ohio St.3d 4, 2019-Ohio-3915, 139 N.E.3d 852 ............................................22

*Goldstein v. Sec'y of Commonwealth*,
    2020 WL 1903931 (Mass., Apr. 17, 2020) ............................................................16

*Initiative & Referendum Inst. v. Walker*,
    450 F.3d 1082 (10th Cir. 2006) (en banc) ................................................13, 14, 16

*Jolivette v. Husted*,
    694 F.3d 760 (6th Cir. 2012) ....................................................................................8

*Jones v. Markiewicz-Qualkinbush,*
 892 F.3d 935 (7th Cir.2018) ...........................................................................14, 21

*Libertarian Party of Illinois v. Pritzker,*
 2020 U.S. Dist. LEXIS 71563 (N.D. Ill., Apr. 23, 2020) ........................................16

*Libertarian Party of Ohio v. Blackwell,*
 462 F.3d 579 (6th Cir. 2006) ...........................................................................15

*Los Angeles v. Lyons,*
 461 U.S. 95 (1983)...........................................................................................24, 25

*State ex rel. Loss v. Lucas Cty. Bd. of Elections,*
 29 Ohio St.2d 233, 281 N.E.2d 186 (1972) ..........................................................23

*Marijuana Policy Project v. United States,*
 304 F.3d 82 (D.C. Cir.2002) ....................................................................13, 14, 15

*Maryland v. King,*
 133 S. Ct. 1 (2012)..............................................................................................30

*Mazurek v. Armstrong,*
 520 U.S. 968 (1997)........................................................................................7, 24

*McIntyre v. Ohio Elections Comm.,*
 514 U.S. 334 (1995) ...........................................................................................14

*Meyer v. Grant,*
 486 U.S. 414 (1988)............................................................................................21

*Mich. State AFL-CIO v. Schuette,*
 847 F.3d 800 (6th Cir. 2017) ..............................................................................12

*Munro v. Socialist Workers Party,*
 479 U.S. 189 (1986)............................................................................................21

*Nader v. Blackwell,*
 545 F.3d 459 (6th Cir. 2008) ..............................................................................30

*State ex rel. Ohioans for Secure and Fair Elections et al. v. LaRose et al.,*
 Case No. 2020-0327...............................................................................................7

*Ohioans for Secure and Fair Elections v. LaRose,*
 2020-Ohio-1459 ..................................................................................................26

*Port of Tacoma v. Save Tacoma Water,*
 4 Wash.App.2d 562, 577, 422 P.3d 917 (2018)....................................................14

**Cases**                                                                                       **Page(s)**

*Regan* v. *Taxation With Representation of Wash.*,
    461 U.S. 540, 103 S. Ct. 1997, 76 L. Ed. 2d 129 (1983) .......................................................15

*Rubin v. City of Santa Monica*,
    308 F.3d 1008 (9th Cir.2002) ...............................................................................................17

*Schmitt v. LaRose*,
    933 F.3d 628 (6th Cir. 2019) .................................................................................................15

*Skrzypczak v. Kauger*,
    92 F.3d 1050 (10th Cir.1996) (overruled on other grounds) ...................................................15

*Smith* v. *Highway Employees*,
    441 U.S. 463, 99 S. Ct. 1826, 60 L. Ed. 2d 360 (1979) (*per curiam*) .....................................12

*State v. Barnett*,
    93 Ohio St.3d 419, 755 N.E.2d 857 (2001) .............................................................................13

*Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*,
    388 F.3d 547 (6th Cir. 2004) ...................................................................................................8

*Taxpayers United for Assessment Cuts v. Austin*,
    994 F.2d 291 (6th Cir.1993) ..............................................................................................18, 22

*Thomas v. Nationwide Children's Hosp.*,
    882 F.3d 608 (6th Cir. 2018) ...................................................................................................9

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997)...........................................................................................................14, 17

*Toledo Area AFL-CIO Council v. Pizza*,
    154 F.3d 307 (6th Cir. 1998) .................................................................................................12

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008)..............................................................................................................8, 24

*State ex rel. Yiamouyiannis v. Taft*,
    65 Ohio St.3d 205, 602 N.E.2d 644 (1992) ...........................................................................23

*Ysursa v. Pocatello Educ. Ass'n*,
    555 U.S. 353 (2009)........................................................................................................11, 12

**Statutes**                                                                    **Page(s)**

42 U.S.C. § 1983 ...............................................................................9, 10

Ohio Rev. Code § 731.28 ..................................................................3, 4

Ohio Rev. Code § 731.31 ................................................................3, 22

Ohio Rev. Code § 731.32 ....................................................................3

Ohio Rev. Code § 3501.011 ................................................................5

Ohio Rev. Code § 3501.11(K) .............................................................3

Ohio Rev. Code § 3501.38 ................................................................23

Ohio Rev. Code § 3501.38(B) .............................................................5

Ohio Rev. Code § 3501.38(M)(1)(a) ....................................................3

Ohio Rev. Code § 3501.39(A) .............................................................3

Ohio Rev. Code § 3519.01(A) .............................................................4

Ohio Rev. Code § 3519.16 ................................................................23

Ohio Rev. Code § 3519.16(F) ............................................................23

Ohio Revised Code Chapter 35 ...........................................................5

Ohio Revised Code Chapter 731 ..........................................................3

**Constitutional Provisions**                                                   **Page(s)**

Ohio Const., Art. II, Sec. 1a ...........................................................4, 5

Ohio Const., Art. II, Sec. 1f ...............................................................3

Ohio Const., Art. II, Sec. 1g ....................................................5, 22, 23

U.S. Const., First Amendment ....................................................... *passim*

U.S. Const., Fourteenth Amendment .........................................8, 10, 18

## <u>MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER / PRELIMINARY INJUNCTION</u>

## I.     INTRODUCTION

As we speak, Ohio is reopening its economy.  Medical care facilities have resumed non-essential surgeries, all manufacturing, distribution and construction businesses are open, people have returned to work in general office environments and, starting today, retail establishments like shopping malls, bars, restaurants and coffee shops can open their doors to the public for sit-down service.   Despite Ohio's return to business, Plaintiffs claim that they cannot obtain the required signatures for their initiative petitions, not because the laws are unconstitutionally flawed, but because they fear exposure to COVID-19.  They wrongly claim that the Defendants and this Court are constitutionally obligated to clear the path and make it easier for them to gather signatures for their initiative petitions.  Their solution?  To completely dismantle Ohio's ballot access scheme just a few short months before the November general election.

Truly, Plaintiffs are  bringing an as-applied challenge to Ohio's COVID-19 orders, when those orders do not actually apply to them.  Since the beginning of Governor DeWine's successful quest to "flatten the curve," he and the Ohio Department of Health have exempted First Amendment protected activities from their health orders.  So, Plaintiffs have been, and continue to be, free to speak whenever, wherever, however, and to whomever they like in support of their positions and to seek signatures for their petitions.  Plaintiffs have suffered no First Amendment infringement at the hand of the State.

The Plaintiffs are very wrong in another paramount way.  They have no First Amendment right to have their initiatives on the November 3, 2020 ballot.  And the Defendants have no First Amendment obligation to make it happen for them.  Yes, the pandemic *has* made Plaintiffs', and every other petition circulators', journey to ballot access unquestionably daunting and the

Defendants are not unsympathetic to them.  Indeed, six months ago, most Ohioans would have never imagined the daily hurdles and barriers they now face.

