# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**Chad Thompson, et al.,**

    **Plaintiffs,**

v.                                                                   **Case No. 20-2129**
                                                                    **Judge Sargus**

**Richard "Mike" DeWine,**
**et al.,**

    **Defendants.**

## PLAINTIFFS' RESPONSE TO DEFENDANTS'
## MOTION FOR STAY PENDING APPEAL

Plaintiffs, Chad Thompson, et al., (hereinafter "Plaintiff-Thompson") respectfully **OPPOSE** Defendants' Motion to Stay, R. 46, this Court's Opinion and Order, R. 44, granting in part and denying in part preliminary injunctive relief pending appeal.  None of the factors that are weighed in the calculus for granting stays pending appeals favor Defendants.  Their Motion accordingly should be **DENIED**.

## ARGUMENT

Under Federal Rule of Civil Procedure 62(a)(1), an award of a preliminary injunction -- unlike other forms of relief -- is not automatically stayed following judgment. This is for good reason, since an award of preliminary injunctive relief is premised not only the moving party's likelihood of success, but also on irreparable harm being threatened that party in the absence of immediate relief.  A preliminary award all by itself is testament to the facts that (1) the movant is likely to prevail on the merits and (2) immediate relief is absolutely needed.

"In determining whether to grant a stay, the Court must consider the same four factors considered in deciding a motion for preliminary injunction." *United States v. Omega Solutions, LLC*, 889 F. Supp.2d 945, 947 (E.D. Mich. 2012). Consequently, the fact that the Court has already granted the preliminary injunction necessarily means that it has already weighed the factors needed for a stay and concluded that the injunction is warranted.

"Though the factors are the same for both a preliminary injunction and a stay pending appeal, the balancing process is not identical due to the different procedural postures." *Id.* (citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991)). "A motion for stay pending appeal is made after significant factual development and after the court has fully considered the merits. As a result, a movant seeking a stay pending appeal will have a greater difficulty in demonstrating a likelihood of success on the merits." *Omega Solutions*, 889 F. Supp.2d at 947 (citation omitted). "A party seeking a stay must demonstrate that 'there is a likelihood of reversal.'" *Id.* (quoting *Griepentrog*, 945 F.2d at 153). "This high standard is justified because 'there is a reduced probability of error, at least with respect to a court's findings of fact, because the district court had the benefit of a complete record....*" Omega Solutions*, 889 F. Supp.2d at 947 (quoting *Griepentrog*, 945 F.2d at 153).

The four factors to be considered by a District Court in deciding whether to grant a stay pending appeal under Rule 62 are:

(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal;

(2) the likelihood that the moving party will be irreparably harmed absent a stay;

(3) the prospect that others will be harmed if the court grants the stay; and,

(4) the public interest in granting the stay.

*Id*. at 947-48 (citing *Griepentrog*, 945 F.3d at 153).

These are the same four factors that are considered by Courts of Appeals, *see Hilton v. Braunskill,* 481 U.S. 770, 776 (1987), including the Sixth Circuit. *See Michigan State A. Phillip Randolph Inst. v. Johnson*, 883 F.3d 656, 662 (6th Cir. 2016). Indeed, the Sixth Circuit has observed that because it applies an abuse of discretion standard to the District Court's decision to deny a stay pending appeal, "[t]he injunction will seldom be disturbed unless the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 312 (6th Cir. 1998).

This Court, of course, has already weighed the four factors to be considered in deciding whether to stay its preliminary injunction. After doing so, it granted preliminary relief. Putting aside for a moment the controlling First Amendment precedents that mandated the Court's preliminary injunction (which are discussed below), the equities in this case -- including the need for Plaintiff-Thompson to once again begin collecting signatures in a timely fashion that he can be confident is lawful -- call out for immediate compliance with this Court's Order.

This Court already explained in its Opinion and Order, R.44, at PAGEID # 671, that Defendants are not experiencing irreparable harm and would not be caused meaningful harm by the injunction. Rather than Defendants experiencing irreparable harm, it is Plaintiff-Thompson who is experiencing and will experience irreparable harm should relief be denied or delayed: "'[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed.' 'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (Citations omitted).

3

In terms of the public interest and potential harm to others (and Defendants), this Court addressed both:

> The Court also finds that any burden to Defendants will be outweighed by the burden on Plaintiffs and the public of attempting to comply with the signature requirements as enforced against them in these current circumstances. There is no risk that "Ohio's ballot will be cluttered" with unsupported initiatives because the numerical and geographical requirement will not be affected by the Court's ruling. Additionally, this Court's decision is limited to these Plaintiffs, in these particular circumstances, for the November 3, 2020 general election only. This order does not apply to other individuals or ballot issues not before this Court.

