IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CHAD THOMPSON, et al.,** | |
| *Plaintiffs*, | Case No. 20 CV 02129 |
| and | |
| **OHIOANS FOR SECURE AND FAIR ELECTIONS, et al.,** | Judge Edmund A. Sargus Jr. |
| *Plaintiff-Intervenors*, | Magistrate Judge Chelsey M. Vascura |
| v. | |
| **RICHARD DEWINE, ET AL.,** | |
| *Defendants*. | |

**OPPOSITION OF INTERVENING PLAINTIFFS OHIOANS FOR SECURE AND FAIR ELECTIONS ET AL. TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

Intervenors Ohioans for Secure and Fair Elections, Darlene L. English, Laura A. Gold, Hasan Kwame Jeffries, Isabel C. Robertson, Ebony Speakes-Hall, Paul Moke, Andre Washington, Scott A. Campbell, and Susan G. Ziegler (together, "OSFE") submit the following Opposition Memorandum to Defendants' Motion for a Stay Pending Appeal.

## INTRODUCTION

None of the factors used by courts in granting stay favor Defendants. The only immediate action required of Defendants as to OSFE, is to meet and confer with Intervenors on

1

"technical or security issues to the on-line signature collection plans," and report back to the Court. Having already agreed to engage in such discussion, Defendants cannot possibly claim that by having this discussion they would be irreparably harmed. Any other immediate actions to be taken pursuant to the Court's order would be those voluntarily taken by OSFE, including retaining the online vendor, setting up the online signature collection system, and beginning online signature gathering. It is imperative that OSFE be free to begin this process now given the approaching deadline for signature competition in the Court's order. Accordingly, the balance of equities weighs heavily in favor of denying the stay. *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017). This Court should, therefore, deny Defendants' Motion for Stay Pending Appeal.

## ARGUMENT

### I.  STANDARD OF REVIEW

"On a motion to stay pending appeal, district courts balance the following factors: (1) the likelihood that the party seeking the stay will prevail on appeal; (2) whether denial of a stay would irreparably harm the moving party; (3) whether the stay will harm others; and (4) the public interest in granting the stay."[1] *Capital One Bank (USA) N.A. v. Jones*, 710 F. Supp. 2d 634, 636 (N.D. Ohio 2010); *see Nken v. Holder*, 556 U.S. 418, 434 (2009). These "interrelated" factors "must be balanced together," *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991), and "[t]he party requesting a stay bears the

---

[1] These factors are the same as the factors for the issuance of a preliminary injunction and this Court has ruled that they weigh in favor of Plaintiffs and Intervenors. *See generally* ECF 44; *see also Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (" the factors to be considered are the same for both a preliminary injunction and a stay pending appeal").

burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Nken*, 556 U.S. at 433–34.  Because a stay "is an 'intrusion into the ordinary processes of administration and judicial review,'" it is never issued as a matter of right, even if irreparable injury may result.  *Id.* at 427 (citations omitted).

> A. **DEFENDANTS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL**

Despite Defendants' repeated invocations that Plaintiffs and Intervenors do not have a First Amendment Right to initiative petition, the Sixth Circuit binding precedent is clear: "that although the Constitution does not require a state to create an initiative procedure, if it creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution[.]" *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993).  As found by this Court, the Sixth Circuit has repeatedly used the *Anderson-Burdick* test to determine whether the First Amendment right to initiative petition has been violated.  *See generally* ECF 44; *see also Schmitt v. LaRose*, 933 F.3d 628, 644 (6th Cir. 2019); *Comm. to Impose Term Limits on Ohio Sup. Ct. & to Preclude Special Legal Status for Members & Emps. of Ohio Gen. Assembly v. Ohio Ballot Bd.*, 885 F.3d 443, 448 (6th Cir. 2018).  Given this clear precedent Defendants cannot meet their burden of demonstrating "at a minimum, 'serious questions going to the merits.'" *A. Philip Randolph Inst. v. Husted*, 907 F.3d 913, 919 (6th Cir. 2018) (quoting *Michigan Coal. of Radioactive Material Users, Inc.*, 945 F.2d at 153–54).

