**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CHAD THOMPSON, et al.,**

      **Plaintiffs,**

            **v.**

**GOVERNOR OF OHIO
MICHAEL DEWINE, et al.,**

      **Defendants.**

          **CASE No. 2:20-CV-2129**
          **JUDGE EDMUND A. SARGUS, JR.**
          **Magistrate Judge Chelsea M. Vascura**

## OPINION AND ORDER

Three days ago, this Court enjoined Defendants from enforcing certain constitutional and statutory in-person signature gathering requirements. (ECF No. 44.) Defendants have appealed that decision and have requested that this Court stay its order pending appeal and to issue its decision on their request by Monday, May 25, 2020, Memorial Day. (ECF No. 46.) Plaintiffs have opposed Defendants' request. (ECF Nos. 47, 48, 49.) For the reasons set forth below, the Court **DENIES** Defendants' Motion.

### I.

Ohio has experienced a public health crisis that continues to this day. On March 9, Defendant Ohio Governor Mike DeWine declared a state of emergency in response to the spread of the COVID-19 virus. Days later on March 11, 2020, the World Health Organization declared the disease a global pandemic, and President Donald Trump declared a national emergency on

March 13, 2020. Until very recently,[1] Ohioans had been ordered to stay home, with limited exceptions, since March 22, 2020, and to maintain social distancing staying at least six feet apart from each other.

Ohio held an election in 1864 during the Civil War. Because of the pandemic, Defendants cancelled Ohio's in-person primary election. This is so even though Defendants recognized that they lacked explicit constitutional or statutory authority to do so and after the Franklin County Court of Common Pleas rejected their request for a court order to that effect.[2] Defendants Governor DeWine and Secretary of State LaRose announced in a joint statement why it was unsafe to hold in-person voting:

> The only thing more important than a free and fair election is the health and safety of Ohioans. The Ohio Department of Health and the CDC have advised against anyone gathering in groups larger than 50 people, which will occur if the election goes forward. Additionally, Ohioans over 65 and those with certain health conditions have been advised to limit their nonessential contact with others, affecting their ability to vote or serve as poll workers. Logistically, under these extraordinary circumstances, it simply isn't possible to hold an election tomorrow that will be considered legitimate by Ohioans. They mustn't be forced to choose between their health and exercising their constitutional rights.

---

[1] On May 20, 2020, the Ohio Department of Health issued a new order replacing the previous "Stay Safe Ohio Order" that now strongly urges Ohioans, especially those who are high-risk, to stay at home as much as possible. Mass gatherings of more than 10 people are still prohibited. *See* Urgent Health Advisory Ohioans Protecting Ohioans, Ohio Department of Health (May 20, 2020), https://content.govdelivery.com/attachments/OHOOD/2020/05/20/file_attachments/1456370/Urgent%20Health%20Advisory.pdf.

[2] *See* Nick Corasaniti and Stephanie Saul, "Ohio's Governor Postpones Primary as Health Emergency is Declared Over Virus," NY Times (Mar. 16, 2020), https://www.nytimes.com/2020/03/16/us/politics/virus-primary-2020-ohio.html ("By Monday afternoon, Mr. DeWine said he wanted the primary pushed back but did not have the authority to unilaterally delay the election and that a lawsuit would be filed to move the vote. On Monday evening, Judge Frye rejected the request. Dan Tierney, a spokesman for the governor, said Mr. LaRose would seek through the courts to have another date set for in-person voting in Ohio.")

*See* "Joint Statement from Governor DeWine and Secretary LaRose on Ohio Primary," Mike DeWine Governor of Ohio (Mar. 16, 2020), https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/joint-statement-governor-dewine-secretary-larose-on-ohio-primary.[3]

The hallmark a republican form of government is undoubtedly the conducting of elections. Defendant Ohio Department of Health Director Dr. Amy Acton closed all polling locations[4] and Defendant LaRose suspended in-person voting.[5] With few exceptions, all voting was conducted by absentee ballots until April 28, 2020. Defendant LaRose himself has recognized the unusual circumstances facing Ohio voters, stating: "In a usual year, I would not want to make large changes this late in the game, but this is not a usual year. These are unusual times. We have to respond to the unique situation we find ourselves in with these changes."[6]

