**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540

Deborah S. Hunt                POTTER STEWART U.S. COURTHOUSE                Tel. (513) 564-7000
Clerk                CINCINNATI, OHIO 45202-3988                www.ca6.uscourts.gov

Filed: May 26, 2020

Ms. Elizabeth Bonham
ACLU of Ohio
4506 Chester Avenue
Cleveland, OH 44103

Mr. Mark R. Brown
Capital University Law School
303 E. Broad Street
Columbus, OH 43215

Mr. David Joseph Carey
American Civil Liberties Union of Ohio Foundation
1108 City Park Avenue
Suite 203
Columbus, OH 43206

Mr. Stephen P. Carney
Office of the Attorney General of Ohio
30 E. Broad Street
25th Floor
Columbus, OH 43215

Mr. Derek S. Clinger
McTigue & Colombo
545 E. Town Street
Columbus
Columbus, OH 43215

Mr. Benjamin Michael Flowers
Office of the Attorney General
30 E. Broad Street
14th Floor
Columbus, OH 43215

Oliver B. Hall
Center for Competitive Democracy
P.O. Box 21090
2515 Cliffbourne Place, N.W.
Washington, DC 20009

Mr. Michael Jason Hendershot
Office of the Attorney General of Ohio
30 E. Broad Street
25th Floor
Columbus, OH 43215

Mr. Shams Hanif Hirji
Ohio Attorney General's Office Appeals Section
30 E. Broad Street
17th Floor
Columbus, OH 43215

Mr. Dale Edwin Ho
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004

Freda Levenson
ACLU of Ohio
4506 Chester Avenue
Cleveland, OH 44103

Mr. Donald J. McTigue
McTigue & Colombo
545 E. Town Street
Columbus
Columbus, OH 43215

Ms. Julie M. Pfeiffer
Ohio Attorney General's Office
30 E. Broad Street
16th Floor
Columbus, OH 43215

Ms. Anne M. Sferra
Bricker & Eckler
100 S. Third Street
Columbus, OH 43215

Mr. Bryan Matthew Smeenk
Bricker & Eckler
100 S. Third Street
Columbus, OH 43215

Ms. Tiffany Alora Thomas
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004

     Re: Case No. 20-3526, *Chad Thompson, et al v. Richard Dewine, et al*
       Originating Case No. : 2:20-cv-02129

Dear Counsel,

  The attached order designated for full-text publication was filed today in this case.

        Yours very truly,

        Deborah S. Hunt, Clerk

        Cathryn Lovely, Opinions Deputy

cc: Mr. Richard W. Nagel

Enclosure

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0162p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

CHAD THOMPSON; WILLIAM T. SCHMITT; DON KEENEY,

*Plaintiffs-Appellees,*

*v.*

No. 20-3526

RICHARD MICHAEL DEWINE, in his official capacity as the Governor of Ohio; AMY ACTON, in her official capacity as Director of Ohio Department of Health; FRANK LAROSE, in his official capacity as Ohio Secretary of State,

*Defendants-Appellants,*

OHIOANS FOR SECURE AND FAIR ELECTIONS; DARLENE L. ENGLISH; LAURA A. GOLD; ISABEL C. ROBERTSON; EBONY SPEAKES-HALL; PAUL MOKE; ANDRE WASHINGTON; SCOTT A. CAMPBELL; SUSAN ZEIGLER; HASAN KWAME JEFFRIES; OHIOANS FOR RAISING THE WAGE; ANTHONY CALDWELL; JAMES E. HAYES; DAVID G. LATANICK; PIERRETTE M. TALLEY,

*Intervenors-Appellees.*

———————————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:20-cv-02129—Edmund A. Sargus, Jr., District Judge.

Decided and Filed: May 26, 2020

Before: SUTTON, McKEAGUE, and NALBANDIAN, Circuit Judges.

———————————

### COUNSEL

**ON MOTION:** Benjamin M. Flowers, Michael J. Hendershot, Stephen P. Carney, Shams H. Hirji, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellants. **ON RESPONSE:** Mark R. Brown, CAPITAL UNIVERSITY LAW SCHOOL, Columbus,

Ohio, for Plaintiffs-Appellees.  Donald J. McTigue, Derek Clinger, MCTIGUE & COLOMBO LLC, Columbus, Ohio, for Intervenors-Appellees.

