**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  September 16, 2020

Mr. Mark R. Brown
Capital University Law School
303 E. Broad Street
Columbus, OH 43215

Mr. Stephen P. Carney
Office of the Attorney General of Ohio
30 E. Broad Street
25th Floor
Columbus, OH 43215

Stephen Chang
Sidley Austin
555 California Street
Suite 2000
San Francisco, CA 94104

Mr. Benjamin Michael Flowers
Office of the Attorney General
30 E. Broad Street
14th Floor
Columbus, OH 43215

Mr. Jeffrey Todd Green
Sidley Austin
1501 K Street, N.W.
Washington, DC 20005

Mr. Oliver B. Hall
Center for Competitive Democracy
P.O. Box 21090
2515 Cliffbourne Place, N.W.
Washington, DC 20009

Mr. Michael Jason Hendershot
Office of the Attorney General
of Ohio
30 E. Broad Street
25th Floor
Columbus, OH 43215

Naomi Igra
Sidley Austin
555 California Street
Suite 2000
San Francisco, CA 94104

Jennifer H. Lee
Sidley Austin
555 California Street
Suite 2000
San Francisco, CA 94104

Ms. Julie M. Pfeiffer
Office of the Attorney General
30 E. Broad Street
16th Floor
Columbus, OH 43215

Ms. Anne M. Sferra
Bricker & Eckler
100 S. Third Street
Columbus, OH 43215

Mr. Christopher N. Slagle
Bricker & Eckler
100 S. Third Street
Columbus, OH 43215

Mr. Bryan Matthew Smeenk
Bricker & Eckler
100 S. Third Street
Columbus, OH 43215

Tyler Wolfe
Sidley Austin
555 California Street
Suite 2000
San Francisco, CA 94104

Mr. Paul Anton Zevnik
Morgan, Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004

Re:  Case No. 20-3526, *Chad Thompson, et al v. Richard DeWine, et al*
Originating Case No. : 2:20-cv-02129

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc:  Mr. Richard W. Nagel

Enclosure

Mandate to issue

<u>NOT RECOMMENDED FOR PUBLICATION</u>
File Name:  20a0534n.06

Case No. 20-3526

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CHAD THOMPSON, et al., | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| RICHARD MICHAEL DEWINE, et al., | ) | OHIO |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | OPINION |
| | ) | |

**FILED**
Sep 16, 2020
DEBORAH S. HUNT, Clerk

BEFORE:  SUTTON, McKEAGUE, and NALBANDIAN, Circuit Judges.

PER CURIAM.

The COVID-19 pandemic has upended life in many ways. In response to the unfolding public health crisis, states across the country imposed various orders in hopes of containing the virus. Ohio, for its part, asked its citizens to stay at home and restricted the size of gatherings.

This case, which we've seen before, involves the intersection of COVID-19, the state's responses to that pandemic, and some of Ohio's conditions that must be met before a ballot initiative can get on the ballot for Election Day. *See Thompson v. DeWine*, 959 F.3d 804, 806 (6th Cir.) (per curiam), *mot. to vacate stay denied*, --- S. Ct. ----, No. 19A1054, 2020 WL 3456705 (2020).

Plaintiffs say that Ohio's ballot initiative conditions are unconstitutional as applied during this pandemic and request that the federal courts relax them, at least for the time being. Plaintiffs'

No. 20-3526, *Thompson v. DeWine*

challenge is a curious one. There is no question that Ohio's ballot initiative conditions are, standing alone, constitutional, there is no question that Ohio is not responsible for COVID-19, and Plaintiffs are not challenging Ohio's restrictions on public gatherings and the like, which Ohio imposed to address the pandemic—so we assume those are constitutional as well. And yet, Plaintiffs contend that when you put all of this together, in effect, two constitutional rights plus one outside catalyst make one constitutional wrong. The district court agreed and granted a preliminary injunction. We stayed that order because we disagreed. And now, because we still disagree, we reverse the district court's grant of a preliminary injunction.

## I.

To get an initiative on a municipal ballot, Ohio requires the ballot's proponents to gather signatures totaling at least ten percent of the number of electors who voted for governor in the municipality's previous election. Ohio Rev. Code Ann. § 731.28. The signatures must be original and affixed in ink, and the petition's circulator must witness them. *Id.* § 3501.38. And the initiative's proponents must submit these signatures to the Ohio Secretary of State at least 110 days before the election.[1] *Id.* § 731.28.

