# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

CHAD THOMPSON, *et al.*,

    **Plaintiffs,**

v.

GOVERNOR OF OHIO
MICHAEL DEWINE, *et al.*,

    **Defendants.**

Case No. 2:20-cv-2129
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Plaintiffs initiated this action in April of 2020 challenging Ohio's requirements for placing initiatives on the November 2020 general election ballot in light of the COVID-19 pandemic and Ohio's stay-at-home orders. In May of 2020, this Court granted in part Plaintiffs' motion for a preliminary injunction. The Sixth Circuit Court of Appeals stayed the preliminary injunction pending an appeal and eventually reversed the grant of a preliminary injunction in September of 2020. (ECF No. 58.) Plaintiffs petitioned the Supreme Court for a writ of certiorari, which the Supreme Court denied.

Defendants now move to dismiss under Rule 12(b)(1) and (6). (ECF No. 68.) Plaintiffs move for judgment on the pleadings under Rule 12(c). (ECF No. 71.) Defendants contend that this case is moot because Plaintiffs only sought relief related to the November 2020 election. Plaintiffs disagree, arguing that this case falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. Plaintiffs contend that they are suffering the same injury in the 2021 election cycle as they suffered in 2020. They argue that enforcement of Ohio's ballot-initiative requirements, combined with the ongoing COVID-19 pandemic and Ohio's public

health orders violates the First Amendment as applied to them. They now seek declaratory and injunctive relief for the duration of the pandemic.

Whatever the merits of Plaintiffs' claims, a fair reading of the Sixth Circuit's opinions in this case leaves no room for these allegations. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss.

## I. Background

The background of this case is set out at length in this Court's preliminary injunction order and the Sixth Circuit's opinions that came after. *Thompson v. DeWine*, 461 F. Supp. 3d 712 (S.D. Ohio), *stayed*, 959 F.3d 804 (6th Cir. 2020), *rev'd*, 976 F.3d 610 (6th Cir. 2020). But the key facts bear repeating, as do subsequent developments since the November 2020 general election.

Plaintiffs are three registered Ohio voters who "regularly circulate petitions to have initiatives placed on local election ballots throughout Ohio and in adjacent States." (Compl. ¶ 4, ECF No. 1; Stip. Facts ¶ 1, ECF No. 35.) In 2020, Plaintiffs sought to place initiatives to decriminalize marijuana possession on the November 3, 2020 general election ballot in cities and villages throughout Ohio. (Stip. Facts ¶¶ 3–4.) To place an initiative on a municipal ballot, Ohio law requires a petition to be submitted to the Ohio Secretary of State with the signatures of at least ten percent of the number of electors who voted for governor in the municipality's previous general election. Ohio Rev. Code § 731.28. The signatures must be original, affixed in ink, and witnessed by the petition's circulator. *Id.* § 3501.38. The collected signatures must be submitted to the Ohio Secretary of State at least 110 days before the election. *Id.* § 731.28.

In early March of 2020, less than two weeks after Plaintiffs filed several proposed initiatives to begin collecting signatures, Governor DeWine declared a state of emergency in Ohio due to the outbreak of COVID-19. (Stip. Facts ¶¶ 4, 18.) Over the next few days, the Ohio

Department of Health issued several emergency public health orders to limit the spread of COVID-19. (*Id.* ¶¶ 19–29.) On March 22, 2020, the Ohio Department of Health issued the "Director's Order that All Persons Stay at Home Unless Engaged in Essential Work Activity." (*Id.* ¶ 30.)

A month later, in April 2020, Plaintiffs filed this action against Governor DeWine, then-Director of the Ohio Department of Health Dr. Amy Acton, and Ohio Secretary of State Frank LaRose in their official capacities. (Compl. ¶¶ 1–12.) Plaintiffs alleged that they were "prevented from collecting the needed supporting signatures of Ohio voters required by Ohio law to place their initiatives on . . . local November 3, 2020 election ballots by the COVID-19 pandemic" and Governor DeWine and then-Director Acton's emergency public health orders. (*Id.* ¶ 10.) Plaintiffs moved for a preliminary injunction, requesting that the Court either (1) direct "Defendants to immediately place Plaintiffs' marijuana decriminalization initiatives on local November 3, 2020 election ballots without the need for supporting signatures from Ohio voters," or alternatively (2) modify Ohio's in-person signature requirements, extend the deadlines for submitting signatures, require Defendants to develop procedures for gathering electronic signatures, and reduce the number of needed voter signatures. (Compl. ¶ 79.)