But that does not mean that this Court can, or should, dismantle Ohio's entire ballot access system so that Plaintiffs, and frankly, all other petition sponsors who come along, can have unfettered access to the November 3, 2020 general election ballot.  It would offend the State's constitutionally protected authority to run its elections. *See Esshaki v. Whitmer,* 2020 U.S. App. LEXIS 14376, *4 (6th Cir. May 5, 2020).  And, Plaintiffs' requested relief would surely cause immeasurable harm to the public interest because it would upend long held safeguards to ballot integrity, it would likely inject fraud into Ohio's petition process, and it would clutter the ballot and confuse voters.  For these reasons, the only lawful course here is to deny Plaintiffs' Motion for Preliminary Injunction.

## II.    BACKGROUND

Ohioans have reserved for themselves the right to legislate through initiative and referendum.  That right, and the process ultimately leading to ballot access, are set by the Ohio Constitution and by statute.

Plaintiffs Thompson, Schmitt and Keeney are registered voters who filed proposed local initiatives with "city auditors and village clerks in Jacksonville, Ohio, Trimble, Ohio, and previously in Maumee, Ohio, in order to have those initiatives once sufficient signatures were collected included on local November 3, 2020 ballots." Thompson Compl., Doc.1, PageID # 3, ¶ 8.  The Plaintiffs also intend to "place these same initiatives on local November 3, 2020 election ballots in cities and villages across Ohio." *Id.* at  ¶ 7.   Plaintiff-Intervenors Ohioans for Secure and Fair Elections et. al. ("OSFE") claim that "until the coronavirus pandemic" they "intended to circulate and/or sign the petition for a "Secure and Fair Elections Amendment" to the Ohio Constitution" for placement on the ballot in the November 3, 2020 general election. OSFE Compl.,

Doc. 14, PageID # 99, ¶ 1. Finally, Plaintiff-Intervenors Ohioans for Raising the Wage et. al ("OFRW") seek to have their proposed constitutional amendment "Raise the Wage Ohio" on the ballot in the November 3, 2020 general election. OFRW Compl., Doc. 17-1, PageID # 221, ¶ 1. OFRW claims that "[]prior to the COVID-19 pandemic" they "had made considerable headway" in the process and had "collected nearly 74,000 signatures, and has invested over $1.5 million in the signature gathering effort to date." *Id.*

**Local Initiatives.** The Ohio Constitution provides the power of initiative "to the people of each municipality on all questions which such municipality may now or hereafter be authorized by law to control by legislative action" in the manner "provided for by law." Ohio Const., Art. II, Sec. 1f. Ohio laws governing this local initiative process delegate to the county boards of elections the obligation to ensure that each proposed initiative is within a municipality's legislative authority. *See* Ohio Rev. Code §§ 3501.11(K), 3501.38(M)(1)(a), and 3501.39(A). Chapter 731 of the Ohio Revised Code also provides the statutory scheme for proposing "[]ordinances and other measures providing for the exercise of any powers of government granted by the constitution or delegated to any municipal corporation by the general assembly" by initiative petition. Ohio Rev. Code § 731.28.

Ohio Rev. Code § 731.31 provides that "any initiative petition shall contain a full and correct copy of the title and test of the proposed ordinance or other measure" and must be signed by "an elector of the municipal corporation in which the election, upon the ordinance or measure proposed by such initiative petition…is to be held." At any time before circulating an initiative petition, a certified copy of the petition must be filed with the city auditor or village clerk. Ohio Rev. Code § 731.32. Once a petition is filed with the city auditor or village clerk, petition sponsors may begin circulating the petition for signatures by registered voters that reside in the municipality

and who support the petition.  All initiative petitions "must contain the signatures of not less than ten per cent of the number of electors who voted for governor at the most recent general election of the office of governor in the municipal corporation." Ohio Rev. Code § 731.28; Ohio Const., Art. II, Sec. 1a.  If a petition sponsor can obtain the required number of supporting signatures by registered voters, the sponsor must file the petition and the signatures with the city auditor or village clerk.  *Id.*  Within ten days, the auditor or clerk must transmit a certified copy of the petition and signatures to the county board of elections." *Id.*  It falls to the county boards of elections to "examine all signatures on the petition to determine the number of electors of the municipal corporation who signed the petition" and to "submit such proposed ordinance or measure for the approval or rejection of the electors of the municipal corporation at the next general election occurring subsequent to ninety days after the auditor or clerk certifies the sufficiency and validity of the initiative petition to the board of elections." *Id.*  A board of election has only ten days from receipt of the petition to examine and verify all signatures and to submit the proposed ordinance to the voters, or to reject it. *Id.*

**Constitutional Amendments.**  Like the power to bring local initiatives, the power and procedure for amending the Ohio Constitution is enshrined in the Ohio Constitution.  *See* Article II, Section 1a ("The first aforestated power reserved by the people is designated the initiative"). Petitions for constitutional amendments initially must proceed through a certification process, which involves certification by the Ohio Attorney General that the summary of the amendment is "fair and truthful," and a determination by the Ohio Ballot Board that the proposed amendment contains only one proposed law or amendment.  Ohio Rev. Code §§ 3519.01(A); 3505.062(A). OSFE and OFRW complied with these initial requirements and are both authorized to gather signatures as provided for by Chapter 35 of the Ohio Revised Code and by the Ohio Constitution.

OFRW has been authorized to gather signatures since February 5, 2020. Doc. 17-1, PageID # 224, ¶ 16. Likewise, OSFE has been authorized to gather signatures since April 23, 2020. Doc. 14, PageID # 105, ¶ 27.

**Signature Requirements.** A petition for a constitutional amendment may not appear on the ballot for general election unless it is accompanied by signatures equal to at least ten percent of the total votes cast in the last gubernatorial election and filed with the Secretary of State not later than 125 days before the general election. Ohio Const., Art. II, Secs. 1g, 1a. The signatures must be from at least 44 of Ohio's 88 counties, and from each of the 44 counties, there must be signatures equal to at least five percent of the total vote cast for governor in the last gubernatorial election. Id. To be valid, each signature must be in ink, Ohio Rev. Code § 3501.38(B); Ohio Const., Art. II, Sec. 1g, and must be the original signature of the elector, signed in the elector's "own hand." *See* Ohio Rev. Code § 3501.011; Ohio Const., Art. II, Sec. 1g. The elector's signature on the petition must match the signature that is on file with the board of elections. Grandjean Aff., ¶11, Def. Ex. A. (The Affidavit of Amanda Grandjean was previously filed in *Ohioans for Raising the Wage et al. v. LaRose,* Case No. 20 CV 2381 (Franklin County Court of Common Pleas). Each part-petition must contain a circulator's statement, signed by the circulator "under penalty of election falsification" to affirm "that the circulator witnessed the affixing of every signature." Ohio Const., Art. II, Sec. 1g.

**All Present and Prior COVID-19 Orders Allow Signature Gathering.** From the very beginning of Ohio's fight to stem the COVID-19 virus, Governor DeWine and the Ohio Department of Health have specifically carved out First Amendment speech from their health orders and directives. Most recently, on April 30, 2020, the Ohio Department of Health issued Ohio's plan to reopen the economy and outlined a detailed schedule for the graduated re-opening

of businesses, retail establishments, offices, medical facilities and other institutions by May 12, 2020.[1] Medical care facilities have resumed non-essential surgeries, all manufacturing, distribution and construction businesses are open, people have returned to work in general office environments, and retail establishments and facilities can open their doors on May 12 provided social distancing and other health precautions are observed. *Id.*

But, First Amendment protected activities need not be "reopened" because they were never closed. The April 30, 2020 Stay Safe Ohio Order provides that "First Amendment protected speech, including petition or referendum circulators, and any activity by the Media, which includes newspapers, television, radio and other media services" are not "prohibited activities" under the order. *Id.* at ¶ 4. First Amendment protected speech was also exempted from Ohio Department of Health's April 2, 2020 "Amended Stay at Home Order,"[2] Ohio Department of Health's March 22, 2020 "Stay at Home Order,"[3] Ohio Department of Health's March 17, 2020 "Amended Order to Limit and/or Prohibit Mass Gatherings and the Closure of Venues in the State of Ohio,"[4] and Ohio Department of Health's March 12, 2020 order "Order to Limit and/or Prohibit Mass Gatherings in the State of Ohio."[5] So, any directives requiring social distancing and staying-at-home or prohibiting gatherings of more than 10 people do not apply, and have never applied, to individuals who are circulating petitions and gathering signatures.