Opinion and Order, R.44, at PAGEID # 673.

As for Defendants' likelihood of success (based on their legal arguments), it is vanishingly small. There is little likelihood that the Sixth Circuit will reverse itself (and the Supreme Court) and rule that the First Amendment does not apply to the mechanics of the initiative process. Contrary to Defendants' legal theory, both the Supreme Court and the Sixth Circuit have repeatedly ruled that the First Amendment applies to the qualifying processes, including signature collection requirements, surrounding popular measures like initiatives. *See Meyer v. Grant*, 486 U.S. 414, 421-22 (1988); *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 186 (1999); *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 296-97 (6th Cir. 1993); *Committee to Impose Term Limits on the Ohio Supreme Court and to Preclude Special Legal Status for Members of and Employees of the Ohio General Assembly v. Ohio Ballot Board*, 885 F. 3d 443, 446 (6th Cir. 2018); *Schmitt v. Husted*, 933 F.3d 628 (6th Cir. 2019), *cert. pending*, No. 19-974 (U.S., Feb. 4, 2020).

There is little likelihood that the Sixth Circuit will overturn years of Supreme Court and Sixth Circuit precedent and rule that State Constitutions, like Ohio's, are immune from the Constitution and First Amendment scrutiny. "When there is an unavoidable conflict between the Federal and a State Constitution, the Supremacy Clause of course controls." *Reynolds v. Sims*,

4

377 U.S. 533, 584 (1964).  *See also Lucas v. Michigan*, 420 F.2d 259, 263 (6th Cir. 1970) ("We hold that the last sentence of Article 1, § 11 of the Michigan Constitution of 1963 is in conflict with the Fourth Amendment") (citing *Reynolds*).

There is little likelihood that the Sixth Circuit will disavow its holding in *Esshaki v. Whitmer*, 2020 WL 1910154 (E.D. Mich., Apr. 20, 2020), *aff'd in part*, 2020 WL 2185553 (6th Cir., May 5, 2020) -- a decision rendered just two weeks ago -- that the pandemic and strict enforcement of election laws join together to place severe burdens on circulators' First Amendment rights. *Esshaki* affirmed the District Court's negative injunction prohibiting enforcement of Michigan's signature collection requirements and deadlines. It remanded the matter only because it believed that affirmative relief should begin with the State.  It accordingly instructed the District Court to afford the State an opportunity "to select its own adjustments so as to reduce the burden on ballot access, narrow the restrictions to align with its interest, and thereby render the application of the ballot access provisions constitutional under the circumstances." *Id*. at *2.

This is exactly what the Court did here.  It negatively enjoined "enforcement of the ink signature requirement in Ohio Revised Code § 3501.38(B) and witness requirement in Ohio Revised Code § 3501.38(E) as applied to the Thompson Plaintiffs for the November 3, 2020 general election." Opinion and Order, R. 44, at PAGEID# 675. It negatively enjoined "enforcement of the deadline in Ohio Revised Code § 731.28 as to Thompson Plaintiffs for the November 3, 2020 general election." *Id*. Then, in terms of affirmative relief, it ordered Defendants to confer with Plaintiff-Thompson (as well as the Intervenor-Plaintiffs) and "direct[ed] Defendants to update the Court by 12:00 pm on Tuesday, May 26, 2020 regarding

5

adjustments to the enjoined requirements 'so as to reduce the burden on ballot access.'" *Id*. (citation omitted).  It did what *Esshaki* approved.

The Court's preliminary injunction reflects a reasoned and measured response to a catastrophic pandemic infecting Ohio and the United States. It takes steps that are absolutely necessary to preserving the public health while insuring that Ohio's political processes operate unabated.  The relief the Court ordered is limited and narrowly tailored to address Ohio's health threat while leaving Ohio's numerical signature requirements intact. The Court's preliminary injunction is consistent with those issued by Courts and Governors across the United States. Because time is of the essence and Defendants lack meaningful support for their appeal, the Court's preliminary injunction should not be delayed.

## CONCLUSION

Defendants have little on which to base an appeal, let alone enough to demonstrate there is a "likelihood of reversal." *Omega Solutions,* 889 F. Supp. 2d at 947 (quoting *Griepentrog,* 945 F.2d at 153).  Defendants' Motion should be **DENIED**.

Respectfully submitted,

*/s/ Mark R. Brown*

Oliver B. Hall
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, D.C. 20009
(202) 248-9294
oliverhall@competitivedemocracy.org

Mark R. Brown
303 East Broad Street
Columbus, OH 43215
(614) 236-6590
(614) 236-6956 (fax)
mbrown@law.capital.edu

*Attorneys for Plaintiffs*