Under the *Anderson-Burdick* framework, "[w]hen a state promulgates a regulation which imposes a 'severe' burden on individuals' rights, that regulation will only be upheld if it is 'narrowly drawn to advance a state interest of compelling importance'" *Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2020 WL 1910154, at *4 (E.D. Mich. Apr. 20, 2020).  "The analysis requiring that a state law be narrowly tailored to accomplish a compelling state interest is known

3

as the "strict scrutiny" test." *Id.* "The hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Schmitt*, 933 F.3d at 639 (quoting *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016).)[2] In *Esshaki*, the only case in the Sixth Circuit to address ballot access rights during the coronavirus pandemic, the district court held "that the unprecedented—though understandably necessary—restrictions imposed on daily life by the Stay-at-Home Order, when combined with the ballot access requirements of Sections 168.133 and 168.544f, have created a severe burden on Plaintiff's exercise of his free speech and free association rights under the First Amendment[.]" 2020 WL 1910154, at *6. Other courts have also found that under these circumstances, plaintiffs face a severe burden. *Goldstein v. Sec'y of Commonwealth*, 484 Mass. 516, 526 (2020) (holding that the minimum signature requirement, though modest in "ordinary times," is "severe burden" in light of the pandemic); *see also Libertarian Party of Ill. v. Pritzker*, No. 20-CV-2112, 2020 WL 1951687, at *4 (N.D. Ill. Apr. 23, 2020) (finding that the ballot access requirements are a "nearly insurmountable hurdle" in light of the pandemic). Defendants do not attempt to argue in their moving papers that they can survive strict scrutiny, but as the Court found its order, the current ballot regime is not narrowly tailored to meet a compelling state interest in light of the coronavirus. ECF 44 at 28–31.

**B.     Defendants Will Suffer No Irreparable Harm if a Stay is Denied**

Defendants utterly fail to demonstrate that they will suffer any injury, much less any irreparable injury, if there is no stay. In order to meet their burden Defendants must support their application with "some evidence" that the harm is "certain and immediate rather than speculative

---

[2] In *Schmitt v. LaRose*, the Sixth Circuit did not apply strict scrutiny because it found that "Plaintiffs demand and the mandamus review provided by the Ohio Supreme Court, " was not it "significant enough to result in 'virtual exclusion' from the ballot." *Schmitt v. LaRose*, 933 F.3d 628, 640 (6th Cir. 2019). Because, in that instance, the citizens "are able to seek timely redress" the restriction was not "severe." *Id.*

4

or theoretical." *Michigan Coal. of Radioactive Material Users, Inc.*, 945 F.2d at 154. The lack of irreparable injury is fatal to their motion for a stay. As the Supreme Court has held, "[a]n applicant's likelihood of success on the merits need not be considered . . . if the applicant fails to show irreparable injury from the denial of the stay." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1317 (1983); *see also Nken v. Holder*, 556 U.S. 418, 438–39 (2009) (citing *Ruckelshaus*).

Other than to meet and confer and "submit findings" on the meeting to the Court, the relief ordered by this Court does not require the Defendants to do anything to accommodate intervenor OSFE until July 31, 2020, on which date the Secretary is required to accept any electronically-gathered signatures that OSFE may submit to him. Defendants' emergency appeal will have been resolved by that point, well before any operative deadline. Not having been ordered to do or refrain from doing anything at all during the pendency of their emergency appeal, Defendants simply have no need for a stay.

Even once July 31, 2020 arrives, Defendants have failed to meet their burden of demonstrating that the acceptance of electronic signatures on that date would result in harm. Given recent statements by the Secretary in favor of moving Ohio's absentee ballot system to an electronic process, it is hard to fathom how OSFE's collection and processing of electronic petitions with the last four digits of social security numbers could result in harm to Defendants. *See* Darrel Rowland & Rick Rouan, *After a Problem-Plagued Primary, Ohio Leaders Disagree About November Plan*, Columbus Dispatch (April 28, 2020, 7:50 PM), https://www.dispatch.com/news/20200428/after-problem-plagued-primary-ohio-leaders-disagree-about-november-election-plan ("'It just does not meet expectations in the year 2020 to require people to print a form and to put a wet ink signature on a dead tree piece of paper to fold it up, root through their junk drawer to find a stamp and mail it to their board of elections,' he

5

said. 'That is from the last century and needs to be replaced with a modern, online absentee request system.'"  OSFE agrees.).