One would know none of this from the Motion to Stay. Defendants now change course. arguing that their interest in following the constitutional and statutory signature requirements

---

[3] *See also* "Statement from Ohio Governor Mike DeWine on the March 17, 2020 Election," Mike DeWine Governor of Ohio (Mar. 16, 2020), https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/dewine-statement-on-march-17-2020-election ("During this time when we face an unprecedented public health crisis, to conduct an election tomorrow would would force poll workers and voters to place themselves at a unacceptable health risk of contracting coronavirus. As such, Health Director Dr. Amy Acton will order the polls closed as a health emergency. While the polls will be closed tomorrow, Secretary of State Frank LaRose will seek a remedy through the courts to extend voting options so that every voter who wants to vote will be granted that opportunity.").

[4] *See* Ohio Department of Health Issues Order on Closure of Polling Location, Mike DeWine Governor of Ohio (Mar. 16, 2020), https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/order-on-closure-of-polling-locations ("To conduct an election at this time would force poll workers and voters to face an unacceptable risk of contracting COVID-19.").

[5] *See* Secretary of State Directive 2020-06, Frank LaRose Ohio Secretary of State (Mar. 16, 2020), https://www.ohiosos.gov/globalassets/elections/directives/2020/dir2020-06am.pdf (rescinded).

[6] *See* Rick Rouan, "Secretary of State Frank LaRose outlines changes needed for general election," The Columbus Dispatch (May 5, 2020), https://www.dispatch.com/news/20200505/secretary-of-state-frank-larose-outlines-changes-needed-for-general-election."

requiring close, face-to-face interactions, *must* be followed.  In other words, the only thing more important than the health and safety of Ohioans is holding what, in their view, constitutes a free and fair election.  This Court does not believe that these interests are mutually exclusive—*both may be accomplished* under the law of the Sixth Circuit.

As stated in its May 19, 2020 Opinion and Order, this Court does not question or criticize Defendants' response to the COVID-19 crisis or the decision to suspend in-person voting and extend the voting period. The Court emphasizes these facts to show Defendants understand the gravity of requiring Ohioans to choose between their health and their First Amendment rights. Yet Defendants inexplicably refuse to acknowledge those very same risks are present here.

In requesting a stay of this Court's Order, Defendants ignore the analysis of the applicable law and Sixth Circuit precedent. This Court is bound by the Sixth Circuit, which has disavowed a state's strict application of election regulations "without exception for or consideration of the COVID-19 pandemic or the Stay-at-Home Orders." *See Esshaki v. Whitmer*, No. 20-1336, 2020 WL 2185553, at *1 (6th Cir. May 5, 2020). Just two weeks ago, the Sixth Circuit held that these are unique historical circumstances, and that the combination of Michigan's "strict enforcement of the ballot-access provisions and the Stay-at-Home Orders imposed a serve burden on the plaintiffs' ballot access" and that those provisions were not "narrowly tailored *to the present circumstances*." *Id*. (emphasis in original).

Defendants also assert that this Court "rewrote" the Ohio Constitution and exceeded its authority in ordering relief for Plaintiffs. But this Court did no such thing.

This Court did not—as requested by Plaintiffs—modify the constitutional and statutory requirements that petitions contain a specific number of signatures from Ohio voters. The core of this constitutional amendment provision is the requirement that petitions contain signatures equal

to 10% of voters from 44 of Ohio's 88 counties to ensure enough Ohio voters support the measure before it is placed on the ballot. That has not changed. This Court agreed with Defendants that 440,000 valid signatures must still be submitted before the issue may be placed on the November 2020 ballot. This Court crafted a narrow remedy of a federal constitutional violation, while preserving the core of Ohio's provisions. *See McCarthy v. Briscoe*, 429 U.S. 1317 (1976) ("[F]ar from 'impos[ing] [its] own idea of democracy' on the State, [this Court] crafted this remedy to allow' a majority of the provisions to survive.").

As this Court previously said in upholding in Ohio's absentee voting scheme for the April 28, 2020 primary, the United States "Constitution does not require the best plan, just a lawful one." *League of Women Voters of Ohio, et al. v. LaRose*, No. 2:20-cv-1638 (S.D. Ohio. Apr. 3, 2020) (Watson, J.). Here, Defendants have offered no plan at all. Instead, they propose business as usual in a pandemic and allow violations of First Amendment rights of Ohio citizens to be ignored. Defendants' own actions demonstrate that otherwise neutral election laws are ill-suited to a pandemic and may offend First Amendment rights.