————————————

## ORDER

————————————

PER CURIAM.  By all accounts, Ohio's public officials have admirably managed the problems presented by the unprecedented COVID-19 pandemic.  This includes restricting Ohioans' daily lives to slow the spread of a highly infectious disease.  Nearly every other state and the federal government have done the same.  And these are the types of actions and judgments that elected officials are supposed to take and make in times of crisis.  But these restrictions have not gone unchallenged.  *See, e.g.*, *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020) (per curiam); *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913 (6th Cir. 2020).  Our Constitution, of course, governs during both good and challenging times.  Unlike those cases, however, the Plaintiffs and Intervenors here do not challenge the State's restrictions per se.  Rather, they allege that COVID-19 and the State's stay-at-home orders have made it impossibly difficult for them to meet the State's preexisting requirements for initiatives to secure a place on the November ballot—violating their First Amendment rights.  So they challenge Ohio's application of its general election and ballot-initiative laws to them.

Ohio's officials have not been unbending in their administration of the State's election laws.  Indeed, they postponed the Ohio primary election, originally scheduled during the height of the pandemic.  That exercise of judgment is not before us.  Rather, Plaintiffs challenge the Ohio officials' decision not to further modify state election law in the context of this case.  The district court agreed with Plaintiffs and granted a preliminary injunction, finding that, as applied, certain provisions of the Ohio Constitution and Ohio Code violate the First Amendment.  Defendants now ask for a stay of that injunction to preserve the status quo pending appeal.

The people of Ohio vested their sovereign legislative power in the General Assembly.  Ohio Const. art. II, § 1.  But they also retained the power to amend the State Constitution, enact laws, and enact municipal ordinances by initiative and referendum.  *Id.* art. II, §§ 1a, 1b, 1f.  The Ohio Constitution and the Ohio Code establish the process for proposing an initiative to the

No. 20-3526                         *Thompson v. DeWine*                         Page 3

State's electors and impose many requirements for ballot access.  Relevant here, a petition to put an initiative before Ohio's electors for referendum must include signatures from ten percent of the applicable jurisdiction's electors that voted in the last gubernatorial election, each signature must "be written in ink," and the initiative's circulator must witness each signature.  *Id.* art. II, § 1g; *see id*. art. II, § 1a; Ohio Rev. Code Ann. § 731.28.  And the initiative's proponents must submit these signatures to the Secretary of State 125 days before the election for a constitutional amendment and 110 days before the election for a municipal ordinance.  Ohio Const. art. II, § 1a; Ohio Rev. Code Ann. § 731.28.

Given the COVID-19 pandemic, three individuals and two organizations, who are obtaining signatures in support of initiatives to amend the Ohio Constitution and propose municipal ordinances, challenged these requirements, as-applied to them.  They claim Ohio's ballot-initiative requirements violate their First and Fourteenth Amendment rights and moved to enjoin the State from enforcing these requirements against them.  The district court granted their motion in part, enjoining enforcement of the ink signature requirement, the witness requirement, and the submission deadlines, and denied their motion in part, upholding the number of signatures requirement.  The court also directed Defendants to "update the Court by 12:00 pm on Tuesday, May 26, 2020 regarding adjustments to the enjoined requirements so as to reduce the burden on ballot access" as well as ordered them to "accept electronically-signed and witnessed petitions from [the organizational plaintiffs] collected through the on-line signature collection plans set forth in their briefing" and to "accept petitions from [the organizational plaintiffs] that are submitted to the Secretary of State by July 31, 2020[.]"[1]  (R. 44, Op. & Order at PageID # 675–76.)  And the court ordered Defendants and the organizational plaintiffs to "meet and confer regarding any technical or security issues to the on-line signature collection plans" and "submit their findings to the Court by 12:00 pm on Tuesday, May 26, 2020."  (*Id*.)  Defendants now move for an administrative stay and for a stay pending appeal.

---

[1]The district court chose this date because it is also the deadline for petition proponents to submit additional signatures if the Secretary of State determines that the original submissions were insufficient.  (R. 50, Op. & Order at PageID # 718.)  The Secretary of State would then have less than a month, until August 30, to determine whether the petitions satisfy the requirements for ballot access, Plaintiffs would need to file any legal challenge to the Secretary of State's determination by September 9, the Secretary of State would have to certify the form of official ballots by September 14, and the Supreme Court would have to rule on any challenge by September 19. (*Id*.)