Plaintiffs here are three Ohioans hoping to get initiatives on local ballots to decriminalize marijuana.[2] They argue that Ohio's ballot initiative requirements, as applied during the COVID-19 pandemic and given Ohio's stay-at-home orders and other pandemic restrictions, violate the

---

[1] This date has already passed. But Ohio doesn't argue that the case is moot. And we are satisfied that we still have jurisdiction despite the date's passing. Plaintiffs ask us to place their initiative directly on the ballots—and that relief is still available, in theory, until Ohio prints its first round of ballots.

[2] Our original stay order covered these Plaintiffs and two Intervenor-Plaintiffs who sought to get proposed constitutional amendments on Ohio's November ballot. The Intervenor-Plaintiffs have since withdrawn from this litigation. *See* Order Granting Mot. to Withdraw by Intervenors-Appellees.

2

No. 20-3526, *Thompson v. DeWine*

First and Fourteenth Amendments. So they asked the district court to enjoin Ohio from enforcing the ballot initiative requirements. The district court agreed, at least in part. It granted plaintiffs' request for a preliminary injunction, enjoining Ohio from enforcing some of its ballot access requirements. And it ordered Ohio to accept electronically signed and witnessed petitions, extended the deadline for petition submission, and told Ohio to come up with a system that would "reduce the burden on ballot access."[3] *Thompson v. DeWine*, --- F. Supp. 3d ----, No. 2:20-CV-2129, 2020 WL 2557064, at \*21 (S.D. Ohio 2020) (quotation omitted).

Ohio asked us to stay the district court's injunction while its appeal was pending. We did. *Thompson*, 959 F.3d at 813. We reasoned that Ohio's compelling interests in preventing fraud and ensuring a fair and orderly signature verification process outweighed the intermediate burden the requirements imposed on plaintiffs' First and Fourteenth Amendment rights. *Id.* at 811. Now, we review whether a preliminary injunction was warranted in the first place. For reasons we'll discuss below, we don't think it was. We thus reverse the district court's grant of a preliminary injunction.

II.

This case comes to us on appeal from an order granting an injunction. So we have jurisdiction under 28 U.S.C. § 1292. We review a district court's grant of a preliminary injunction for abuse of discretion, "subjecting factual findings to clear-error review and examining legal conclusions de novo." *Daunt v. Benson*, 956 F.3d 396, 406 (6th Cir. 2020).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When we evaluate these factors for an alleged

---

[3] The court upheld Ohio's signature quantity requirement.

No. 20-3526, *Thompson v. DeWine*

constitutional violation, "'the likelihood of success on the merits often will be the determinative factor.'" *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)). So we start there.

## A.

If this all sounds familiar, that's because it is. In staying the district court's preliminary injunction, we went through the factors above and concluded that Plaintiffs aren't likely to succeed on the merits. *Thompson*, 959 F.3d at 811. We still think so.

The First Amendment doesn't guarantee the right to an initiative. *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993). But once the people of a state, in their sovereign authority, decide to allow initiatives, "the state may not place restrictions on the exercise of the initiative that unduly burden First Amendment rights." *Id.*

"[W]e evaluate First Amendment challenges to nondiscriminatory, content-neutral ballot initiative requirements under the *Anderson-Burdick* framework."[4] *Thompson*, 959 F.3d at 808; *see Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).