This Court granted Plaintiffs' request for injunctive relief in part in May of 2020. The Court enjoined enforcement of the ink signature and witness requirements for the November 2020 general election as to Plaintiffs and also enjoined enforcement of the deadline in Ohio Revised Code § 731.28 for the November 2020 general election as to Plaintiffs.[1] *Thompson*, 461 F. Supp. 3d at 739. This Court did not enjoin the State from enforcing its signature quantity requirement.

---

[1] The Court also granted injunctive relief in favor of two Intervenor-Plaintiffs who sought to place proposed constitutional amendments on the ballot in the November 2020 general election. Those Intervenor-Plaintiffs have withdrawn from this litigation.

3

*Id.* A week later, the Sixth Circuit granted Defendants' motion for a stay pending appeal. *Thompson*, 959 F.3d at 813.

In September of 2020, the Sixth Circuit reversed this Court's grant of a preliminary injunction. *Thompson*, 976 F.3d at 620. The court held that Plaintiffs were not likely to succeed on the merits of their First Amendment challenge and that all preliminary injunction factors weighed in favor of Ohio. *Id.* at 615–19. Plaintiffs therefore did not obtain relief for the November 2020 general election.

The November 2020 general election came and went. The COVID-19 pandemic remained. In early 2021, Plaintiffs petitioned the United States Supreme Court for a writ of certiorari for interlocutory review of the Sixth Circuit's decision reversing this Court's grant of a preliminary injunction. The Supreme Court denied Plaintiffs' petition in April 2021. *Thompson*, No. 20-1072, 2021 WL 1520804, at *1 (U.S. Apr. 19, 2021). Following the denial of certiorari, Defendants moved to dismiss, arguing that the case is moot and that Defendants are now immune from any retrospective relief under the Eleventh Amendment. (Defs.' Mot. Dismiss, ECF No. 68.)

Plaintiffs move for judgment on the pleadings. They ask the Court to declare strict enforcement of Ohio's ballot-initiative requirements unconstitutional for the duration of the pandemic and to grant a permanent injunction: (1) prohibiting enforcement of Ohio's in-person wet signature and witness requirements; (2) prohibiting enforcement of Ohio's July submission deadline; and (3) prohibiting enforcement of Ohio's signature quantity requirements. (Pls.' Mot. J. on Pleadings and Resp. in Opp'n at 1, ECF No. 71, hereinafter, "Pls.' Resp.")

## II. Standard of Review

First up, a matter of procedure. Plaintiffs argue that Defendants' 12(b) motion is improper; Defendants argue that Plaintiffs' (12)(c) motion is improper. Defendants ask the Court to dismiss

4

Plaintiffs' 12(c) motion on procedural grounds, while Plaintiffs ask the Court to construe Defendants' 12(b) motion as a motion under Rule 12(c) or Rule 56 to efficiently resolve this case given the time-sensitive nature of Plaintiffs' claims.

The difference between a Rule 12(b) motion and a Rule 12(c) motion "stems from when in the course of proceedings they can be raised." *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 947 (S.D. Ohio 2003). Motions under 12(b) must be brought before a defendant files an answer to the complaint—except for motions under 12(b)(1), which can be brought at any stage of the litigation. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506; Fed. R. Civ. P. 12(b). Motions under 12(c) can be brought only "[a]fter the pleadings are closed[.]" Fed. R. Civ. P. 12(c). Pleadings are only "closed" within the meaning of Rule 12(c) if an answer has been filed and no counterclaims or crossclaims are still at issue. *Williams v. United States*, 754 F. Supp. 2d 942, 945 (W.D. Tenn. 2010) (citing Fed. R. Civ. P. 7(a) and Wright & Miller, 5C Fed. Prac. & Proc. § 1367 (3d ed.)).