---

[1] *See* Ohio Department of Health, "Director's Stay Safe Ohio Order," April 30, 2020 *available at* https://coronavirus.ohio.gov/static/publicorders/Directors-Stay-Safe-Ohio-Order.pdf.

[2] *See* https://coronavirus.ohio.gov/static/publicorders/Directors-Stay-At-Home-Order-Amended-04-02-20.pdf at ¶ g.

[3] *See* https://coronavirus.ohio.gov/static/DirectorsOrderStayAtHome.pdf at ¶ g.

[4] *See* https://coronavirus.ohio.gov/wps/wcm/connect/gov/dd504af3-ae2c-4d2e-b2bd-02c1a3beed89/Director%27s+Order-+Amended+Mass+Gathering+3.17.20+-%281%29.pdf?MOD=AJPERES&CONVERT_TO=url&CACHEID=ROOTWORKSPACE.Z18_M1HGGIK0N0JO00QO9DDDDM3000-dd504af3-ae2c-4d2e-b2bd-02c1a3beed89-n6XVz7y at ¶ 5.

[5] *See* https://coronavirus.ohio.gov/static/publicorders/Director-of-Health-Gatherings-Order.pdf

6

**Ohio Courts Denied Plaintiff-Intervenors Relief from the Signature Requirements.**

Before intervening in the instant matter, Ohio courts twice denied OFRW and OSFE the nearly-identical relief that they seek here.  In *State ex rel. Ohioans for Secure and Fair Elections et al. v. LaRose et al.,* Case No. 2020-0327, the Ohio Supreme Court denied OSFE's request for additional time to collect signatures in support of its petition for a constitutional amendment.[6]

Two weeks later on April 28, 2020, the Franklin County Common Pleas Court denied OFRW's and OSFE's motion for preliminary injunction where they requested that the Ohio laws and constitutional provisions that set out the signature requirements for initiative petitions be completely enjoined as applied to them or, in the alternative, be reduced or modified.[7]  There, the court denied a preliminary injunction because it lacked "the power to order an exception or remedy that was not contemplated or intended by the plain language of the Ohio Constitution" and because the Plaintiff-Intervenors "failed to meet their burden by demonstrating that they will suffer irreparable harm."  FN 6 at 8, 10.

---

[6] *See* Ohio Supreme Court's Order of April 14, 2020 granting writ of mandamus directing Ohio Ballot Board to certify the OSFE amendment as a single amendment and denying their request for additional time to gather signatures, *available at:*
 http://supremecourt.ohio.gov/pdf_viewer/pdf_viewer.aspx?pdf=222931.pdf.

[7] *See* Decision & Entry, Judge David C. Young, Case No. 20 CV 2381, *available at:* https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=QjGP dB%2B62zCp9nGYpCgZZDYLYHPjEz8Y9o6lK1lGVG5d%2BkvqvYfxRjGdgePcByzNN73c %2BTJ3YsRMEy8EFjiILDwYespwcGazD63Qa9BzRveAffqatkw0MRKFz0JlIrM9dU1Qh9YT GM4ZNBa8w5LuEhFJqC2EPj%2BXobh5v3QZGwE%3D.   *See also* Motion for Preliminary Injunction by OFRW *available at*
https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/imageLinkProcessor.pdf?coords=Bl%2 BdvXls%2FEaLTtpSztYlvqeJMk96ytO1BUZljTuAjQO9stfDZMGCXvCyS05bxmFYCKaW28 Qcs07w9Lb%2FasUmyDp%2FvdE7%2BBfojxxFumvkdil7uwRjWRA21HTd7uNRaFlAYP1W %2By%2FC6r374LxbItwRjlPoBYPGOER7OHq8kz5hxOE%3D.

## III.    LAW AND ARGUMENT

"[A] preliminary injunction is an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  The movant "bears the burden of justifying such relief," and it is "never awarded as of right."  *ACLU Fund of Mich. v. Livingston Cnty.,* 796 F.3d 636, 642 (6th Cir. 2015).  Indeed, "the proof required is much more stringent than the proof required to survive a summary judgment motion."  *Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 425 (6th Cir. 2014) (quotation and alternation omitted).  When determining whether to grant a party's request for such a remedy, district courts must balance four factors: "'(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'"  *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation omitted).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.,* 555 U.S. 7, 20 (2008).  As to the first factor, a plaintiff must establish a "strong" likelihood of success, *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) (quotation omitted); a mere "possib[ility]" of success does not suffice, *Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 551 (6th Cir. 2004). Similarly, the plaintiff must show a likelihood, not just a possibility, of irreparable injury.  *Winter*, 555 U.S. at 22.  As discussed more fully below, Plaintiffs fail on all counts.

A. **Plaintiffs and Intervenors Are Not Likely to Succeed on the Merits of Their Claims.**

Plaintiffs and Intervenors are not likely to succeed on their as-applied claims that Ohio's constitutional amendment and local initiative process violates the First and Fourteenth Amendments to the United States Constitution in light of the COVID-19 pandemic. Specifically, Plaintiffs[8] cannot show that a state actor violated their rights to engage in political speech because political speech has always been exempted from Ohio's COVID-19 public health orders. Further, because Ohio's statutory and constitutional provisions do not regulate political speech or expressive conduct, the First Amendment is not implicated. Finally, Plaintiffs cannot prevail under the *Anderson-Burdick* standard because any burden on their First Amendment rights is slight and is outweighed by the State's substantial regulatory interests.

1. **No State Actor Has Infringed on Plaintiffs' First Amendment Rights.**

All COVID-19 orders that restrict activities or require social distancing practices have carved out First Amendment activities. *See supra* FN 1-4. So, simply put, the State's orders are not preventing, and never have prevented, Plaintiffs from seeking signatures for their petitions. They are free to choose who they reach out to, how they approach individuals, and which locations they choose to target. This freedom extends not just to circulators but to their listeners and potential signers too. The individuals who are being approached are free to choose whether they will listen and lend their signatures without fear of violating COVID-19 orders. The gist of Plaintiffs' complaint is that, even with this freedom, the fear of is COVID-19 will impact these choices and make it difficult to gather signatures. But, this claim lacks the critical link required for them to succeed: a causal link between state action and the alleged constitutional infringement.

---

[8] Defendants' references to "Plaintiffs" include both the original Plaintiffs and Plaintiff-Intervenors unless specified otherwise.

But, to prevail under their 42 U.S.C. § 1983 claims, the Plaintiffs must show that the Defendants acted under color of state law *and* that their actions *caused* the violation of their First Amendment rights.  "By its terms, § 1983 requires an act "under color of any statute, ordinance, regulation, custom, or usage, of any State." *Thomas v. Nationwide Children's Hosp.,* 882 F.3d 608, 612 (6th Cir. 2018) (affirming summary judgment against plaintiff because defendant, a private hospital, did not act under "color of state law").   As discussed *infra*, Plaintiffs do not have a First Amendment right to ballot access.  At best, the First Amendment protects their right to engage in speech about their petitions, circulate their petitions and to request signatures for their petitions. Since no state action has infringed upon *this* right, Plaintiffs' Section 1983 claims fail at their threshold.