        **C.**        **OSFE Will Suffer Irreparable Harm if a Stay is Issued**

The harm to a nonmoving party need not be irreparable—merely "substantial"—to defeat a motion to stay.  *See, e.g.*, *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cty. v. Momenta Pharm., Inc.*, No. 3:15-CV-01100, 2019 WL 5305506, at *3 (M.D. Tenn. Oct. 21, 2019) (threshold met by delay of a remedy to plaintiffs).

With or without a stay, the coronavirus will still be present across the state: OSFE will remain unable to circulate petitions via personal encounters.

While, likewise, with or without a stay, OSFE would *be theoretically* free to circulate electronic petitions, if the Court's order is stayed, it would chill OSFE's efforts to engage the public over its campaign, because the stay would engender doubt as to whether electronic petitions would, when all is said and done, be accepted by the Secretary of State.  Thus, a stay would chill OSFE's conversations with potential supporters.  "When constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am.v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (citing *ACLU of Ky. v. McCreary Cty., Ky.,* 354 F.3d 438, 445 (6th Cir.2003)).  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)).  The imposition of a stay would therefore also set back the collection of signatures which, if and when defendants' appeal is denied, would be needed to place OSFE's initiative on the ballot.  Reducing the number of precious days remaining for signature collection would be an irreparable, to say nothing of substantial, harm to OSFE, because it could operate to prevent OSFE them from accessing the ballot.

### D. A Stay Would be Contrary to the Public Interest

The balance of equities weigh in favor denying a stay. "Before issuing a stay, '[i]t is ultimately necessary . . . to balance the equities—to explore the relative harms to applicant and respondent, as well as the interests of the public at large.'" *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (alterations in original). "It is always in the public interest to prevent the violation of a party's constitutional rights." *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014) (quotation omitted). "[E]lection laws [that] burden the First Amendment rights" should be enjoined. *Eu v. S.F. Cty. Democratic Central Comm.*, 489 U.S. 214, 233 (1989). Staying the injunction will harm the voters at large, as a stay, costing OSFE valuable time in beginning the signature gathering process. Time is of the essence and a loss of time will result in a severe burden on OSFE's ballot access right. OSFE has proposed a set of remedies that could be ordered that would not cost the state or the public any additional funds, and would ensure the preservation of OSFE's constitutional rights.

### CONCLUSION

For the foregoing reasons, OSFE respectfully requests that this Court deny Defendants' Motion for a Stay Pending Appeal.

May 21, 2020

        Respectfully submitted,

        /s/ *Freda J. Levenson*
        Freda J. Levenson (0045916)
        *Trial Counsel*
        Elizabeth Bonham (0093733)
        ACLU of Ohio Foundation
        4506 Chester Avenue
        Cleveland, Ohio 44103
        (216) 472-2220
        flevenson@acluohio.org
        ebonham@acluohio.org

David J. Carey (0088787)
ACLU of Ohio Foundation
1108 City Park Avenue, Suite 203
Columbus, Ohio 43206
(614) 586-1972
dcarey@acluohio.org

T. Alora Thomas-Lundborg*
Dale Ho*
American Civil Liberties Union
125 Broad Street
New York, NY 10004
Tel: 212-519-7866
Tel: 212-549-2693
athomas@aclu.org
dale.ho@aclu.org
**Pro Hac Vice* Forthcoming*

*Attorneys for Intervening Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2020, I filed a copy of the foregoing Response using the Court's Electronic Filing System, and that counsel for all parties received electronic notice through that system.

/s/ *Freda J. Levenson*
Freda J. Levenson