## II.

In evaluating a motion to stay pending appeal, courts consider four factors that are traditionally considered when determining whether to grant a preliminary injunction: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006) (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir.2002) (per curiam)). These four

factors are not prerequisites, but are "interconnected considerations that must be balanced together. *Id*. (citing *Mich. Coal. of Radioactive Material Users, Inc.*, 945 F.2d at 153).

### III.

Defendants put forth many of the same arguments that were unsuccessful at the preliminary injunction stage. Defendants offer no new evidence or arguments that would persuade the Court to reconsider its decision, and their Motion completely ignores much of the Court's analysis of Plaintiffs' claims. Defendants have not shown they will suffer irreparable harm absent a stay. Plaintiffs, on the other hand, will. This Court found Plaintiffs were likely to succeed on the merits of their First Amendment claims, and every day that passes without a mechanism for them to safely collect signatures for their initiatives is another day they are harmed. Finally, the Court finds that a stay is not in the public interest, as it is always in the public interest to remedy constitutional violations. The balance of these factors weigh against granting a stay.

### A.     Likelihood of Success on the Merits

Defendants once again contend Plaintiffs' claims do not implicate the First Amendment. (Mot. to Stay at 2, ECF No. 46.) Defendants rely in part on courts of appeals decisions from outside of this circuit, and completely ignore the Sixth Circuit's holdings in *Schmitt v. LaRose*, 933 F.3d 628 (6th Cir. 2019), *reh'g en banc denied* (6th Cir. Sept. 4, 2019), *cert. pending*, No. 19-974 (filed Feb. 3, 2020) and *Committee to Impose Term Limits v. Ohio Ballot Board*, 885 F.3d 443 (6th Cir. 2018), which bind this Court and applied the *Anderson-Burdick* framework to statutes regulating Ohio's initiative process.

Defendants argue that "[t]his Court's order requiring the Defendants to accept the Plaintiffs' 'Plan B' for signature gathering offends the Ohio Constitution and is not required under the First Amendment." (Mot. at 3, ECF No. 46.) According to Defendants, "the Ohio Constitution

does not provide for contingencies or alternative plans for parties who cannot comply with its provisions." (*Id.*) This statement is true, but simply underscores that, other than an injunction, there is no remedy or cure for these constitutional deprivations in these unique circumstances. This Court did not hold there was any such exception in the Ohio Constitution. The issue before this Court was that certain signature requirements in the Ohio Constitution, as enforced against Plaintiffs in these extraordinary circumstances, offend the First Amendment to the United States Constitution. *See Reynolds v. Sims*, 377 U.S. 533, 584 (1964) ("When there is an unavoidable conflict between the Federal and a State Constitution, the Supremacy Clause of course controls.").

Next, Defendants argue that if the First Amendment applies, then any burden on Plaintiffs is "more than justified by the State's significant regulatory interests" under the *Anderson-Burdick* framework.  (Mot. to Stay, ECF No. 46.) Defendants completely ignore this Court's analysis of the burden on Plaintiffs under *Anderson-Burdick* and its reliance on the Sixth Circuit's decisions in *Schmitt* and *Esshaki*. (*See* Op. & Order at 22-23, ECF No. 44.)

Defendants repeat that the Stay-at Home Orders "specifically exempt Plaintiffs' signature gathering" and contend again that state action did not cause Plaintiffs' injuries. (Mot. to Stay at 3-4, ECF No. 46.) Defendants do not address the Court's finding that it is Ohio's strict enforcement of the signature requirements in light of the ongoing COVID-19 pandemic that was unconstitutional, not the Stay-at-Home Orders or the virus themselves. Moreover, Defendants' arguments insinuate that Plaintiffs should have been attempting to circulate while the Stay-at-Home Orders were in effect, beginning in the middle of March and continuing until very recently. As the district court in *Esshaki* rightly noted, "this argument both defies good sense and flies in the face of all other guidance that the State was offering to citizens at the time." 2020 WL 2020 WL 1910154, at *5 (E.D. Mich. Apr. 20, 2020).