No. 20-3526                           *Thompson v. DeWine*                           Page 4

"[I]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions" are immediately appealable. 28 U.S.C. § 1292(a)(1). And the district court has already denied Defendants' motion for a stay pending appeal in that court. So we have jurisdiction and Defendants' motion is ripe for our review.

A movant must establish four factors to obtain a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). When evaluating these factors for an alleged constitutional violation, "the likelihood of success on the merits often will be the determinative factor." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *see also Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012) ("In First Amendment cases, however, the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits. This is so because . . . the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the state action." (internal quotation marks and alteration omitted)). So we turn first to that.

## I.

"[A]lthough the Constitution does not require a state to create an initiative procedure, if it creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution[.]" *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993); *see also John Doe No. 1 v. Reed*, 561 U.S. 186, 212 (2010) (Sotomayor, J., concurring) ("[I]nitiatives and referenda . . . are not compelled by the Federal Constitution. It is instead up to the people of each State, acting in their sovereign capacity, to decide whether and how to permit legislation by popular action."). As Defendants concede, our precedent dictates that we evaluate First Amendment challenges to nondiscriminatory, content-neutral ballot initiative requirements under the *Anderson-Burdick* framework.[2] *Schmitt v. LaRose*, 933 F.3d 628, 639 (6th Cir. 2019);

---

[2]Defendants contend that *Anderson-Burdick* shouldn't apply to ballot initiative requirements because restrictions on the people's legislative powers (rather than political speech or voting) don't implicate the First Amendment. At least two other Courts of Appeals have held as much. *See Initiative & Referendum Inst. v. Walker*,

*Comm. to Impose Term Limits on the Ohio Supreme Court & to Preclude Special Legal Status for Members & Emps. of the Ohio Gen. Assembly v. Ohio Ballot Bd.*, 885 F.3d 443, 448 (6th Cir. 2018). First, we determine the burden the State's regulation imposes on the plaintiffs' First Amendment rights. When States impose "reasonable nondiscriminatory restrictions[,]" courts apply rational basis review and "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788, (1983)). But when States impose severe restrictions, such as exclusion or virtual exclusion from the ballot, strict scrutiny applies. *Id.* at 434; *Schmitt*, 933 F.3d at 639 ("The hallmark of a severe burden is exclusion or virtual exclusion from the ballot."). For cases between these extremes, we weigh the burden imposed by the State's regulation against "'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).

We have regularly upheld ballot access regulations like those at issue. *See Schmitt*, 933 F.3d at 641–42 (upholding Ohio's provision of only mandamus review for challenges to a Board of Elections' ruling over compliance with ballot initiative requirements against a First Amendment challenge); *Ohio Ballot Bd.*, 885 F.3d at 448 (upholding Ohio's single-subject requirement for ballot initiatives against a First Amendment challenge); *Taxpayers United*, 994 F.2d at 296–97 (upholding Michigan's number-of-signatures requirement for ballot initiatives against a First Amendment challenge). But these are not normal times. So the question is whether the COVID-19 pandemic and Ohio's stay-at-home orders increased the burden that Ohio's ballot-initiative regulations place on Plaintiffs' First Amendment rights.

---

450 F.3d 1082, 1099–100 (10th Cir. 2006) (en banc); *Marijuana Policy Project v. United States*, 304 F.3d 82, 85 (D.C. Cir. 2002). And this court has often questioned whether *Anderson-Burdick* applies to anything besides generally applicable restrictions on the right to vote. *Daunt v. Benson*, 956 F.3d 396, 423–24 (6th Cir. 2020) (Readler, J., concurring) (acknowledging that "*Anderson-Burdick* is a poor vehicle" for evaluating First Amendment challenges to public service qualification regulations; *Mays v. LaRose*, 951 F.3d 775, 783 n.4 (6th Cir. 2020) (recognizing that applying *Anderson-Burdick* to Equal Protection claims "takes some legal gymnastics"); *Schmitt*, 933 F.3d at 644 (Bush, J., concurring in part) ("[T]he Court's precedents in *Anderson* and *Burdick*, though concerning election regulation, similarly do not address the key question raised in this case: is the First Amendment impinged upon by statutes regulating the election mechanics concerning initiative petitions?" (citation omitted)). But until this court sitting en banc takes up the question of *Anderson-Burdick*'s reach, we will apply that framework in cases like this.

We must answer this question from the perspective of the people and organizations affected by Ohio's ballot initiative restrictions and considering all opportunities these parties had to exercise their rights.  *Mays*, 951 F.3d at 785–86.