---

[4] Although Ohio recognizes this, it also argues that "[l]aws regulating ballot access for state initiatives do not implicate the First Amendment at all." (Appellants' Br. at 26.) But as Ohio admits, that's not the law in this circuit. (*Id.* at 29–30.) And "until this court sitting en banc takes up the question of *Anderson-Burdick*'s reach, we will apply that framework in cases like this." *Thompson*, 959 F.3d at 808 n.2. Still, we note that at least two other courts of appeals take Ohio's position. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099–100 (10th Cir. 2006) (en banc); *Marijuana Pol'y Project v. United States*, 304 F.3d 82, 85 (D.C. Cir. 2002). "And this court has often questioned whether *Anderson-Burdick* applies to anything besides generally applicable restrictions on the right to vote." *Thompson*, 959 F.3d at 808 n.2 (collecting cases). So there's a circuit split on the applicability of *Anderson-Burdick* to laws regulating ballot access for initiatives. This has caused "predictably contrary conclusions as to whether and to what extent States must adapt the initiative process to account for new obstacles to collecting signatures." *Little v. Reclaim Idaho*, --- S. Ct. ----, No. 20A18, 2020 WL 4360897, at *1 (2020) (Roberts, C.J., concurring in the grant of a stay). That said, "the [Supreme] Court is reasonably likely to grant certiorari to resolve the split presented by this case on an important issue of election administration." *Id.*

No. 20-3526, *Thompson v. DeWine*

Under that framework, the level of scrutiny we apply to "state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. When the burden is severe, the state must narrowly draw the regulation to serve an "interest of compelling importance." *Id.* (quotation omitted). But when the law imposes "reasonable, nondiscriminatory restrictions," we subject it to rational-basis review. *Id.* (quotation omitted).

There's one more layer to *Anderson-Burdick*. A challenged law imposes an intermediate burden when the burden is somewhere between severe on the one hand and reasonable and nondiscriminatory on the other. *Kishore v. Whitmer*, --- F.3d ----, No. 20-1661, 2020 WL 4932749, at *2 (6th Cir. 2020). When the burden is intermediate, we weigh it against "the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson,* 460 U.S. at 789; *see also Thompson*, 959 F.3d at 808. In doing so, we consider "the extent to which those interests make it necessary to burden the plaintiff's rights." *Thompson*, 959 F.3d at 808 (quoting *Burdick*, 504 U.S. at 434). It's this level of scrutiny that we apply to Ohio's laws here.[5]

---

[5] In a surreply, Plaintiffs expand on their previous argument that Ohio—by failing to answer Plaintiffs' complaint or file a Rule 12 motion—"admitted" Plaintiffs' claim from the complaint that it was "impossible" for them to collect signatures. *See* Fed. R. Civ. P. 8(b)(6). If this were true, perhaps stricter scrutiny would be appropriate. But we don't think "impossibility" here is a factual allegation that can be admitted in pleadings. *See Ohio Democratic Party v. Husted*, 834 F.3d 620, 628 (6th Cir. 2016) (collecting cases); *Bright v. Gallia County*, 753 F.3d 639, 652 (6th Cir. 2014) (explaining, in the context of a motion to dismiss, that "legal conclusions masquerading as factual allegations" don't turn legal questions into factual ones (quotations omitted)). And "a defendant's failure to deny conclusions of law does not constitute an admission of those conclusions." 5 C. Wright & A. Miller, Federal Practice & Procedure § 1279 (3d ed.). In any event, Ohio has consistently argued, both before the district court and before us, that it wasn't impossible for Plaintiffs to collect signatures.

No. 20-3526, *Thompson v. DeWine*

1.  The Burden

We see no reason to depart from our previous holding that Ohio's ballot-access restrictions impose, at most, only an intermediate burden on plaintiffs' First Amendment rights, even during COVID-19.[6] *Id.* at 810–811. If anything, the interim between our stay order and now has reinforced our holding. The federal circuit tide has turned against Plaintiffs. The Eighth Circuit, for instance, held that Arkansas's "in-person signature requirement, while implicating the First Amendment, imposes less-than-severe burdens on the plaintiffs' rights and survives the applicable lesser scrutiny." *Miller v. Thurston*, 967 F.3d 727, 741 (8th Cir. 2020); *see also Libertarian Party of Pa. v. Governor of Pa.*, 813 F. App'x 834, 835 (3d Cir. 2020) (mem.) (holding that Pennsylvania's ballot-access law, which includes a signature requirement, "survives intermediate scrutiny because it serves the Commonwealth's legitimate and sufficiently important interests in 'avoiding ballot clustering, ensuring viable candidates, and the orderly and efficient administration of elections.'"). And in *Morgan v. White*, the Seventh Circuit said that if Illinois wanted to just skip referenda for the year, "there is no federal problem": "Illinois may decide for itself whether a pandemic is a good time to be soliciting signatures on the streets in order to add referenda to a ballot." 964 F.3d 649, 652 (7th Cir. 2020).