In this case, no answer has been filed. So the pleadings have not "closed" for purposes of Rule 12(c). *See id.* That means Plaintiffs' motion is not technically proper.[2] In any event, all procedural roads lead to the same destination in this case. Plaintiffs argue that, because the time for filing an answer has passed, all factual allegations in the Complaint are deemed admitted. But, in reviewing Defendants' motion to dismiss, the Court must accept all the Complaint's factual allegations as true anyway. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (citing *Ashcroft*

---

[2] Because a "plaintiff cannot move under Rule 12(c) until after an answer has been filed, the proper course for the plaintiff in a case in which the defendant fails to answer is to move for a default judgment under Rule 55 rather than seek a judgment on the pleadings." Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.); *see also, e.g.*, *Poliquin v. Heckler*, 597 F. Supp. 1004, 1006 (D. Me. 1984) (holding the same); *Stands Over Bull v. Bureau of Indian Affs.*, 442 F. Supp. 360, 367 (D. Mont. 1977) (citation omitted) ("When a defendant has failed to file an answer, a motion for judgment on the pleadings is not the correct procedural remedy.").

*v. Iqbal*, 556 U.S. 662 (2009)). And even if Defendants' motion to dismiss was untimely, Courts can review motions raising Rule 12(b)(6) defenses under Rule 12(c) using an identical standard of review. *See Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 628 (W.D. Mich. 2015); *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). With those distinctions noted, the Court moves on to the standard of review.

Rule 12(b)(1) challenges the Court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). There are two types of subject-matter jurisdiction challenges: facial attacks and factual attacks. *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). When a motion "attacks the factual basis for jurisdiction," as Defendants' motion does here, "the district court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015). The plaintiff has the burden of proving subject-matter jurisdiction when jurisdiction is challenged under Rule 12(b)(1). *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "[i]n ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, [and] (3) public documents[.]" *Overall v. Ascension*, 23 F. Supp. 3d 816, 824 (E.D. Mich. 2014) (citing *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)). In deciding these motions, the Court will look to the pleadings, the stipulated facts in the record, and facts of which the Court will take judicial notice.[3]

### III. Analysis

The Court first takes up Defendants' Motion to Dismiss. (Defs.' Mot., ECF No. 68.) The Court must first address Defendants' 12(b)(1) motion because the Court has no power to consider a Rule 12(b)(6) motion if it lacks subject-matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

**A. Plaintiffs' claims are capable of repetition, yet evading review.**

Defendants assert that the Court lacks subject-matter jurisdiction because Plaintiffs' claims were rendered moot once the November 3, 2020 election occurred. (Defs.' Mot. at 6.) Plaintiffs disagree. Plaintiffs assert that their claims meet the "capable of repetition, yet evading review" exception to mootness. (Pls. Resp. at 22.)

The judicial power under Article III of the U.S. Constitution only extends to "Cases" and "Controversies". U.S. Const. Art. III, § 2. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v.*

---

[3] Plaintiffs urge the court to take judicial notice of subsequently adopted emergency orders as public records. (Pls.' Resp. at 6–7.)

7

*Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). If a case becomes "moot at any point during the proceedings" it falls outside the jurisdiction of a federal court. *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537, 200 L. Ed. 2d 792 (2018) (internal quotations and citation omitted).

The Supreme Court has recognized an exception to the mootness doctrine in cases that are "capable of repetition, yet evading review." *Murphy*, 455 U.S. at 482. In the absence of a class action, this exception applies in situations when: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Id. (*citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)). This exception applies "only in exceptional situations[.]" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (citation omitted).

The first prong—whether the action is too short in duration to be fully litigated prior to expiration—is "easily satisfied" in challenges to election laws brought during the election cycle. *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006). In *Blackwell*, "less than eleven months elapsed between the filing of the lawsuit and the occurrence of the election[.]" *Id.* In this case, less than seven months elapsed between the filing of the lawsuit in April 2020 and the November 3, 2020 general election.

Mootness in this case therefore turns on the second prong—whether there is a "reasonable expectation that" Plaintiffs will "be subjected to the same action again." *Murphy*, 455 U.S. at 482 (citation omitted). To satisfy the second prong, "there must be a 'reasonable expectation' or a 'demonstrated possibility' that the same controversy will recur involving the same complaining

8

party." *Kundrat v. Halloran*, 206 F. Supp. 2d 864, 869 (E.D. Mich. 2002) (citing *Murphy*, 455 U.S. at 482).