The same is true for the Thompson Plaintiffs' novel claim that "[u]nder present circumstances, Ohio's emergency orders…have changed Ohio's ballot requirements in the midst of the 2020 election and thereby violated rights guaranteed to [them] by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983."  Doc. 1, PageID # 17-18 at ¶ 75.  The Thompson Plaintiffs cannot show that state action, or Ohio's COVID-19 orders for that matter, "have changed Ohio's ballot requirements." Accordingly, their due process claim also lacks a causal connection between state action and infringement of their substantive due process rights under the Fourteenth Amendment.

Nor are Plaintiffs entitled to an open road for signature gathering.  According to Plaintiffs, the COVID-19 pandemic is the culprit that makes it impossible for them to meet the signature

requirements for their proposed ballot initiatives.[9] OFRW states that, "[g]iven the temporary changes in our society – specifically, the severe reduction of the ability to physically encounter other people – there is no means of complying with Ohio's signature requirements." OFRW Compl., Doc. 17-1 at ¶ 4. Likewise, OSFE claims that, "[p]rior to the coronavirus pandemic, Intervening-Plaintiffs had worked diligently to place the Proposed Amendment on the November 2020 ballot. However, the pandemic has made it impossible for Intervenors to meet these requirements for the Proposed Amendment." OSFE Compl., Doc. 14 at ¶ 3. Finally, the Thompson Plaintiffs argue that, "it is literally impossible for people outside the same family unit to solicit others for signatures needed to support the initiative petitions needed to place initiatives and referenda on Ohio's November 2020 election ballot." Thompson Compl., Doc. 1, PageID # 14 at ¶ 52. Because the COVID-19 pandemic is proving difficult for them to get the results they desire, Plaintiffs claim that the Defendants are constitutionally obligated to clear the path. They are wrong as a matter of law.

States are not obligated to subsidize the exercise of a fundamental right. *Ysursa v. Pocatello Educ. Ass'n,* 555 U.S. 353, 359 (2009). In *Ysursa,* a group of public sector labor unions brought a First Amendment claim against an Idaho law that permitted public employees to authorize payroll deductions for general union dues but not for union political activities. *Id.* at 355. The labor unions argued that the law's ban on payroll deductions for political activities acted as a ban on their right to free speech because they faced "substantial difficulties in collecting funds for political speech without using payroll deductions." *Id.* at 359. The Supreme Court upheld the law

---

[9] Although the Thompson Plaintiffs claim that "[g]athering in-person signatures in Ohio under the current circumstances is not only illegal under Ohio law but risks spreading COVID-19," a quick read of the COVID-19 orders as discussed herein bear out that their claims of illegality are simply erroneous. Thompson Compl., Doc. 1, PageID # 14 at ¶ 56.

under rational basis review as a reasonable regulation of a public employer's payroll deduction system and not an abridgement of the unions' First Amendment rights. *Id.* The Court ruled, "[t]he First Amendment, however, protects the right to be free from government abridgement of speech. While in some contexts the government must accommodate expression, it is not required to assist others in funding the expression of particular ideas, including political ones." *Id.* at 358. "[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny." *Id.* quoting *Regan* v. *Taxation With Representation of Wash.*, 461 U.S. 540, 549, 103 S. Ct. 1997, 76 L. Ed. 2d 129 (1983); *Smith v. Arkansas State Highway Employees*, 441 U.S. 463, 465, 99 S. Ct. 1826, 60 L. Ed. 2d 360 (1979) (*per curiam*) ("First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize [a labor] association and bargain with it").

The Sixth Circuit also has recognized that governments need not subsidize or enhance a party's exercise of free speech. *See Mich. State AFL-CIO v. Schuette,* 847 F.3d 800, 806 (6th Cir. 2017); *Toledo Area AFL-CIO Council v. Pizza,* 154 F.3d 307 (6th Cir. 1998). In *Mich. State AFL-CIO* and *Toledo Area AFL-CIO,* labor unions challenged laws that barred employers from administering payroll deductions for political donations claiming that the laws infringed on their First Amendment rights to speak through monetary donations. *Mich. State AFL-CIO* at 801; *Toledo Area AFL-CIO Council* at 311. In both cases, the Court rejected the unions' claims that the First Amendment gave them unfettered access to payroll systems because "the unions remain free to collect donations and to use those donations for political purposes." *Mich. State AFL-CIO* at 806; *Toledo Area AFL-CIO Council* at 320 (unions do not have an independent constitutional right to "compel their employer to assist them in exercising their First Amendment rights"). *See also Bailey v. Callaghan,* 715 F.3d 956 (6th Cir. 2013) (same result). Accordingly, "absent a

burden on a constitutionally cognizable right, the government may regulate what is at best a speech-facilitating mechanism." *Mich. State AFL-CIO* at 806.  *See also Gary B. v. Whitmer,* 2020 U.S. App. LEXIS 13110, *139 (6th Cir. 2020) (J. Murphy dissenting on other grounds) citing *Ysursa,* 555 U.S. at 364  ("It has, however, been black-letter law for decades that the Free Speech Clause does not require states to "affirmatively assist" speech.").

Much like the labor unions in *Ysursa, Mich. State AFL-CIO* and *Toledo Area AFL-CIO* who suffered no infringement of their right to obtain political donations through means other than payroll deductions, Plaintiffs face no infringement of their First Amendment right to collect signatures.  The onerousness of Ohio's ballot access signature requirements at this moment in time, whatever it may be, does not constitutionally obligate the Defendants or this Court to clear their path to the November 3, 2020 ballot.

## 2. The First Amendment is not applicable as the regulations do not affect political speech or the Plaintiffs' associational rights.

The United States Constitution does not guarantee anyone the right "to make law, by initiative, or otherwise." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir. 2006) (en banc).  In other words, although "the First Amendment protects public debate about legislation, it confers no right to legislate on a particular subject." *Marijuana Policy Project v. United States*, 304 F.3d 82, 85 (D.C. Cir.2002).  "It is instead up to the people of each State, acting in their sovereign capacity, to decide whether and how to permit legislation by popular action." *Doe v. Reed*, 561 U.S. 186, 212 (2010) (Sotomayor, J., concurring).  Thus, any right to place a specific issue on the ballot is limited to what is granted in the Ohio Constitution or Ohio Revised Code.

The First Amendment guarantees two different types of associational freedoms.  *State v. Barnett,* 93 Ohio St.3d 419, 424, 755 N.E.2d 857 (2001). The first includes the choice to enter into

and maintain certain intimate human relationships. *Id.,* citing *Dallas v. Stanglin,* 490 U.S. 19, 23-23 (1989). The second type is the right to associate for the purpose of engaging expressive activity protected by the First Amendment, including the rights of free speech, assembly, petition for the redress of grievances, and the exercise of religion. *Id.,* citing *Stanglin*, 490 U.S. at 24. It is this second associational right that Intervenors OSFE and OFRW claim is violated. With regard to elections, the First Amendment right to association ensures that state laws cannot "unconstitutionally limit access to the ballot by party or independent candidates," *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) , or "exclude[] a particular group of citizens, or a political party, from participation in the election process." *Timmons*, 520 U.S. at 361.