Beginning on March 22, 2020, Ohioans were ordered to stay home and maintain social distancing. Even if petition circulation was exempt from the Orders, Defendants cannot seriously suggest that Plaintiffs should have been going out in public, possibly exposing themselves and potential signers to the COVID-19 disease, at the same time when Defendants were urging Ohioans to stay home and avoid close contact. Defendants themselves have recognized the importance of not forcing Ohioans "to choose between their health and exercising their constitutional rights."

Defendants assert generally that only strict compliance of the electronic signature and witness requirements in the Ohio Constitution can ensure submitted signatures are authentic, serving the state's "substantial regulatory interests in orderly elections and in protecting the Ohio Constitution and election laws." (Mot. to Stay at 4, ECF No. 46.) But Defendants have failed to provide any evidence to this Court that OFRW Plaintiffs' detailed proposal for signatures to be electronically signed and witnessed would lead to fraudulent signatures. Defendants never addressed this plan at the preliminary injunction stage, and they fail to make any argument against it here, other than to say electronic signatures could not comply with the Ohio Constitution's witness requirement, which this Court also enjoined.

As this Court explained, OFRW Plaintiffs' proposal included a method for verifying signers' identities using the last four numbers of their social security numbers, and the warnings regarding the penalties for forging signatures and election falsification that are found on paper petitions. (*See* Op. & Order at 31, ECF No. 44.) The last four digits of voters' social security numbers were sufficient to request absentee ballots in the primary election[7] and are used to register

---

[7] *See* 2020 Primary Frequently Asked Questions, Frank LaRose Ohio Secretary of State, https://www.sos.state.oh.us/elections/voters/2020-primary-frequently-asked-questions/ (explaining voters who could not print an absentee ballot request could write certain information, including either their drivers license number, last four digits of their Social Security number, or include a copy of their ID, on a blank sheet of paper and mail it to their board of elections).

to vote.[8] Defendants have offered no reason why this information would be insufficient to validate signatures here. Moreover, the Court instructed the parties to meet and confer regarding any technical or security issues to the on-line signature collection plans and to submit their findings to the Court within seven days of its decision, giving Defendants *another* opportunity to address OFRW Plaintiffs' proposed plan. (Op. & Order at 41, ECF No. 44.)

This Court did not invent the notion of electronic signatures. As it noted, large parts of the economy use electronic signatures that can be verified and checked for fraud or errors. (*Id*. at 31.) This Court's Local Rules authorize the use of electronic signatures on filings, which Defendants availed themselves of here, and equates them to "hand-signed signatures for all purposes, including Fed. R. Civ. P. 11 or any rule or statute." *See* S.D. Ohio Civ. R. 83.5.

Other courts have ordered states to accept electronic signatures for petitions and several states have adopted electronic signatures for petitions on their own, strongly supporting the reliability of such methods. *Libertarian Party of Illinois v. Pritzker*, 2020 WL 1951687 (N.D. Ill., Apr. 23, 2020) (reducing Illinois' statutory signature requirements for all candidates to 10 percent of previous levels, extending their filing deadlines from June 22, 2020 until August 7, 2020, and enjoining Illinois's in-person, witnessed, wet and notarized signature collection process in favor of electronic signatures); *Goldstein v. Sec'y of Commonwealth*, No. SJC-12931, 2020 WL 1903931, at *6 (Mass. Apr. 17, 2020) (holding that the minimum signature requirement and the need to provide "wet signatures" "which may only impose a modest burden on candidates in ordinary times, now impose a severe burden on, or significant interference with, a candidate's right to gain access to the . . . primary ballot, and the government has not advanced a compelling

---

[8] *See* Register to Vote or Update Your Voter Registration Information, Frank LaRose Ohio Secretary of State, https://olvr.ohiosos.gov/ (last accessed May 22, 2020) ("To register online you will need to provide the following . . . Last four digits of your Social Security Number.").