The district court held that Ohio's strict enforcement of its ballot initiative regulations imposed a severe burden on Plaintiffs' First Amendment rights, given the pandemic. Not so.  The district court based its order, in part, on this court's recent order in *Esshaki v. Whitmer*, --- F. App'x ----, 2020 WL 2185553 (6th Cir. May 5, 2020).  But there are several key differences between this case and *Esshaki*.  At bottom, a severe burden excludes or virtually excludes electors or initiatives from the ballot.  *See Mays*, 951 F.3d at 786; *Schmitt*, 933 F.3d at 639.  But Ohio law doesn't do that.

In *Esshaki* we held that "the *combination* of [Michigan's] strict enforcement of [its] ballot-access provisions and [its] Stay-at-Home Orders imposed a severe burden on the plaintiff's ballot access[,]" 2020 WL 2185553, at *1 (emphasis added).  In other words, Michigan still required candidates seeking ballot access by petition to procure the same number of physical signatures as a non-pandemic year, "without exception for or consideration of the COVID-19 pandemic or the Stay-at-Home Orders."  *Id*.  What's more, Michigan's stay-at-home orders remained in place through the deadline for petition submission.  *Id*.  So Michigan abruptly prohibited the plaintiffs from procuring signatures during the last month before the deadline, leaving them with only the signatures that they had gathered to that point.

On the other hand, Ohio specifically exempted conduct protected by the First Amendment from its stay-at-home orders.  From the first Department of Health Order issued on March 12, Ohio made clear that its stay-at-home restrictions did not apply to "gatherings for the purpose of the expression of First Amendment protected speech[.]"  Ohio Dep't of Health, Order to Limit and/or Prohibit Mass Gatherings in the State of Ohio ¶ 7 (March 12, 2020).  And in its April 30 order, the State declared that its stay-at-home restrictions did not apply to "petition or referendum circulators[.]"  Ohio Dep't of Health, Director's Order that Reopens Businesses, with Exceptions, and Continues a Stay Healthy and Safe at Home Order ¶ 4 (April 30, 2020).  So none of Ohio's pandemic response regulations changed the status quo on the activities Plaintiffs could engage in to procure signatures for their petitions.

No. 20-3526                    *Thompson v. DeWine*                    Page 7

Unlike the Ohio orders, the Michigan executive orders in *Esshaki* did not specifically exempt First Amendment protected activity. To be sure, executive officials in Michigan informally indicated that they would not enforce those orders against those engaged in protected activity. *See* Mich. Dep't of Health & Human Servs., Executive Order 2020-42 FAQs (Apr. 2020), https://www.michigan.gov/coronavirus/0,9753,7-406-98178_98455-525278--,00.html. Of course, that promise is not the same as putting the restriction in the order itself. *Cf. Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (We "must presume that [the] legislature says in a statute what it means and means in a statute what is says there."); *Sosna v. Iowa*, 419 U.S. 393, 399–400 (1975) (noting, in the context of the capable of repetition yet evading review exception to mootness, that just because a state official says they won't enforce a statute against a party now doesn't mean they won't exercise their discretion to enforce the statute at a later time). But in any event, we did not address the significance of exemptions in *Esshaki* at all. By contrast, we believe that Ohio's express exemption (especially for "petition or referendum circulators" specifically) is vitally important here.

What's more, Ohio is beginning to lift their stay-at-home restrictions. On May 20, the Ohio Department of Health rescinded its stay-at-home order. Ohio Dep't of Health, Director's Order that Rescinds and Modifies Portions of the Stay Safe Ohio Order (May 20, 2020). We found a severe burden in *Esshaki* because Michigan's stay-at-home order remained in effect through the deadline to submit ballot-access petitions. Considering all opportunities Plaintiffs had, and still have, to exercise their rights in our calculation of the burden imposed by the State's regulations, *see Mays*, 951 F.3d at 785–86, Plaintiffs' burden is less than severe. Even if Ohio's stay-at-home order had applied to Plaintiffs, the five-week period from Ohio's rescinding of its order until the deadline to submit an initiative petition undermines Plaintiffs' argument that the State has excluded them from the ballot.

Plaintiffs' claim effectively boils down to frustration over failing to procure as many signatures for their petitions (because of social distancing and reduced public crowds) as they would without the pandemic. But that's not necessarily true. There's no reason that Plaintiffs can't advertise their initiatives within the bounds of our current situation, such as through social or traditional media inviting interested electors to contact them and bring the petitions to the

No. 20-3526             *Thompson v. DeWine*             Page 8

electors' homes to sign. Or Plaintiffs could bring their petitions to the public by speaking with electors and witnessing the signatures from a safe distance, and sterilizing writing instruments between signatures.