And in addition, the Supreme Court stayed two injunctions against state enforcement of ballot access restrictions. *Little v. Reclaim Idaho*, --- S. Ct. ---, No. 20A18, 2020 WL 4360897 (2020); *Clarno v. People Not Politicians*, --- S. Ct. ----, No. 20A21, 2020 WL 4589742 (2020). And the Court left our previous ruling in place. *Thompson*, --- S. Ct. ----, 2020 WL 3456705 (2020).

---

[6] Plaintiffs argue that our stay order "carries limited weight." (Appellees' Br. at 24 n.29.) We don't need to decide the precedential weight to give to that order. But it's worth noting that we've since relied on it as "binding precedent." *Hawkins v. DeWine*, 968 F.3d 603, 604 (6th Cir. 2020).

No. 20-3526, *Thompson v. DeWine*

Even without those developments, Plaintiffs still faced an uphill battle. We noted in our stay order that "[a]t bottom, a severe burden excludes or virtually excludes electors or initiatives from the ballot." 959 F.3d at 809. But Ohio's ballot access laws don't do that. *Id.* Instead, all throughout the pandemic, "Ohio specifically exempted conduct protected by the First Amendment from its stay-at-home orders." *Id.* This included gathering signatures for petitions.[7] Even if that was unclear at first, Ohio made it clear by April 30—which gave Plaintiffs months to gather signatures. Ohio Dep't of Health, Director's Order that Reopens Businesses, with Exceptions, and Continues a Stay Healthy and Safe at Home Order ¶ 4 (April 30, 2020).

And even if prospective signatories were deciding to stay home or avoid strangers—thus reducing Plaintiffs' opportunities to interact with them—we don't attribute those decisions to Ohio. "[W]e must remember, First Amendment violations require state action." *Thompson*, 959 F.3d at 810. So "Plaintiffs' burden is less than severe" because Ohio hasn't excluded or virtually excluded them from the ballot. *Id.*; *see Hawkins v. DeWine*, 968 F.3d 603, 607 (6th Cir. 2020)

Plaintiffs argue that "total exclusion" from the ballot isn't essential for finding a severe burden. (Appellees' Br. at 25.) But the cases Plaintiffs cite don't support their theory. For instance, they rely on our recent decision in *Esshaki v. Whitmer* to claim that the "combined effect" of strictly enforced ballot access laws and stay-at-home orders can create a severe burden. *See* 813 F. App'x 170, 171 (6th Cir. 2020). This language, they say, means that "total exclusion" isn't necessary to make out a severe burden. And for extra support they cite *SawariMedia, LLC v.*

---

[7] Plaintiffs argue that Ohio's First Amendment exception to its stay-at-home orders was "too vague to alleviate the burden on Thompson." (Appellees' Br. at 31.) We confronted that argument head on in *Hawkins* and rejected it. *Hawkins*, 968 F.3d at 607 ("[T]he orders explicitly exempt First Amendment protected speech, and it is well-established that the act of collecting signatures for ballot access falls under that ambit.").

No. 20-3526, *Thompson v. DeWine*

*Whitmer*, where "neither this court, nor the district court applied a 'total exclusion' test to find severe burden." (Appellees' Br. at 28); *see* 963 F.3d 595 (6th Cir. 2020).

True, we held in *Esshaki* that "the combination of [Michigan's] strict enforcement of the ballot-access provisions and the Stay-at-Home Orders imposed a severe burden on the plaintiffs' ballot access." 813 F. App'x at 171. But Plaintiffs omit *why* we held that way. We later clarified: "We held that there was a severe burden because Michigan's Stay-at-Home Order remained in effect through the deadline to submit ballot-access petitions, *effectively excluding* all candidates who had not already satisfied the signature requirements (and predicted a shutdown)." *Kishore*, -- - F.3d ----, 2020 WL 4932749, at *3 (emphasis added). And *Kishore*'s explanation of why we found a severe burden in *Esshaki* applies with equal force to *SawariMedia*. The restrictions at issue there were "identical" to those in *Esshaki*. *SawariaMedia, LLC*, 963 F.3d at 597. So in finding a severe burden in both *Esshaki* and *SawariMedia*, we relied on the fact that Michigan's restrictions "effectively excluded" the plaintiffs from ballot access.