Defendants argue this case is moot and that it is not "capable of repetition, yet evading review." They contend that "Plaintiffs have not shown that another pandemic with the severity of COVID-19 is likely to occur again, or that the COVID-19 pandemic will revert back to the conditions as they existed in the spring of 2020, or that Ohio would issue public health orders that would prevent them from obtaining signatures." (Defs.' Reply in Support at 13.) Defendants argue that, because this is an as-applied challenge to Ohio's ballot-initiative requirements during the COVID-19 pandemic, it is "uniquely *incapable* of repetition." (*Id.* at 14 (emphasis in original).) Defendants point out that the Ohio Department of Health rescinded the restrictive orders that Plaintiffs alleged in the Complaint made it impossible for them to collect signatures. (Defs.' Mot. at 8.) They argue that the operative order from the Ohio Department of Health is much less restrictive. (*Id.* at 8.) On May 17, 2021, the Ohio Department of Health issued an order stating that "the vast majority of health orders—except some orders for safety in congregate living and health settings and some technical matters—will be rescinded on June 2, 2021[.]"[4]

Plaintiffs submit that they are actively attempting to qualify initiatives for local ballots for the November 2021 election subject to the same ballot-initiative laws Plaintiffs originally challenged. (Pls.' Resp. at 26–27.) And, crucially, the COVID-19 pandemic remains ongoing. (*Id.*) They argue that there "is not only a likelihood of recurrence, there is a recurrence here." (*Id.* at 27.)

Plaintiffs have shown a "'demonstrated possibility' that the same controversy will recur" involving them. *Kundrat*, 206 F. Supp. 2d at 869 (citing *Murphy*, 455 U.S. at 482). Plaintiffs

---

[4] Ohio Dep't of Health, Director's Second Amended Order for Social Distancing, Facial Coverings and Non-Congregating (May 17, 2021).

allege in the Complaint that "Ohio law, taken together with the COVID-19 outbreak and Defendants' orders, directly cause injury-in-fact to Plaintiffs" and that Plaintiffs' injuries are "fairly traceable to the Ohio laws requiring in person signature collection for candidates, the COVID-19 pandemic, and the Defendants' orders described in this action." (Compl. ¶¶ 60–61.) While the "Defendants' orders described" in the Complaint have changed, the Ohio laws requiring in-person signature collection remain in place. And the COVID-19 pandemic is ongoing.[5]

One year ago, society was optimistic that the worst of the pandemic passed and that emergency public health restrictions would lessen. In this case, the Court of Appeals observed on May 26, 2020, "What's more, Ohio is beginning to lift their stay-at-home restrictions." *Thompson*, 959 F.3d at 810. Instead, the pandemic worsened. In November 2020 amid an acceleration of COVID-19 cases in the State, the Ohio Department of Health imposed a new stay-at-home order.[6] This time does seem different. But the previous year illustrates the difficulty in predicting the high and low tides of a once-in-a-century pandemic. So long as a global pandemic is present, there is a "demonstrated possibility" that Plaintiffs will be again subject to public health orders of the type they challenge in the Complaint.

Defendants contend that even "if pandemic conditions worsen again and the Plaintiffs' claims are capable of repetition, they will still fail as a matter of law." (Defs.' Mot. at 9.) However, that Plaintiffs' claims may fail as a matter of law does not also mean that those claims are moot. Plaintiffs are collecting signatures for the 2021 election; the same state laws challenged during the 2020 election cycle remain in place; the spread of COVID-19 remains a global pandemic.

---

[5] Ohio Dep't of Health, COVID-19 Dashboard (accessed May 28, 2021), https://coronavirus.ohio.gov/wps/portal/gov/covid-19/dashboards.

[6] Ohio Dep't of Health, Director's Twenty-One Day Order that All Persons Stay at Home During Specified Hours Unless Engaged in Work or Essential Activity (Nov. 19, 2020).

Plaintiffs' claims therefore fall within the "capable of repetition, yet evading review" exception to mootness.