Here, the challenged constitutional and statutory provisions regulate the mechanics of the initiative process, not protected speech or a political candidate's access to the ballot, and, as a result, the First Amendment does not apply.  Laws, unlike those at issue here, that do regulate expressive speech come under closer scrutiny. For that reason, laws that "[require] that petition circulators be registered voters, [require] that petition circulators wear a name badge, and certain reporting requirements applicable to proponents of an initiative" are unconstitutional. *Walker*, 450 F.3d at 1099 (citing *Am. Constitutional Law Found., Inc. v. Meyer*, 120 F.3d 1092, 1100-05 (10th Cir.1997), aff'd sub nom. *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182 (1999)). These laws implicate the First Amendment because they "specifically regulated the process of advocacy itself: the laws dictated *who* could speak (only volunteer circulators and registered voters) or *how* to go about speaking (with name badges and subsequent reports)." *Id.* A law that makes it a felony to pay a petition circulator is unconstitutional for the same reason. *Id*. (citing *Meyer v. Grant*, 486 U.S. 414, 416 (1988)). A law that altogether bans the distribution of anonymous leaflets is likewise unconstitutional. *McIntyre v. Ohio Elections Comm*., 514 U.S. 334, (1995).

On the other hand, laws regulating the initiative process itself, like those challenged here, do not implicate the First Amendment. For example, limiting the subjects available for initiative, requiring a supermajority to pass certain types of initiated laws, restricting the number of initiative ballot slots available, or requiring pre-screening do not implicate protected speech. *Marijuana Policy Project*, 304 F.3d at 87 (limit on initiative subject); *Port of Tacoma v. Save Tacoma Water*, 4 Wash.App.2d 562, 577, 422 P.3d 917 (2018) (limit on initiative subject); *Walker*, 450 F.3d at 1101 (supermajority requirement); *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 938 (7th Cir.2018) (limit on number of initiative spots); *Skrzypczak v. Kauger*, 92 F.3d 1050, 1053 (10th Cir.1996) (overruled on other grounds) (removal of initiative during pre-screening review of its content for constitutionality); *Schmitt v. LaRose*, 933 F.3d 628, 634 (6th Cir. 2019) (upholding Ohio law mandating pre-submission review of initiatives and referenda noting that the challenged laws "regulate the process by which initiative legislation is put before the electorate, which has, *at most,* a second-order effect on protected speech") (emphasis added). There is a difference between "establishing [] limits on legislative authority" and "limits on legislative advocacy." *Marijuana Policy Project*, 304 F.3d at 85. The former does not implicate the First Amendment, the latter does. *Id.* The provisions challenged here fall within the former. Without any intrusion on protected speech or association, the First Amendment does not apply at all and therefore, Plaintiffs are not likely to prevail on the merits of their constitutional claims.

### 3. Plaintiffs rely on inapplicable caselaw.

The statutory and constitutional framework governing Ohio's initiative process for amending the Ohio Constitution and local ordinances do not implicate a political party's or candidate's ability to qualify for the ballot, which otherwise triggers the First Amendment and is entitled to more protection. *Compare Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 588 (6th Cir. 2006) ("However, when a candidate wishes to appear as one party's standard-bearer and

voters want to exercise their constitutional right to cast a ballot for this candidate, the [Supreme ] Court has viewed state-imposed restrictions on this fundamental process with great skepticism.") *with Schmitt v. LaRose*, 933 F.3d 628, 638 (6th Cir. 2019), quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) ("[The Supreme Court] has also stated that 'ballots serve primarily to elect candidates, not as forums for political expression.' ").  Accordingly, the majority of cases cited by the Plaintiffs and Intervenors are inapplicable as they involve situations where a party or candidate sought to have their name on the ballot, which is not the case here.  *See generally* Plaintiffs' Memorandum, Doc. #4-1 at PageID # 46-49; Intervenor OFSE's Memorandum in Support, Doc#15 at PageID # 152; Intervenor OFRW's Memorandum in Support, Doc. #17-2 at PageID # 254-255.

Likewise, the most recent COVID-19 elections cases relied upon by Plaintiffs and Intervenors are inapt as all involved challenges by individual candidates or political parties to get their names on the ballot.  *See Garbett v. Herbert*, 2020 U.S. Dist. LEXIS 75853 (D. Utah Apr. 29, 2020); *Libertarian Party of Illinois v. Pritzker*, 2020 U.S. Dist. LEXIS 71563 (N.D. Ill., Apr. 23, 2020); *Esshaki v. Whitmer*, 2020 WL 1910154 (E.D. Mich., Apr. 20, 2020), *stay on appeal granted in part, denied in part by* No. 20-1336 (6th Cir. May 5, 2020); *Goldstein v. Sec'y of Commonwealth*, 2020 WL 1903931, at * (Mass., Apr. 17, 2020).  Notably, unlike the orders issued by Defendants in this case, none of the public health orders in Illinois, Massachusetts, Michigan, or Utah exempted First Amendment protected speech.

Further, the Intervenors reliance upon *Meyer* is misplaced.  They argue that the ongoing pandemic necessitates application of a higher level of scrutiny to the State's reasonable and necessary ballot control measures. But, the law challenged in *Meyer* "specifically regulated the process of advocacy itself: the laws dictated *who* could speak (only volunteer circulators and

registered voters) or *how* to go about speaking (with name badges and subsequent reports)." *Walker*, 450 F.3d 1082, 1099 (10th Cir. 2006) (en banc), cert. denied, 549 U.S. 1245 (2007). In *Meyer*, "the Court established an explicit distinction between a state's power to regulate the initiative process in general and the power to regulate the exchange of ideas about political changes sought through the process. The Court only addressed the constitutionality of the latter." *Biddulph v. Martham,* 89 F.3d 1491, 1498 (11th Cir. 1996). Here, the challenged constitutional and statutory provisions are only process related regulations, not restrictions on the exchange of ideas.

Here, Plaintiffs argue that the constitutional and statutory provisions governing Ohio's initiative petition mechanism coupled with the ongoing pandemic prevents their *initiative proposals* from appearing on the ballot. But "[b]allots serve primarily to elect candidates, not as fora for political expression." *Timmons*, 520 U.S. at 363. While political parties, their members, and their candidates have the right to "campaign . . . , endorse, and vote" in an election, they do not have "a right to use the ballot itself to send a particularized message." *Id*. After all, "[a] ballot is a ballot, not a bumper sticker." *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1016 (9th Cir. 2002). In short, Plaintiffs have no First Amendment right to speak or associate by placing initiatives on the State's or a county's ballot.

Rather, as explained below, any First Amendment analysis targeted at the statutory and constitutional provisions addressing the initiative or referendum process requires a much less stringent approach.

### 4. Plaintiffs' claims are not likely to succeed because any burden is outweighed by the substantial regulatory interests governing Ohio's initiative process.

Assuming, arguendo, that the First Amendment does apply, which it does not, the challenged provisions are still constitutional under the analysis set forth in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). The Supreme Court has found

17

that any election regulation will, invariably, result in some burden to voters, but subjecting each regulation to strict scrutiny "would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Burdick* at 433. Under this "more flexible standard[,]" *id.* at 434, courts must "weigh the character and magnitude of the burden the State's rule imposes on [Plaintiffs' First Amendment] rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (citations and internal quotation marks omitted).

In short, "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick* at 434, quoting *Anderson* at 789. As the Sixth Circuit explained in *Taxpayers United for Assessment Cuts v. Austin*, "it is constitutionally permissible for [a State] to condition the use of its initiative procedure on compliance with content-neutral, nondiscriminatory regulations that are, as here, reasonably related to the purpose of administering an honest and fair initiative procedure." 994 F.2d 291, 297 (6th Cir.1993).