interest"); *Omari Faulkner for Virginia v. Va. Dep't. of Elections*, CL 20-1456 (Va. Cir. Ct. Mar. 25, 2020) (granting preliminary injunction and reducing candidate signature gathering requirements, and allowing electronic signatures); *Michelle Ferrigno Warren v. Colorado Secretary of State Jena Griswold*, Denver County (Colo.) Dist. Ct. No. 20CV31077 (Apr. 21, 2020) (placing a candidate for U.S. Senate on the state's primary election ballot, even though she had not collected a sufficient number of signatures required by Colorado law); *Dennis v. Secretary of the Commonwealth*, Mass. Case No. SJ-2020-278 (issuing a judgment extending its April 17, 2020 decision in *Goldstein* to allow four ballot initiative campaigns to collect signatures electronically); Fla. Emergency R. 1SER20-2 (Apr. 2, 2020) (allowing electronic signatures because of COVID-19 pandemic); N.J. Exec. Order Nos. 105, 120 (Mar. 19, 2020, Apr. 8, 2020) (same); Utah Exec. Order No. 2020-8 (Mar. 26, 2020) (same).

Similarly, Defendant Secretary LaRose has publicly advocated for Ohio to adopt a digital absentee ballot request system for the November election instead of the current system that requires a paper form:

> "It just does not meet expectations in the year 2020 to require people to print a form and to put a wet ink signature on a dead tree piece of paper to fold it up, root through their junk drawer to find a stamp and mail it to their board of elections," he said. "That is from the last century and needs to be replaced with a modern, online absentee request system."

*See* Darrel Rowland & Rick Rouan, *After a Problem-Plagued Primary, Ohio Leaders Disagree About November Plan*, Columbus Dispatch (April 28, 2020), https://www.dispatch.com/news/20200428/after-problem-plagued-primary-ohio-leaders-disagree-about-november-election-plan.

It is impossible to reconcile this statement with one made yesterday in a formal filing to the United States Court of Appeals for the Sixth Circuit, where Defendants stated:

> It is common knowledge that even the most thoughtfully designed online systems are vulnerable to attack, and that petitions signed electronically and emailed or submitted online can be manipulated.

(*See* Defendants-Appellants' Combined Emergency Mot. for an Administrative Stay and a Stay Pending Appeal at 17-18, Doc. 8.)

Finally, Defendants contend the "Court's extension of these deadlines has wide ranging implications for other ballot petition requirements such as deadlines for challenges to petitions before the Ohio Supreme Court as set forth in Article II of the Ohio Constitution." (Mot. to Stay at 4, ECF No. 46.) The Court is aware of these deadlines, and noted in its decision that the Court extended the submission deadline to July 31, 2020 because it is the last date the Secretary of State is already required by law to accept signatures under the current scheme. (Op. & Order at 41, ECF No. 44.) Specifically, under current Ohio law, petitioners are permitted 10 additional days after receiving notice from the Secretary of State that their signatures are insufficient to collect and file additional signatures. *See* Ohio Const., Art II. § 1g. This year, that date would be July 31, 2020— 10 days after the Secretary of State's July 21, 2020 deadline for determining the sufficiency of the signatures. *Id.* This is the date the Court chose for OFRW and OSFE Plaintiffs to submit their signatures.

The Secretary of State must then determine the sufficiency of these supplemental signatures by August 30, 2020. Challenges to supplemental signatures must be filed in the Ohio Supreme Court by September 9, 2020. The Secretary of State must certify the form of official ballots for the November 3, 2020 general election to county boards of elections by September 14, 2020. The Ohio Supreme Court must rule on any challenge to the supplemental signatures by September 19, 2020. Defendants have offered no explanation why these deadlines for

supplemental signatures, already codified in the Ohio Constitution and statutes, would not work here.

**B.      Harm to Defendants, Harm to Others, and the Public Interest**

Defendants next contend the Court's "wrongful injunction" of Ohio's enforcement of the signature requirements "irreparably harms not only the State, but not all Ohioans." (Mot. at 5, ECF No. 5.) Defendants assert this Court has rewritten Ohio's Constitution, affecting the state itself and Ohio citizens. (*Id.*) Defendants misstate this Court's decision.

This Court did not hold that the signature requirements in Ohio's Constitution were facially invalid or order permanent relief. This Court found that those requirements were unconstitutional only as applied to these particular plaintiffs in these extraordinary and unprecedented times, and temporarily enjoined enforcement of those statutes for the November 3, 2020 election only.