Moreover, just because procuring signatures is now harder (largely because of a disease beyond the control of the State) doesn't mean that Plaintiffs are *excluded* from the ballot. And we must remember, First Amendment violations require state action. U.S. Const. amend. I ("*Congress* shall make no law . . . ." (emphasis added)); 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, *of any State* . . . ." (emphasis added)). So we cannot hold private citizens' decisions to stay home for their own safety against the State. Because the State has not excluded Plaintiffs from the ballot, the burden imposed on them by the State's initiative requirements cannot be severe. *See Schmitt*, 933 F.3d at 639.

Despite the pandemic, we believe that the more apt comparison is to our burden analysis in *Schmitt*. The plaintiffs there made a First Amendment challenge to Ohio's restriction of judicial review for board of elections ballot decisions to petitions for a writ of mandamus. And we held that the burden was intermediate because there are some costs associated with obtaining legal counsel and seeking mandamus review. *Id.* at 641. So this prevents some proponents from seeking judicial review of the board's exclusion of their initiative and constitutes more than a de minimis limit on access to the ballot. *Id. Schmitt* concluded that a burden is minimal when it "in no way" limits access to the ballot.[3] *Id.* (quoting *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 577 (6th Cir. 2016)). Thus, the burden in *Schmitt* had to be intermediate. Same here. Requiring Plaintiffs to secure hundreds of thousands of signatures

---

[3]To be sure, this statement arguably conflicts with other articulations of what constitutes a minimal burden. *See Burdick*, 504 U.S. at 434–39 (because Hawaii's election laws were reasonable and nondiscriminatory they imposed a minimal burden on the plaintiff's First Amendment rights, even though they prevented the plaintiff from casting a vote for his preferred candidate); *Daunt*, 956 F.3d at 408 (classifying regulations that are "generally applicable [and] nondiscriminatory" as imposing a minimal burden); *Taxpayers United*, 994 F.2d at 297 (finding Michigan's ballot initiative regulations minimally burdensome because they were "content-neutral, nondiscriminatory regulations that [were] reasonably related to the purpose of administering an honest and fair initiative procedure."). Indeed, it's hard not to conclude that the signature requirements in *Taxpayers United* necessarily limited ballot access. And in *Burdick*, the Supreme Court remarked that all "[e]lection laws will invariably impose some burden on individual voters." 504 U.S. at 433. But the State doesn't argue that its ballot initiative regulations impose only a minimal burden. And because those regulations satisfy intermediate scrutiny, they would survive under the framework for regulations that impose a minimal burden. So we proceed under the intermediate burden analysis discussed in *Schmitt*. 933 F.3d at 641.

in support of their initiative is a burden. That said, Ohio requires the same from Plaintiffs now as it does during non-pandemic times. So the burden here is not severe.

Whether this intermediate burden on Plaintiffs' First Amendment rights passes constitutional muster depends on whether the State has legitimate interests to impose the burden that outweigh it. *See Burdick*, 504 U.S. at 434. Here they offer two.[4] Defendants claim the witness and ink requirements help prevent fraud by ensuring that the signatures are authentic. And the deadlines allow them time to verify signatures in an orderly and fair fashion, while also providing initiative proponents time to challenge any adverse decision in court.

These interests are not only legitimate, they are compelling. *John Doe No. 1*, 561 U.S. at 186 ("The State's interest in preserving the integrity of the electoral process is undoubtedly important."); *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 387 (6th Cir. 2008) ("[E]liminating election fraud is certainly a compelling state interest[.]"); *Austin*, 994 F.2d at 297 ("[S]tate[s] ha[ve] a strong interest in ensuring that its elections are run fairly and honestly," as well as "in maintaining the integrity of its initiative process." (internal quotation marks omitted)). The district court faulted Defendants for not narrowly tailoring their regulations. But *Anderson-Burdick*'s intermediate scrutiny doesn't require narrow tailoring. Because the State's compelling and well-established interests in administering its ballot initiative regulations outweigh the intermediate burden those regulations place on Plaintiffs, Defendants are likely to prevail on the merits.