Plaintiffs also cite *Libertarian Party of Ky. v. Grimes*. That case noted that "the 'combined effect' of ballot-access restrictions can pose a severe burden." 835 F.3d 570, 575 (6th Cir. 2016). Fair enough. But again, Plaintiffs read the case too narrowly. In fact, *Libertarian Party of Ky.* explicitly stated—multiple times, at that—that the ballot access restrictions at issue couldn't be a severe burden because they didn't "constitute exclusion or virtual exclusion." *Id.* at 575; *see id.* at 574 ("The hallmark of a severe burden is exclusion or virtual exclusion from the ballot.").

Since our stay order, we've already had the chance to take another look at the burden Ohio's ballot access regulations impose. *See Hawkins*, 968 F.3d at 604; *see also Kishore*, --- F.3d ----, 2020 WL 4932749, at *3. *Hawkins* involved a challenge to Ohio's requirements for running for President of the United States as an independent, which are virtually identical to those here.

8

No. 20-3526, *Thompson v. DeWine*

968 F.3d at 604 (noting that Ohio requires independent presidential candidates to file "a nominating petition with no fewer than 5,000 signatures," which must be fixed in ink and witnessed by the circulator). Relying on our *Thompson* stay order, we held that "the burden imposed on Plaintiffs by Ohio's ballot-access statutes—in light of the state's response to the pandemic—is an intermediate one." *Id.* at 607. And in *Kishore*, we applied intermediate scrutiny to Michigan ballot access regulations that were "comparable to the burdens imposed upon the plaintiffs in *Thompson* and *Hawkins*." --- F.3d ----, 2020 WL 4932749, at *3.

To be sure, it may be harder for Plaintiffs to obtain signatures given the conditions. But "just because procuring signatures is now harder … doesn't mean that Plaintiffs are *excluded* from the ballot." *Thompson*, 959 F.3d at 810. The burden Plaintiffs face here is thus an intermediate one. That means we next weigh it against the interests Ohio puts forward to justify its regulations.

2.   Ohio's Justifications

Ohio's ballot access laws place an intermediate burden on Plaintiffs' First and Fourteenth Amendment rights. So the next step in the *Anderson-Burdick* framework is "a flexible analysis in which we weigh the 'burden of the restriction' against the 'state's interests and chosen means of pursuing them.'" *Schmitt v. LaRose*, 933 F.3d 628, 641 (6th Cir. 2019), *cert. denied*, 207 L. Ed. 2d 141 (2020).

Ohio articulates two interests relevant to this appeal. The first relates to the ink and attestation requirements: preventing fraud by ensuring the authenticity of signatures. There's no question this is a legitimate—indeed compelling—interest. "The State's interest in preserving the integrity of the electoral process is undoubtedly important." *John Doe No. 1. v. Reed*, 561 U.S. 186, 197 (2010). And "states have a strong interest in 'ensuring that [their] elections are run fairly

and honestly,' as well as in 'maintaining the integrity of [their] initiative process.'" *Schmitt*, 933 F.3d at 641 (quoting *Taxpayers United for Assessment Cuts*, 994 F.2d at 297).

So Ohio's first interest is important—what about its second? Ohio says that its deadlines allow it to verify signatures in a fair and orderly way, ensuring that interested parties have enough time to appeal an adverse decision in court. This is also an important interest. Indeed, "[s]tates may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997).

3. The Balancing Test

Finally, "[a]t the third step of *Anderson-Burdick* we assess whether the State's restrictions are constitutionally valid given the strength of its proffered interests." *Schmitt*, 933 F.3d at 641; *see Kishore*, 2020 WL 4932749, at *4. Remember, this stage of the analysis is flexible, and we give states considerable leeway to pursue their legitimate interests. *Buckley v. Am. Const. Law Found.*, 525 U.S. 182, 191 (1999). And all that's required for the State to win at this step is for its legitimate interests to outweigh the burden on Plaintiffs' First Amendment rights. *Thompson*, 959 F.3d at 811. The method the State chooses to pursue its interests need not be narrowly tailored. *Id.*

We've already done much of the heavy lifting here. We've previously held, in multiple cases, that the interests Ohio pursues through its ballot access laws "outweigh the intermediate burden those regulations place on Plaintiffs." *Id.*; *Hawkins*, 968 F.3d at 607; *see also Kishore* --- F.3d ----, 2020 WL 4932749, at *3 ("On balance, the State's well-established and legitimate interests in administering its own elections through candidate-eligibility and ballot-access requirements outweigh the intermediate burden imposed on Plaintiffs."). And "reasonable, nondiscretionary restrictions are almost certainly justified by the important regulatory interests in

No. 20-3526, *Thompson v. DeWine*

combating fraud and ensuring that ballots are not cluttered with initiatives that have not demonstrated sufficient grassroots support." *Little*, --- S. Ct. ----, 2020 WL 4360897, at *2 (Roberts, C.J., concurring in the grant of a stay).

*    *    *

In short, Ohio is likely to prevail on the merits—and that's the most important part of this analysis. Still, the remaining three preliminary injunction factors favor Ohio, too.

B.

First, irreparable harm. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 133 S. Ct. 1, 3 (2012) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). So "[u]nless the statute is unconstitutional, enjoining a 'State from conducting [its] elections pursuant to a statute enacted by the Legislature ... would seriously and irreparably harm [the State].'" *Thompson*, 959 F.3d at 812 (quoting *Abbott v. Perez*, --- U.S. ----, 138 S. Ct. 2305, 2324 (2018)). Because we've already found that Ohio is likely to prevail on the merits here, it would cause the State irreparable harm if we blocked it from enforcing its constitutional ballot access laws.

Next, the balance of the equities. "When analyzing the balance of equities, '[the Supreme] Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.'" *Kishore*, --- F.3d ----, 2020 WL 4932749, at *4 (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, --- U.S. ----, 140 S. Ct. 1205, 1207 (2020) (per curiam)). Ohio will soon print ballots for overseas and military voting. Ohio Rev. Code Ann. § 3509.01(B)(1). Because "federal courts are not supposed to change state election rules as elections approach," this factor also favors Ohio. *Thompson*, 959 F.3d at 813.

11

No. 20-3526, *Thompson v. DeWine*

Finally, the public interest. It's in the public interest that we give effect to the will of the people "by enforcing the laws they and their representatives enact." *Id.* at 812. So all four preliminary injunction factors favor Ohio.

III.

Finally, we note that the Federal Constitution gives states, not federal courts, "the ability to choose among many permissible options when designing elections." *Id.* We don't "lightly tamper" with that authority. *Id.* Instead, the power to adapt or modify state law to changing conditions—especially during a pandemic—rests with state officials and the citizens of the state.

So while federal courts can sometimes enjoin unconstitutional state laws, we can't engage in "a plenary re-writing of the State's ballot-access provisions." *Esshaki*, 813 F. App'x at 172. Instead, "[t]he Constitution grants States broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' which power is matched by state control over the election process for state offices." *Clingman v. Beaver*, 544 U.S. 581, 586 (2005) (citations omitted).

We don't have the power to tell states how they should run their elections. If we find a state ballot-access requirement unconstitutional, we can enjoin its enforcement. *See, e.g.*, *Esshaki*, 813 F. App'x at 172. But otherwise, "state and local authorities have primary responsibility for curing constitutional violations." *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978); *Esshaki*, 813 F. App'x at 172 (holding that it "was not justified" for a district court to extend the deadline to file signed petitions and order the state to accept electronic signatures).

So when the district court here ordered Ohio to accept electronically signed and witnessed petitions and extended the deadline for submitting petitions, it overstepped its bounds. It effectively rewrote Ohio's constitution and statutes and "intrude[d] into the proper sphere of the

12

No. 20-3526, *Thompson v. DeWine*

States." *Missouri v. Jenkins*, 515 U.S. 70, 131 (1995) (Thomas, J., concurring); *see Thompson*, 959 F.3d at 812 ("[T]he district court exceeded its authority by rewriting Ohio law with its injunction."). Federal courts don't have this authority.

IV.

For these reasons, we reverse the district court's grant of a preliminary injunction.