**B. Plaintiffs' claims fail as a matter of law under Rule 12(b)(6).**

Next, Defendants move for dismissal under Rule 12(b)(6). (Defs.' Mot. at 10.) They argue that the Eleventh Amendment bars Plaintiffs' claims for declaratory relief related to the 2020 election because such relief is retrospective. (*Id.*) Defendants' Eleventh Amendment argument is of a piece with their argument that Plaintiffs' claims for injunctive relief are moot, which the Court addressed above. Plaintiffs respond that the Eleventh Amendment does not bar Plaintiffs' claims for declaratory relief because, although the Complaint was originally designed to obtain relief for the November 3, 2020 election, prospective relief is still available for the 2021 election cycle. (Pls.' Resp. at 28.)

Defendants are entitled to dismissal of Plaintiffs' claims, but for another reason: based on the Sixth Circuit's opinions in this case, Plaintiffs' claims cannot succeed as a matter of law. In the Complaint, Plaintiffs alleged that enforcement of Ohio's ballot-initiative requirements for the 2020 election in conjunction with the COVID-19 pandemic and Ohio's stay-at-home orders violate their First and Fourteenth Amendment rights. (Compl. ¶¶ 64–78.) Plaintiffs requested declaratory relief and preliminary and permanent injunctive relief against Defendants. (*Id.* ¶ 79.)

This Court granted in part Plaintiffs' motion for a preliminary injunction on May 19, 2020. *Thompson*, 461 F. Supp. 3d at 717. One week later, the Sixth Circuit granted Defendants' motion to stay pending appeal, holding that all four preliminary injunction factors favored Defendants. *Thompson*, 959 F.3d at 812. In September of 2020, the Sixth Circuit reversed the grant of a preliminary injunction, indicating that its analysis of the four preliminary injunction factors remained unchanged from its order granting a stay. *Thompson*, 976 F.3d at 615.

Plaintiffs now request declaratory relief and a permanent injunction "(1) prohibiting enforcement of Ohio's in-person supporting signature requirements for candidates for office during the ongoing COVID crisis, (2) extend[ing] the deadline for submitting supporting signatures to city auditors, village clerks and local election boards of elections in order to qualify popular measures for local election ballots during the ongoing COVID crisis, and (3) enjoining the required number of signatures required in order to place initiatives on local election ballots during the ongoing COVID crisis." (Pls. Resp. at 43.) Further, Plaintiffs urge the Court "to order Defendants to develop with Plaintiffs a timely, efficient and realistic procedure for gathering supporting signatures from voters and submitting them to local officials." (*Id.*) A fair reading of the Sixth Circuit's opinion forecloses such relief. *See Thompson*, 976 F.3d at 620.

**1. The Sixth Circuit's September 16, 2020 opinion guides the analysis here.**

As an initial matter, the parties dispute whether the Sixth Circuit's opinion reversing the grant of a preliminary injunction is the "law of the case." (Defs.' Reply in Support and Resp. in Opp'n at 18; Pls.' Reply in Support at 11.)

The law-of-the-case doctrine "provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Daunt v. Benson*, ---F.3d----, 2021 WL 2154769, at *5 (6th Cir. May 27, 2021) (citing *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (internal quotations omitted)). "Put another way, '[t]he law-of-the-case doctrine precludes reconsideration of issues decided at an earlier stage of the case.'" *Id.* (citing *Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017)).

Whether a panel's ruling on a preliminary injunction becomes "the law of the case is tricky[.]" *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015). As a general matter, "decisions on preliminary injunctions do not constitute law of the case and 'parties are free to

litigate the merits.'" *William G. Wilcox, D.O., P.C. Employees' Defined Ben. Pension Tr. v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989) (citations omitted). However, when the "appellate panel considering the preliminary injunction has issued '[a] fully considered appellate ruling on an issue of law,' then that opinion becomes the law of the case." *Howe*, 801 F.3d at 740 (citing Wright & Miller, Fed. Prac. and Proc.: Jurisdiction and Related Matters §4478.5 (4th ed. 2015)).

Here, the Court need not determine whether the Sixth Circuit's opinion reversing the grant of a preliminary injunction is the law of the case. Even assuming that "the Sixth Circuit's rulings in the preliminary-injunction context are not binding on this Court's current task under Rule 12, the Court finds the rulings are persuasive[.]" *Daunt v. Benson*, No. 1:19-CV-614 (LEAD), 2020 WL 8184334, at *11 (W.D. Mich. July 6, 2020), *aff'd*, No. 20-1734, 2021 WL 2154769 (6th Cir. May 27, 2021). The Sixth Circuit's opinion will therefore guide this Court's analysis.

   2. **Plaintiffs' First Amendment claims fail as a matter of law under the *Anderson-Burdick* framework.**

A plaintiff seeking a permanent injunction must show actual success on the merits. *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n. 12 (1987). Courts review "First Amendment challenges to nondiscriminatory, content-neutral ballot initiative requirements under the *Anderson-Burdick* framework." *Thompson*, 976 F.3d at 615 (citing *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). Under this framework, "the level of scrutiny" to apply to "state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Id.* (citing *Burdick*, 504 U.S. at 434). When state law imposes a severe burden, a court evaluates the law under strict scrutiny. *Id.* When the law imposes "reasonable, nondiscriminatory restrictions," a court applies rational-basis review to the state law. *Id.* (citing *Burdick*, 504 U.S. at 434). When the challenged law imposes an intermediate burden, a court weighs the burden against "the precise interests put forward by the

13

State as justifications for the burden imposed by its rule." *Id.* (citing *Anderson*, 460 U.S. at 789); *Kishore v. Whitmer*, 972 F.3d 745, 748–49 (6th Cir. 2020). In doing so, a court must "consider 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id.* at 616 (quoting *Burdick*, 504 U.S. at 434).

The Sixth Circuit—in both its opinion granting a stay and its opinion reversing this Court—concluded that "Ohio's ballot-access restrictions impose, at most, only an intermediate burden on plaintiffs' First Amendment rights, even during COVID-19." *Thompson*, 976 F.3d at 616; *Thompson*, 959 F.3d at 811. The Court will adhere to the Sixth Circuit's reasoning. In weighing the burdens Ohio's ballot-initiative laws impose on Plaintiffs during the COVID-19 pandemic against Ohio justifications for those laws, Ohio's justifications come out on top. *Id.* at 616–19.

### a. Burden

A "severe burden excludes or virtually excludes electors or initiatives from the ballot." *Id.* at 617. Ohio's laws, however, "specifically exempted conduct protected by the First Amendment from its stay-at-home orders"—including gathering signatures for petitions. *Id.* (citing Ohio Dep't of Health, Director's Order that Reopens Businesses, with Exceptions, and Continues a Stay Healthy and Safe at Home Order ¶ 4 (April 30, 2020)). That much remained true during and after the election cycle following the panel's decision in September. Ohio Dep't of Health, Director's Twenty-One Day Order that All Persons Stay at Home During Specified Hours Unless Engaged in Work or Essential Activity ¶ 2 (Nov. 19, 2020) ("This Order does not apply to . . . First Amendment protected speech[.]") And even though the conditions as a result of COVID-19 may make it harder for Plaintiffs to obtain signatures, that does not mean "that Plaintiffs are *excluded* from the ballot." *Thompson*, 976 F.3d at 618 (citing *Thompson*, 959 F.3d at 810) (emphasis in original). Therefore, Plaintiffs face an intermediate burden.

### b. Ohio's Justifications

"The next step in the *Anderson-Burdick* framework is a flexible analysis in which" the Court weighs "the burden of the restriction against the state's interests and chosen means of pursuing them." *Id.* (citing *Schmitt v. LaRose*, 933 F.3d 628, 641 (6th Cir. 2019), *cert. denied*, --- U.S. ----, 140 S.Ct. 2803, 207 L. Ed. 2d 141 (2020)) (internal quotations omitted).

In this case, Ohio has articulated two interests. "The first relates to the ink and attestation requirements: preventing fraud by ensuring the authenticity of signatures." *Id.* The Sixth Circuit concluded that there is "no question this is a legitimate—indeed compelling—interest." *Id.* Second, Ohio posits that its "deadlines allow it to verify signatures in a fair and orderly way, ensuring that interested parties have enough time to appeal an adverse decision in court." *Id.* This interest is also legitimate, as "[s]tates may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Id.* (citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)).

### c. Balancing of Burdens and Justifications

At the third and final and final step of *Anderson-Burdick*, the Court must "assess whether the State's restrictions are constitutionally valid given the strength of its proffered interests." *Id.* (citing *Schmitt*, 933 F.3d at 641). All "that's required for the State to win at this step is for its legitimate interests to outweigh the burden on Plaintiffs' First Amendment rights." *Id.* at 619.

The Sixth Circuit has "held, in multiple cases, that the interests Ohio pursues through its ballot access laws 'outweigh the intermediate burden those regulations place on Plaintiffs.'" *Id.* (citing *Thompson*, 959 F.3d at 811; *Hawkins v. DeWine*, 968 F.3d 603, 607 (6th Cir. 2020)). Furthermore, "reasonable, nondiscretionary restrictions are almost certainly justified by the important regulatory interests in combating fraud and ensuring that ballots are not cluttered with

initiatives that have not demonstrated sufficient grassroots support." *Id.* (citing *Little*, --- U.S. at ----, 140 S. Ct. 2616, 2020 WL 4360897, at *2 (Roberts, C.J., concurring in the grant of a stay)).

### 3. Plaintiffs' efforts to distinguish the panel's analysis are unpersuasive.

The Sixth Circuit issued its decision on this Court's preliminary injunction order in September of 2020. The November 3, 2020 election occurred less than two months later. Since then, the course of the COVID-19 pandemic and Ohio's emergency public health orders have changed. *See supra* Part III.A. Plaintiffs now attempt to distinguish both the facts and the law on which the panel relied.

#### a. Facts

Plaintiffs contend that this case "stands in stark contrast to the case as it existed when the preliminary proceedings were litigated." (Pls.' Resp. at 31.) The Sixth Circuit's September 2020 opinion noted that the "severe burden" standard under *Anderson-Burdick* requires a showing that the combined effect of ballot-access restrictions amounts to an "exclusion or virtual exclusion" from the ballot. *Thompson*, 976 F.3d at 617–18 (citing *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 575 (6th Cir. 2016)). Plaintiffs argue that facts developed after the panel's decision in September 2020 show "exclusion or virtual exclusion" from the 2020 ballot and thus, strict scrutiny should apply under *Anderson-Burdick*. (Pls.' Resp. at 31–32.)

First, Plaintiffs argue that Ohio's strict enforcement of its in-person petitioning requirements in-fact resulted in the exclusion or virtual exclusion of initiatives on the 2020 ballot. (*Id.* at 32.) No statewide initiatives appeared on Ohio's November 2020 general election ballot, and Plaintiffs "succeeded in placing only 4 out of the 73 initiatives they reasonably anticipated placing on local ballots[.]" (*Id.*) Second, they argue that "science has learned that COVID-19 is airborne and primarily transmitted through aerosol[,]" posing unacceptable risk of community

spread to circulators and citizens. (*Id.*) Third, they submit that, contrary to the State's representations to the Sixth Circuit in 2020, the state did not "open up," instead shutting down even further. (*Id.*) Fourth, they point to the fact that COVID-19 has killed over 570,000 Americans and continues to spread. (*Id.* at 33.) Fifth and finally, they claim that Defendants admit that collecting signatures from March 2020 to April 30, 2020 was "both physically impossible and illegal" by virtue of Defendants' failure to file an answer—therefore admitting the Complaint's allegation that collecting signatures was "literally impossible." (*Id.*; Compl. ¶ 52.)

These arguments do not persuade the Court that Plaintiffs are now entitled to a higher level of scrutiny than the Sixth Circuit applied in its September 16, 2020 opinion. The Sixth Circuit already disposed of Plaintiffs argument that "impossibility" is a factual allegation that can be admitted in a pleading. *Thompson*, 976 F.3d at 616 n.5 (6th Cir. 2020) ("we don't think 'impossibility' here is a factual allegation that can be admitted in pleadings."). And even if that were true, the panel noted that "Ohio made it clear by April 30" that it exempted conducted protected by the First Amendment from its stay-at-home orders. *Id.* at 617. Therefore, according to the Sixth Circuit, "Plaintiffs [had] months to gather signatures" after April 30, 2020. *Id.*

Furthermore, the panel cautioned that even if "prospective signatories were deciding to stay home or avoid strangers—thus reducing Plaintiffs' opportunities to interact with them—we don't attribute those decisions to Ohio" because "First Amendment violations require state action." *Id.* (citing *Thompson*, 959 F.3d at 810). There is no telling from the facts Plaintiff cites whether the lack of ballot initiatives on the 2020 general election ballot were the result of Ohio's public health orders or private "prospective signatories [ ] deciding to stay home or avoid strangers" due to the risks of COVID-19. *Id.*

In any event, Plaintiffs now seek prospective relief for the duration of the COVID-19 pandemic, not retrospective relief for the November 2020 election. (Pls.' Resp. at 27.) If "Plaintiffs [ ] faced an uphill battle" under the *Anderson-Burdick* framework in 2020, *Thompson*, 976 F.3d at 617, the hill is even steeper now. Given the advent of the vaccine,[7] the decrease in COVID-19 cases,[8] and the lifting of most public health orders as of June 2,[9] the conditions as they now exist do not appear to be more burdensome than those alleged in the Complaint and established in the stipulated facts prior to this Court's preliminary injunction order in May of 2020. Therefore, subsequent factual developments do not warrant departing from the Sixth Circuit's prior analysis.

**b. Law**

Plaintiffs also contend that there "is no valid basis for distinguishing" *Esshaki v. Whitmer*, 813 F. App'x 170 6th Cir. 2020) and *SawariMedia, LLC v. Whitmer*, 963 F.3d 595 (6th Cir. 2020) from this case. In those cases, the Sixth Circuit held that the district court properly applied strict scrutiny under the *Anderson-Burdick* framework in evaluating the plaintiffs' likelihood of success on First Amendment challenges brought in response to Michigan's stay-at-home orders. *Esshaki*, 813 F. App'x at 171 ("The district court correctly determined that the combination of the State's strict enforcement of the ballot-access provisions and the Stay-at-Home Orders imposed a severe burden on the plaintiffs' ballot access, so strict scrutiny applied[.]"); *SawariMedia, LLC*, 963 F.3d at 597 ("with respect to the burden imposed on Plaintiffs' access to the ballot, the restrictions at issue here are identical to those in *Esshaki*"). Plaintiffs argue that "[n]ot only are *Esshaki* and

---

[7] As of June 2, over 45% of Ohioans have received at least one dose of a COVID-19 vaccine. Ohio Dep't of Health, COVID-19 Vaccination Dashboard (accessed June 2, 2021), https://coronavirus.ohio.gov/wps/portal/gov/covid-19/dashboards/covid-19-vaccine/covid-19-vaccination-dashboard.

[8] Ohio Dep't of Health, COVID-19 Dashboard (accessed on June 2, 2021), https://coronavirus.ohio.gov/wps/portal/gov/covid-19/dashboards.

[9] Ohio Dep't of Health, Director's Second Amended Order for Social Distancing, Facial Coverings and Non-Congregating (May 17, 2021).

*SawariMedia* materially indistinguishable from this case, but also, the severity of the burdens imposed in those cases was less onerous than the burdens imposed on Plaintiffs here." (Pls.' Resp. at 42.) The Sixth Circuit considered the same argument in this case and rejected it. *Thompson*, 976 F.3d at 617 ("But the cases Plaintiffs cite don't support their theory.").

In the end, the Sixth Circuit's analysis is fatal to Plaintiffs' claims. *Id.* at 619. Taking all factual allegations in the Complaint, stipulated facts, and undisputed public record as true, Plaintiffs fail to state a claim under the First and Fourteenth Amendments upon which relief can be granted in light of the Sixth Circuit's decisions. Defendants are therefore entitled to dismissal under Rule 12(b)(6). Plaintiffs' Motion for Judgment on the Pleadings is moot.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 68) and **DENIES AS MOOT** Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 71). Plaintiffs' claims are **DISMISSED**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

**6/3/2021**　　　　　　　　　　　　　　　　　**s/Edmund A. Sargus, Jr.**
**DATE**　　　　　　　　　　　　　　　　　　　**EDMUND A. SARGUS, JR.**
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**