### a. Any burden on Plaintiffs is slight.

Any burden to the Plaintiffs is slight given the lack of any state action restricting political speech or association, and because they provide no reason as to why the issue *must* be placed on the November 2020 ballot as opposed to a future ballot or that they have actually attempted to obtain signatures through alternative processes. Further, both the constitutional framework for proposed constitutional amendments and the statutory framework for proposing local ordinances are content-neutral and nondiscriminatory regulations. *See Taxpayers United for Assessment Cuts* at 297.

18

Importantly, Plaintiffs have the burden to present evidence to show a high likelihood of success, which would include evidence as to the steps they have taken to get these issues on the ballots.  Specifically, the Thompson Plaintiffs have not submitted any affidavits, declarations, or other examples of evidence to show either the steps they have taken in attempt to obtain the requisite signatures (less than 10 in one village) or how the challenged provisions are unreasonable.  Thus, at best, the Thompson Plaintiffs merely speculate that they would have been unsuccessful.  ).  *See* Stipulation by All Parties, Doc. 35, PageID # 468 at ¶¶ 5-9.  Unlike the Thompson Plaintiffs, Intervenors OSFE and OFRW have submitted some evidence as to their efforts, however they still fail to carry their burden.

First, as stated in more detail above, neither Plaintiffs nor Intervenors can point to any state action that infringes upon political speech in light of the COVID-19 pandemic.  This is first and foremost because neither has a constitutionally protected right to have their respective issue placed on the ballot.  Further, unlike every other COVID-19 elections case that Plaintiffs and Intervenors cite, the Defendants' Orders have *always* specifically exempted First Amendment Protected Speech.  Also, it is impossible for them to show and would be an incredible leap for this Court to find that the only reason people have not signed the petitions is because of the COVID-19 Orders.

Further, using the 2010 census as a guide, with the exception of Akron (approximately 15,352 signatures), the Thompson Plaintiffs' required signatures for the other municipalities is nominal   (Jacksonville – 31; Trimble – 31; Glouster – 131; Maumee – 1,106).  *See* Stipulation by All Parties, Doc. 35, PageID # 468 at ¶¶ 5-9.  This, of course, gives the Thompson Plaintiffs the benefit of the doubt by assuming all voting age citizens voted in the most recent gubernatorial election.  In reality, these numbers are likely significantly less.  Therefore, had Plaintiffs started

their circulation effort earlier, i.e. prior to the COVID-19 pandemic or by targeting an earlier election, they could have acquired the requisite signatures in some, if not all, of these municipalities. Additionally, none of the Plaintiffs have offered evidence that they have attempted any alternative means to obtain the required signatures in light of the current circumstances. For example, although a mailing campaign might not be cost-effective, nothing prevented Plaintiffs from initiating a telephone campaign to gauge interest and arrange to obtain a voter's signature. But, again, the burden is not on the Defendants to show how Plaintiffs could have gotten the required signatures. Rather, the burden lies with the Plaintiffs to show how the signature requirements are unreasonable. They have failed to carry that burden.

Finally, the Thompson Plaintiffs have failed to show how they would be severely burdened by having to wait until the next election cycle to include their proposed ordinances. Again, as stated before, Plaintiffs could have avoided this by bringing their issues to the voters in earlier elections. Thus, when one considers all of the circumstances, the burden, in this particular case as it relates to the initiative petition process, is relatively small.

The burden on the two Intervenors is also slight. First, they do not have a right to have their issues placed on the ballot. Second, Ohio is in the process of reopening its doors. On May 4, 2020, all manufacturing, distribution, and construction businesses and operations as well as general office environments were permitted to re-open. *See* FN 1-2. Further, on May 12, all retail stores were permitted to re-open. *Id.* The Governor also announced that restaurants will be permitted to service outdoor dining effective May 15 and indoor dining on May 21.[10] He also

---

[10] *See* Chris Anderson, "Gov. DeWine Outside Dining at Ohio Restaurants Can Resume May 15, Inside Seating Can Continue May 21," *available at* https://www.cleveland19.com/2020/05/07/gov-dewine-outside-dining-ohio-restaurants-can-resume-may-inside-seating-can-continue-may/.

announced that hair salons, barbershops, and other beauty services will re-open on May 15.[11] As a result, the Intervenors', as well as the Thompson Plaintiffs' ability to obtain signatures is improving daily. Third, rather than seek alternative solutions in light of the pandemic, both the Thompson Plaintiffs and the Intervenors have merely thrown up their arms in defeat and, now, ask this Court to intervene on their behalves. Fourth, Intervenor OSFE offers one party-declarant who claims that he will not sign its petition for fear of exposure to COVID-19. *See* Campbell Decl., Doc. 15-4. This is the sum total evidence that any of the Plaintiffs offer in support of their wide-sweeping allegation that Ohioans won't sign their petitions because they fear COVID-19. *See* Gallaway Decl., Doc. #17-2, Ex. B-3, at PAGE ID 277; *see also* Dippold-Webb Decl., Doc #14-2, at PAGE ID 134. Not only does this prove that the Plaintiffs' claimed harm is not at the hand of the State, but it also ignores the possibility that Ohio voters might simply disagree with their petitions. For all of these reasons, the burden to the Thompson Plaintiffs and Intervenors OSFE and OFRW is slight.

### b. The State's regulatory interests are substantial and outweigh the minimal burden to Plaintiffs.

Ohio and its citizens have important interests in keeping unauthorized initiative proposals off the ballot itself that outweigh the burden to Plaintiffs. First, it simplifies the ballot. *See Jones*, 892 F.3d at 938 ("[S]tates have a strong interest in simplifying the ballot."); *see also Munro v. Socialist Workers Party*, 479 U.S. 189, 194-95 (1986) (noting the Supreme Court has "never required a State to make a particularized showing of the existence of voter confusion [or] ballot overcrowding . . . prior to the imposition of reasonable restrictions on ballot access"). Second, it

---

[11] *See* Jen Picciano and Chris Anderson, "Gov. DeWine Says Ohio Hair Salons, Barbershops Can Reopen May 15," *available at* https://www.cleveland19.com/2020/05/07/ohioans-anticipate-gov-dewine-announce-when-ohio-restaurants-hair-salons-can-reopen/.

prevents voter confusion. *See Comm. to Impose Term Limits on the Ohio Supreme Ct. v. Ohio Ballot Bd.*, 885 F.3d 443, 448 (6th Cir. 2018) (finding Ohio's single-subject requirement helps to avoid voter confusion). Third, it furthers the State's interest in maintaining voter confidence in the government and electoral process. *See First Natl. Bank v. Bellotti*, 435 U.S. 765, 788-89 (1978) (recognizing that "equally" of the highest importance is the "[p]reservation of the individual citizen's confidence in government"). These substantial interests justify the framework governing initiatives as set forth in Ohio's Constitution and by statute.

The challenged provisions are also supported by the regulatory interest of "making sure that an initiative has sufficient grass roots support to be placed on the ballot." *Meyer*, 486 U.S. at 425-26. This interest is "substantial." *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 191 (1999). In fact, "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally." 525 U.S. at 191. In *Buckley*, the Supreme Court found that "necessary or proper ballot access controls," include requiring "submission of valid signatures" of a certain percentage of the electorate in order "[t]o ensure grass roots support." *Id.* at 205. The Sixth Circuit has also emphasized that the State "has a strong interest in ensuring that proposals are not submitted for enactment into law unless they have sufficient support." *Taxpayers United*, 994 F.2d at 297; *see also Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012) (upholding Nevada's geographic distribution requirement for petition signatures).

The Supreme Court has further recognized that states have a substantial interest in ensuring that submitted signatures are authentic. *See Buckley*, 525 U.S. at 205. As confirmed by Ohio's Constitution, ensuring the validity of the signatures on petitions is an interest of the highest order of both the State and its people. It requires that "[e]ach signer of any initiative,

supplementary, or referendum petition must be an elector of the state" and provide additional verification of authenticity, including that "signer shall place on such petition after his name the date of signing and his place of residence." Ohio Const., Art. II, Sec. 1g.  This information is required to facilitate "the duty of the boards of elections [ ] to establish the authenticity of the elector[.]" *Georgetown v. Brown Cty. Bd. of Elections*, 158 Ohio St.3d 4, 2019-Ohio-3915, 139 N.E.3d 852, ¶24. (Emphasis in original).  Similar provisions exist in the Ohio Revised Code for local initiative petitions.  See Ohio Rev. Code § 731.31 ("Each signer of any such petition must be an elector of the municipal corporation in which the election, upon the ordinance or measure proposed by such initiative petition * * * is to be held.").

To further aid in verifying the elector's authenticity, the Constitution requires that "[t]he names of all signers to such petitions shall be written in ink, each signer for himself." Ohio Const., Art. II, § 1g; *see also* Ohio Rev. Code § 731.31 (signature requirements for local initiative petitions are governed by the same rules that apply to proposed constitutional amendment initiative petitions). Indeed, the Ohio Supreme Court has held that "boards of election are required to compare petition signatures with voter registration cards to determine if the signatures are genuine." *State ex rel. Yiamouyiannis v. Taft*, 65 Ohio St.3d 205, 209, 602 N.E.2d 644 (1992). (Emphasis added.) The Ohio Constitution also requires that each part-petition shall be accompanied by "the statement of the circulator, as may be required by law, that he witnessed the affixing of every signature." Ohio Const., Art. II, Sec. 1g. This circulator statement must be affirmed under penalty of election falsification. Ohio Rev. Code § 3501.38.

The Ohio Supreme Court has identified numerous important reasons for these requirements. For one, it "is a protection against signatures being added later. As such, it is a substantial, reasonable requirement." *State ex rel. Loss v. Lucas Cty. Bd. of Elections*, 29 Ohio

St.2d 233, 281 N.E.2d 186 (1972). For another, it ensures that each elector signs the petition by themselves and not by proxy. *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections*, 65 Ohio St.3d 167, 174, 600 N.E.2d 244, 602 N.E.2d 615 (1992).

Finally, Ohio Rev. Code § 3519.16 requires electronic copies and indexes of the part-petitions to enable the boards of elections to carry out their statutory duties to review the part-petitions for authenticity. In part, it accomplishes this by providing a cut-off period for the collection of signatures plus a defined, ten-day window of opportunity ensuring that all proponents have a fair and equal grace period in which to make up any shortfalls. R.C. 3519.16(F). This deadline advances the state's interest in providing sufficient time for the Secretary of State to verify signatures, and for that verification to occur in an orderly and fair fashion. *See American Party of Texas v. White*, 415 U.S. 767, 787, fn 18 (1974) ("We agree with the District Court that some cut off period is necessary for the Secretary of State to verify the validity of signatures on the petitions, to print the ballots, and, if necessary, to litigate any challenges.").

In sum, the challenged provisions are supported by numerous, substantial regulatory interests that outweigh any burden resulting from COVID-19 to the Plaintiffs. Accordingly, they are unlikely to succeed on the merits of their claim.

### B. Plaintiffs Cannot Establish That They Will Suffer Irreparable Harm Without the Injunction.

#### 1. Plaintiffs fail to show that the alleged irreparable injury is actual and imminent.

Even if Plaintiffs can establish that they have a likelihood of success on the merits of their constitutional claims, which they do not, they cannot show that without the injunction they will suffer actual and imminent irreparable injury. To establish irreparable harm, the Plaintiffs must show that, unless their motion is granted, they will suffer actual and imminent harm rather than

harm that is speculative or unsubstantiated. *Abney v. Amgen, Inc.,* 443 F.3d 540, 552 (6th Cir. 2006). The Court's role on a motion for preliminary injunction is to assess not whether a particular outcome or harm is possible or certain, but whether "irreparable injury is *likely* in the absence of an injunction." *Winter v. NRDC, Inc.,* 555 U.S. 7, 22 (2008). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (per curiam). A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. *Los Angeles v. Lyons*, 461 U.S. 95 (1983).

Plaintiffs' right to gather signatures for their initiatives was never restricted by any State order or action. Nonetheless, medical care facilities have resumed non-essential surgeries, all manufacturing, distribution and construction businesses are open, people have returned to work in general office environments, and retail establishments and facilities have opened their doors. *Id.* Moving forward, Plaintiffs' claimed injury resulting from their inaccessibility to individuals at now re-opened locations such "businesses and other establishments of public accommodation such as restaurants, bars, libraries, [and] office buildings" has been mitigated. *See* OFRW Compl. at ¶ 39; Thompson Compl. at ¶ 54 ("Petition circulators rely heavily on the human traffic that occurs inside and outside businesses and places of public accommodation, such as office buildings, college campuses, parks, theaters, shopping malls, libraries and commons to collect signatures."); OSFE Compl. at ¶ 55 (same). Any argument to the contrary is pure conjecture. That Plaintiffs' petition circulators are refraining, or were refraining, from signature gathering because they fear exposure to COVID-19 does not change the analysis. Plaintiffs and their petition circulators are, and have been free to engage in their free speech activities and, moving forward, they will have

even more opportunities if they choose to do so. *See* OSFE Compl. at ¶¶ 56-62; OFRW Compl. at ¶¶ 40-45; Thompson Compl. at ¶ 56. Their choice not to do so, and their assumptions that those effort would be fruitless, does not entitle them to an injunction from this Court.

Further, Plaintiffs' claims that their ballot initiatives would likely have enough support to make it on the November 3, 2020 is purely speculative. As Judge Young ruled when OSFE and OFRW were before that court, "[t]he only harm alleged in this action is speculative and theoretical. Plaintiffs and Intervenors do not yet know if they will have the required number of signatures by the deadline and otherwise meet the constitutional requirements. There is also no way to know if they would have been able to collect the necessary signatures regardless of the stay at home order. At this time, there is a possibility of harm, but nothing more." *See* Decision & Entry, FN 6 at 9. As to the Thompson Plaintiffs, their signature burden is extremely low, and they offer no evidence that they have even attempted to obtain the required signatures. *See* Stipulation by All Parties, Doc. 35, PageID # 468 at ¶¶ 5-9. Indeed, their alleged injury likely came from their mistaken belief that the COVID-19 orders prohibited them from gathering signatures.

As to OSFE and OFRW, they have thrown up their hands and turned to this Court with no evidence of an actual or imminent *redressable* injury. And, as has already been held, OSFE and OFRW's monetary investment in support of their petition efforts is not irreparable harm to justify a preliminary injunction. *See* Judge Young, Decision & Entry, FN 6 at 9 ("However, the monetary investments made in the petition process do not constitute irreparable harm sufficient to justify a preliminary injunction.") *Finally*, even if the Plaintiffs do not make it to the November 3, 2020 election, they have not shown why they cannot continue to seek access to ballots after this November. As the Ohio Supreme Court already recognized when it denied OSFE's request for more time to circulate the exact same petition at issue in this matter, "there is no urgency for the

proposed amendment to appear on the next general-election a ballot." *Ohioans for Secure and Fair Elections v. LaRose,* 2020-Ohio-1459, ¶ 21, citing. *State ex rel. Ohio Liberty Council v. Brunner,* 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 30. *See D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327 (6th Cir.2019) ("If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit."). The deadline for filing a petition for the November 2020 Presidential General Election is not until July 1, 2020—roughly 45 days from now. Grandjean Aff., ¶ 19. But Petitioners are not beholden to that deadline—they can file their petition in advance of another future general election. And, they do not have a constitutional right to automatic access to the ballot of their choosing. Because the November 3, 2020 election is not Plaintiffs' only chance at ballot access, and because the deadlines are not imminent, Plaintiffs' alleged injuries are neither imminent nor irreparable.

C.    **The Balance of Harms Weighs Heavily Against Plaintiffs Because Their Requested Relief is Inappropriate as a Matter of Law and Because it Would Harm the Public Interest.**

The Plaintiffs invite this Court to travel down one of two treacherous paths. Either enjoin completely Ohio's scheme for ensuring that only proposed initiatives that enjoy a *modicum* of voter support appear on the November 3, 2020 general election ballots, as evidenced by true, verifiable, quantifiable, and geographically relevant voter signatures; *or* dismantle it and replace it with Plaintiffs' preferred deadlines and an entirely new and completely unknown plan for submission of electronic signatures for the upcoming election. *See* Thompson Compl., Doc. 1, PageID # 18 at ¶ 79; OSFE Compl., Doc. 14, PageID # 121-124; OFRW Compl., Doc. 17-1, PageID # 234. The former will allow unfettered and automatic access to the general election ballot for innumerable petitions. As a result, Ohio's ballot will be cluttered with proposed initiated statutes, ordinances and constitutional amendments that do not have so much as the minimum level of support otherwise required by law. The latter will throw the signature gathering process into

27

disarray and confusion just a few short months before the election. Both are unworkable *and* inappropriate as a matter of law.

"Simply put, federal courts have no authority to dictate to the States precisely how they should conduct their elections." *Esshaki v. Whitmer,* 2020 U.S. App. LEXIS 14376, *4 (6th Cir. May 5, 2020). In *Esshaki,* political candidates for state and national elected offices challenged two Michigan laws that require a certain amount of signatures in support of a candidate's petition before the candidate is placed on the ballot. They claimed that Michigan's COVID-19 stay-at-home order prevented them from collecting the signatures and that enforcement of those laws, under the circumstances presented by the COVID-19 pandemic, was an unconstitutional infringement of their First Amendment rights. Michigan's COVID-19 orders, unlike Ohio's, *do not* exempt First Amendment protected speech from their definition of "prohibited activities." *See* Michigan Executive Order 2020-21 *available at* https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-522626--,00.html. In any event, the Michigan district court "enjoined the State from enforcing the ballot-access provisions at issue unless the State provides some reasonable accommodations to aggrieved candidates." *Esshaki* at *4. The district court, then, through a "plenary re-writing of the State's ballot-access provisions… (1) reduced the number of signatures required by 50%; (2) extended the deadline for filing the signatures to May 8; and (3) ordered the State to permit the collection of signatures through the use of electronic mail." *Id.*

In a ruling last week, the Sixth Circuit upheld the core injunction but vacated the district court's re-writing of Michigan's ballot access provisions. *Id.* at *4-5. The Court stated "[t]his compulsory aspect of the preliminary injunction was not justified…This is the States' constitutionally protected right." *Id.* The Court also found that, "the State is likely to succeed on the merits and will be irreparably harmed if forced to comply with this re-writing of its ballot-

access provisions, that neither the plaintiffs nor others similarly situated will be harmed by staying this portion of the injunction given that the prohibition in the injunction remains, and that the public interest is furthered by protecting the State's constitutionally guaranteed authority and preventing a federal court from usurping a State's legislative authority by re-writing its statutes." *Id*. at *5. Finally, the Court ruled that, "the federal court cannot impose such specific manner-of-election requirements on a State without breaching the express delegation of authority in the Constitution." Id. at *6. Here, the Plaintiffs urge this Court to do what the *Esshaki* Court swiftly struck down just last week. This Court does not have the authority to upend Ohio constitutional amendments or impose the manner-of-election re-writes that Plaintiffs' request.

Plaintiffs' requested relief would harm the public interest. Ohio has a compelling public interest in preserving the integrity of its election processes. *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *cf. also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 194-97 (2008). "[C]aution" granting injunctions is "especially" warranted "in cases affecting a public interest where the court is asked to interfere with or suspend the operation of important public works or to control the action of another department or government." *Country Club v. Jefferson Metropolitan*, 5 Ohio App.3d 77, 80, 449 N.E.2d 460, 464 (7th Dist. 1981) (quotation omitted). Such significant impact cuts against the interest of Ohio, and the public, in orderly elections. *See Benisek*, ___U.S.___, 138 S.Ct. 1942, 1944 (2018).

Nonetheless, Plaintiffs ask this Court to issue an order that ignores all of the statutory and constitutional safeguards that ensure ballot integrity. They demand an order that either relaxes, or waives entirely, petition signature requirements, even though those requirements are enshrined in the Ohio Constitution.

They invite this Court to invent a new process which permits electronic petition signatures, in direct contravention of the Ohio Constitution's requirements that signatures be witnessed, and in ink.  Implementing a system that utilizes un-witnessed, anonymous signature gathering invites fraud.  Ohio has seen this before.  In 2004, an investigation of petitions circulated for Ralph Nader found that the process was "replete with credible, unchallenged instances of actual fraud in the circulation of petitions[]" and that the fraud was "widespread and took various forms." *Blankenship v. Blackwell*, 341 F.Supp.2d 911, 923 (S.D. Ohio 2004).  The 2004 circulators "engaged in outright fraud by using false addresses to purportedly satisfy Ohio law" and "falsely attest[ed] that petitions were circulated when they were not and . . . falsely attest[ed] to signatures. *Id*.; *see also Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008). Enjoining the signature requirements here would invite the same type of fraud found in *Blankenship*. Backsliding now serves no public interest.

Given that electronic signatures are unprecedented in Ohio, it is unsurprising that Plaintiffs offer no evidence to explain how an unwitnessed and electronically-collected signature might be authenticated.  Apparently, the Defendants, and all of Ohio's eighty-eight county boards of elections are supposed to develop, implement, and ensure uniform voter access to such a system roughly three to four months. It is hard to imagine how such an Order would *not* cause systemic confusion and disarray.

Plaintiffs do not seriously expect the State of Ohio and its boards of elections to quickly implement an electronic signature gathering process.  Thus, they request an alternative remedy which would prove equally harmful to the public interest – automatic ballot access.  They want this Court to presume that, *but for* COVID-19, the public would so overwhelmingly support their respective measures and they would have obtained the requisite number of signatures and in the

requisite geographic proportions. Never mind that Plaintiffs might be wrong, and Ohio voters might not *want* to sign their petitions, they unabashedly request this Court to put a finger on the side of the scale that benefits only them. Accordingly, Plaintiffs' request for automatic ballot access cannot be justified.

Finally, Ohio has a considerable interest in seeing that its duly-enacted laws are carried out. *See Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (Quotation omitted). Equally important is Ohio's strong public interest in enforcing its Constitution, that the *People* enacted. The harm to Ohio in enjoining its laws and Constitution are presumed, and Plaintiffs have completely failed to overcome that presumption.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)*
*Counsel of Record*
MICHAEL WALTON (0092201)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.pfeiffer@ohioattorneygeneral.gov
Michael.Walton@ohioattorneygeneral.gov

*Counsel for Defendants*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2020, the foregoing was filed with the Court.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance.  Parties may access this filing through the Court's system.

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)
Assistant Attorney General