Moreover, Defendants ignore that the Court did not touch the requirements that petitions contain a certain number of signatures from, for the constitutional amendment plaintiffs, a specific geographic distribution. The Court recognized the compelling importance of these requirements, particularly for Plaintiffs seeking to amend Ohio's Constitution who must collect signatures from 10 percent of Ohio voters who voted in the last gubernatorial election, 5 percent of which must come from 44 of Ohio's 88 counties. These requirements remain in full effect and will ensure that Plaintiffs' proposed measures have sufficient statewide grassroots support.

Finally, Defendants contend this Court places an "incredible burden upon the individual Defendants who have been tasked with solving the Thompson Plaintiffs' problems in one week." (*See also* Mot. at 1, ECF No. 46 ("The Secretary of State and the 88 county boards of elections must create and implement these significant and unprecedented processes before July 31, 2020, the deadline to which the petition submissions was extended.").) Defendants overstate this burden.

This Court directed Defendants to update the Court by Tuesday, May 26, 2020 "regarding adjustments to the enjoined requirements 'so as to reduce the burden on ballot access'" for Thompson Plaintiffs. (*See* Op. & Order at 40, ECF No. 46 (citing *Esshaki*, 2020 WL 2185553 at *2).) This Court did not require a plan be implemented and enacted into law by that date, and notes that Michigan agreed to and announced reasonable adjustments to its signature requirements just three days after the Sixth Circuit's decision in *Esshaki*. *See* Elections, The Office of Secretary of State Jocelyn Benson (Updated May 8, 2020), https://www.michigan.gov/sos/0,4670,7-127-1633---,00.html.

The Court's ordered relief does not require Defendants to create and implement an electronic signature plan—it directed Defendants to accept electronically signed and witnessed petitions from OSFE and OFRW Plaintiffs by July 31, 2020. Those Plaintiffs have developed electronic signature plans. Defendants offer no reason why they could not adopt the same plan for Thompson Plaintiffs. That is, Thompson Plaintiffs can be responsible for implementing an e-signature platform like OFRW and OSFE Plaintiffs.

This Court spent extended discussions with the parties on the record to ensure no factual disputes were unresolved. The Court specifically advised the parties that it would not resolve any factual disputes on briefs or affidavits. The parties were encouraged to offer testimony in the event facts were not agreed upon. All parties stated on the record that there were no disputed facts. This Court did not resolve facts before issuing its decision and will not attempt to resolve disputed facts at this point either.

Defendants have not shown they will suffer irreparable harm absent a stay, and it is not in the public interest to grant a stay. "It is always in the public interest to prevent the violation of a

party's constitutional rights." *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014) (quotation omitted).

Conversely, Plaintiffs will be harmed if a stay is granted. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)). This Court found Plaintiffs were likely to succeed on the merits of their First Amendment claims, and every day that passes that Plaintiffs are prohibited from collecting signatures is another day they are harmed. Time is of the essence.

## C.    Remedy

Finally, this Court did not exceed its authority in ordering specific relief for OSFE and OFRW Plaintiffs. If the Court did not order relief for these Plaintiffs, it would effectively be defying the Sixth Circuit's decision in *Esshaki*. This Court is aware that *Esshaki* involved a challenge by a candidate seeking access to the ballot, rather than initiative petitions. As this Court explained in its decision, that distinction is precisely why the Court did not reduce the numerical and geographical requirements. This Court recognized the compelling importance of ensuring constitutional amendments and local initiatives have more than just the "modicum of support" required for candidates.

Defendant Secretary LaRose cannot remedy these violations. The Ohio General Assembly is powerless to amend the Ohio Constitution on its own. Instead, only the people of Ohio can amend the Ohio Constitution. This case is about groups of Ohioans seeking to just do that, but who cannot exercise their First Amendment rights in support of their amendments. Defendants have offered no explanation as to how the people of Ohio could remedy the First Amendment violations

found here in time for the November election. Surely Defendants do not intend to allow these First Amendment violations to go unremedied.

## IV.

For the reasons set forth above, the Court **DENIES** Defendants' Motion to Stay.

**IT IS SO ORDERED.**

**05/22/2020**_____                    **s/ Edmund A. Sargus, Jr.**_____
**DATE**                                                **EDMUND A. SARGUS, JR.**
                                                        **UNITED STATES DISTRICT JUDGE**