## II.

Unless the statute is unconstitutional, enjoining a "State from conducting [its] elections pursuant to a statute enacted by the Legislature . . . would seriously and irreparably harm [the State]." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018). Defendants have shown they are likely to prevail on the merits. Serious and irreparable harm will thus result if Ohio cannot conduct its

---

[4]Defendants also claim a third state interest: ensuring that each initiative on the ballot has a threshold amount of support to justify taking up space on the ballot. This interest is more appropriately related to Ohio's number of signatures requirement. *Jolivette v. Husted*, 694 F.3d 760, 769 (6th Cir. 2012) (A State may legitimately "avoid[ ] overcrowded ballots" and "protect the integrity of its political processes from frivolous or fraudulent candidacies."). But the district court did not enjoin the State's enforcement of that regulation so it's not properly before us in this motion for a stay pending appeal.

No. 20-3526          *Thompson v. DeWine*          Page 10

election in accordance with its lawfully enacted ballot-access regulations. Comparatively, Plaintiffs have not shown that complying with a law we find is likely constitutional will harm them. So the balance of the equities favors Defendants. Finally, giving effect to the will of the people by enforcing the laws they and their representatives enact serves the public interest. *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006). With all four factors favoring Defendants, we grant their motion for a stay pending appeal.

III.

Last, even though we grant Defendants' motion for a stay pending appeal, we note that the district court exceeded its authority by rewriting Ohio law with its injunction. Despite relying heavily on *Esshaki*, the district court failed to apply its primary holding: "federal courts have no authority to dictate to the States precisely how they should conduct their elections." ---F. App'x ----, 2020 WL 218553 at *2. In *Esshaki* we granted a stay for the affirmative portion of the district court's injunction that (1) reduced the number of signatures required to appear on the ballot, (2) extended the filing deadline, and (3) ordered the State to permit the collection of signatures by electronic mail. While it may not have done the first of these, the court below did the second and third. The district court extended the filing deadline by almost a month, to July 31, and ordered Defendants to accept petitions electronically signed, under the plan Plaintiffs drafted.

Federal courts can enter positive injunctions that require parties to comply with existing law. But they cannot "usurp[] a State's legislative authority by re-writing its statutes" to create new law. *Id.* The district court read this holding too narrowly; recognizing it could not modify the Ohio Code but remained free to amend the Ohio Constitution. Instead of simply invalidating Ohio's initiative deadline and signature requirement, the district court chose a new deadline and prescribed the form of signature the State must accept. The Ohio Constitution requires elector approval for all amendments. Ohio Const. art. II, § 1a; *id.* art. XVI, §§ 1, 2. By unilaterally modifying the Ohio Constitution's ballot initiative regulations, the district court usurped this authority from Ohio electors.

No. 20-3526                     *Thompson v. DeWine*                     Page 11

The broader point is that the federal Constitution provides States—not federal judges—the ability to choose among many permissible options when designing elections. And because that's where the decision-making authority is, federal courts don't lightly tamper with election regulations. These concerns are magnified here where the new election procedures proffered by Plaintiffs threaten to take the state into unchartered waters. It may well be that the new methods for gathering signatures and verifying them proposed by Plaintiffs (using electronic signatures gathered online by third parties and identified by social security number) will prove workable. But they may also pose serious security concerns and other, as yet unrealized, problems. So the decision to drastically alter Ohio's election procedures must rest with the Ohio Secretary of State and other elected officials, not the courts.

One final point, rewriting a state's election procedures or moving deadlines rarely ends with one court order. Moving one piece on the game board invariably leads to additional moves. This is exactly why we must heed the Supreme Court's warning that federal courts are not supposed to change state election rules as elections approach. *See, e.g.*, *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."); *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam) ("Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."). Here, the November election itself may be months away but important, interim deadlines that affect Plaintiffs, other ballot initiative proponents, and the State are imminent. And moving or changing a deadline or procedure now will have inevitable, other consequences.

There is no doubt that the COVID-19 pandemic and Ohio's responsive restrictions to halt the spread of that disease have made it difficult for all Ohioans to carry on with their lives. But for the most part we are letting our elected officials, with input from public health experts, decide when and how to apply those restrictions. The election context is no different. And while the Constitution provides a backstop, as it must—we are unwilling to conclude that the State is infringing upon Plaintiffs' First Amendment rights in this particular case.

No. 20-3526                     *Thompson v. DeWine*                     Page 12

For these reasons, we **GRANT** Defendants' motion for a stay pending appeal and **DISMISS AS MOOT** their motion for an administrative stay.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk